Filing # 133972916 E-Filed 09/02/2021 04:56:58 PM

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA

KYLE and TARAN HELM, individually and as next
friends for JANE DOE 1, JANE DOE 2 and JANE DOE
3,
GARY and AMY DESJARDINS, individually and as
next friends for JOHN DOE 1 and JANE DOE 4,
MICHELLE PETTY, individually and as next friend
for JANE DOE 5 and JANE DOE 6,
HEATHER WALLACE, individually and as next
friends for JANE DOE 7 and JANE DOE 8,
GREGORY and KRYSTLE ADAME, individually and
as next friend for JANE DOE 9,
JEFF and CARRIE SELLERS, individually and as next
friends for JANE DOE 10, JOHN DOE 2 and JANE
DOE 11,
SEAN and CAROLINA COLLINS, individually and as
next friend for JOHN DOE 3,
ROBBY and TAMSYN BELL, individually and as next
friends for JANE DOE 12, JANE DOE 13 and JANE DOE
14,
STAN and KATIE LEWANDOSKI, individually and as
next friends for JANE DOE 15 and JOHN DOE 4,
MARLEATIA BESS and ROBIN FREEL, individually
and as next friends for JANE DOE 16 and JOHN DOE
5,

        Plaintiffs,

v.

DUVAL COUNTY SCHOOL BOARD,

        Defendant.

Case No.: 2021-CA-_____
Division:

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

**COME NOW** KYLE and TARAN HELM, individually and as next friends for JANE DOE

1, JANE DOE 2 and JANE DOE 3, GARY and AMY DESJARDINS, individually and as next

friends for JOHN DOE 1 and JANE DOE 4, MICHELLE PETTY, individually and as next friend

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 1 of 62

ACCEPTED: DUVAL COUNTY, JODY PHILLIPS, CLERK, 09/03/2021 03:10:45 PM

for JANE DOE 5 and JANE DOE 6, HEATHER WALLACE, individually and as next friends for JANE DOE 7 and JANE DOE 8, GREGORY and KRYSTLE ADAME, individually and as next friend for JANE DOE 9, JEFF and CARRIE SELLERS, individually and as next friends for JANE DOE 10, JOHN DOE 2 and JANE DOE 11, SEAN and CAROLINA COLLINS, individually and as next friend for JOHN DOE 3, ROBBY and TAMSYN BELL, individually and as next friends for JANE DOE 12, JANE DOE 13 and JANE DOE 14, STAN and KATIE LEWANDOSKI, individually and as next friends for JANE DOE 15 and JOHN DOE 4, and MARLEATIA BESS and ROBIN FREEL, individually and as next friends for JANE DOE 16 and JOHN DOE 5, Plaintiffs, requesting judgment of the Court that the DUVAL COUNTY SCHOOL BOARD or Duval County Public Schools ( collectively "DCPS") Emergency Rule adopted August 23, 2021 (the "Mask Mandate") is void under Florida Statutes, the Florida Constitution, and because it fails rational basis review and cannot survive strict scrutiny, enjoining DCPS from enforcing its harmful and irrational Mask Policy on an emergency basis, and awarding Plaintiffs judgment against DCPS for their damages.

### Introduction

"Of all tyrannies, a tyranny sincerely exercised for the good of its victims may be the most oppressive. It would be better to live under robber barons than under omnipotent moral busybodies."

—C.S. Lewis

Is it acceptable for the School Board to inflict harm on certain students in an ill-founded attempt to eliminate the transmission of one specific virus? Just how much harm to any single kid is the School Board willing to accept in the pursuit of its ends?  The only civilized answer must, of course, be "none." What justifies the elevation of statutorily-vested School Board powers over the Constitutional rights of parents and their children? Just how much financial hardship, anxiety,

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 2 of 62

and heartache can the School Board mete out to parents who differ from the School Board in their view of what is best for *their* children?

The enactment of the Mask Mandate on August 23, 2021, perfectly illustrates the risks of giving unilateral "emergency powers" to well-meaning but fallible School Board members and DCPS bureaucrats, who, once possessed with these powers, wield them like a gorilla with an oversized paint brush, blotting out valid concerns of parents over *their* kids' particular health issues, social development, emotional well-being, and (gasp) educational progress. The Mask Mandate co-opts the Plaintiffs' children as political vessels for the School Board and DCPS bureaucrats to deliver a message despite the unsettled science surrounding the issues at play. The message is simple: "We hold the power, and we will weaponize it against you at a moment's notice. And your Constitutional rights be damned."

More than eighteen months after Covid-19 was unleashed upon the western world, with every conscious citizen of this State and this Country having had more than adequate time to inform him or herself of the risks of Covid-19, the potential mitigation measures, and each having made an independent decision about how to adapt to the reality that Covid-19 is not going away, the School Board called an "emergency" meeting for Monday, August 23rd, with initial notice sent out on Sunday, August 22nd. Following their weekend backroom discussions, the School Board arrived to "listen" to parents, who remained uninformed of the School Board's true agenda and oblivious to the fact that the School Board had arrived with an Emergency Rule (drafted over the weekend no doubt) in hand. After being faced with intense opposition from parents at the "emergency" meeting, these parents providing data to demonstrate the ineffectiveness of forced masking and relaying personal and traumatic experiences lived by their children under masks,

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 3 of 62

the School Board pulled out its Emergency Rule from under the table and signed it.  The parents in attendance were left in the dark about the School Board's true intentions and the pre-ordained outcome of the "emergency" meeting because the Emergency Rule was not noticed or circulated for public comment ahead of the meeting.

In obstinate defiance of the State, the County, the court system, and the community represented at the "emergency" meeting, the School Board reinstated the most destructive of all potential alternatives: its odious involuntary mask mandate for children. DCPS clutches onto this harmful policy, in spite of the facts that the State has rejected forced masking, the County has rejected forced masking, the First District Court of Appeal over Duval county has rejected forced masking as violative of Constitutional rights, the Department of Health has rejected forced masking, and the Department of Education has informed counties around the State that their mask policies are not making any difference in slowing the spread of Covid-19 and they should allow students to opt-out, without conditions. Had the School Board only spent its weekend looking at the available data, rather than secretly drafting its Emergency Rule, it would have realized that there is no statistically significant difference in the Covid-19 transmission rates between the counties in Florida that have and have never had mask mandates. The same is true of states across the United States, and indeed, entire countries who have never imposed mask mandates on their citizens (who they implicitly respect).

Notwithstanding all of that, the School Board and DCPS bureaucrats irrationally, arbitrarily, and capriciously push forward with perhaps the *most* restrictive means of trying to mitigate the prevalence of Covid-19, and without proper consideration of the available *less* restrictive alternatives. Even more fatally, the School Board has engaged willful and inhumane

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 4 of 62

blindness to the harms it is causing to many of its students, each of whom has a story to tell about how the mask has caused them physical discomfort, anxiety, depression, destroyed their love of going to school, hampered their education, exacerbated their medical condition, and on and on and on.. Thus, the Court *must* act. It must act now, to protect these particular children from a willfully blind School Board enthralled with its claimed power.

### Jurisdictional Allegations

1.      This is an action for declaratory and injunctive relief, and an action for damages exceeding $100,000.00, against a chartered county's public school district located in Florida.

2.      Venue is properly in Duval County because it is where the Defendant is located, it is where the causes of action accrued, and it relates to certain orders issued by the Defendant or its purported agents within Duval County.

3.      Jurisdiction is appropriate in Circuit Court. The Circuit Court has primary jurisdiction to hear constitutional challenges to the facial validity of agency rules and other actions. Plaintiffs require emergency injunctive relief, which can only be obtained through the Circuit Court. Finally, the subject matter of this case is not within the scope of DCPS's authority to resolve.

4.      The Circuit Court has authority to review the Mask Mandate, as it was created under emergency agency rulemaking provisions governed by Chapter 120, Florida Statutes (the "Administrative Procedures Act" or the "Act").[1]

---

[1] Specifically, the Mask Mandate was implemented pursuant to § 120.54(4), Florida Statutes, which provides DCPS with emergency rulemaking authority providing for limited notice, public comment and participation, etc.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 5 of 62

5.    This lawsuit challenges: (i) DCPS's rational basis for the Mask Mandate, (ii) the facial and as-applied constitutionality of the Mask Mandate, and (iii) the delegated statutory authority of DCPS to implement the Mask Mandate in the first place.

6.    The Plaintiffs also seek emergency injunctive relief from the Mask Mandate.

### The Plaintiffs

7.    KYLE and TARAN HELM are residents of Duval County. They are the parents and guardians of JANE DOE 1, JANE DOE 2, and JANE DOE 3, who all attend public school in Duval County (grades eight and seven). The Helms and their three children have been harmed by the Mask Mandate. JANE DOE 1 suffers from single-sided deafness and is unable to function in a school environment that compels masking of both teachers and students alike. JANE DOE 2 suffers from severe anxiety when forced to wear a mask. Ms. Helm has a background in early child development and is qualified as both a parent and a professional to identify the clinical and sub-clinical harms suffered by her daughters as a result of the Mask Mandate. Ms. Helm is immunocompromised and perceives Covid-19 as a real and persistent threat, but she has greater concerns about the immediate harm done to her daughters by the Mask Mandate. The Helms have notified DCPS about these harms. DCPS has refused to take any remedial action.

8.    GARY and AMY DESJARDINS reside in Duval County and are the parents and guardians of JOHN DOE 1 and JANE DOE 4, who both attend public school in Duval County. The Desjardins and their children have been harmed by the Mask Mandate. JOHN DOE 1 has a reading disability, learns kinesthetically, and has a 504 Plan in place at the Duval County public school he attends. The Plan provides special resources and additional instruction and test-taking accommodations for JOHN DOE 1. With the 504 Plan in place, JOHN DOE 1 progressed well, and the effects of his reading disability were ameliorated - so much so that JOHN DOE 1 became a top-performing student. After Duval County Public Schools forced students to wear masks during the 2020-21 school year, JOHN DOE 1's academic performance regressed. In the first part of the 2021-22 school year, JOHN DOE 1 opted out of the mask requirement and

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 6 of 62

flourished academically and emotionally. With the school-approved 504 Plan in place, the Desjardins have requested an exception for their son, JOHN DOE 1, but have yet to hear back from DCPS. Mr. Desjardins has notified DCPS about these harms. DCPS has refused to take any remedial action.

9.      MICHELLE PETTY is a resident of Duval County, whose daughters JANE DOE 5 and JANE DOE 6 attend sixth grade and kindergarten in public schools in Duval County. Ms. Petty and JANE DOE 5 and JANE DOE 6 have been harmed by the Mask Mandate. JANE DOE 5 attended school last year at a Duval County public school and was compelled to wear a mask. During the school year, JANE DOE 5 was sick on more than five occasions, having not previously been sick with the same frequency during prior years. JANE DOE 6 attended school unmasked last year and was not sick. Ms. Petty attempted to schedule an appointment with her children's physician in an attempt to comply with the Mask Mandate and in order to complete the Medical Certification. She was told that the first available appointment was October 24, 2021, meaning that her children would be forced to attend school while masked for more than a month and a half following the Mask Mandate's planned implementation on September 7, 2021. Ms. Petty has notified DCPS about these harms. DCPS has refused to take any remedial action.

10.     HEATHER WALLACE resides in Duval County and is the parent and guardian of JANE DOE 7 and JANE DOE 8, who both attend public school in Duval County (11th and 3rd grades). Ms. Wallace and her two daughters have been harmed by the Mask Mandate. JANE DOE 7 suffered from persistent migraine headaches during the 2020-21 school year when masks were compelled. Outside of the 2020-21 academic year, and throughout the beginning of the 2021-22 school year, JANE DOE 7 has never suffered from persistent migraine headaches. JANE DOE 8 became physically ill on the playground and vomited while being compelled to wear her mask in the Florida heat. Other than while being forced to wear a mask, JANE DOE 8 has never suffered from heat exhaustion to the point of vomiting. Ms. Wallace does not currently have a family practitioner for her daughters and due to the recently enacted Mask Mandate has attempted to find one familiar with the Medical Certification with availability ahead of the Mask

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 7 of 62

Mandate taking effect on September 7, 2021. She has been unable to find a licensed health care provider to review the Medical Certification in order to comply with the Mask Mandate. Ms. Wallace has notified DCPS about these harms. DCPS has refused to take any remedial action.

11.    GREGORY and KRYSTAL ADAME are residents of Duval County, whose child JANE DOE 9 attends second grade in a public school in Duval County. The Adames and their daughter have been harmed by the Mask Mandate. During the previous school year while masking was compelled, JANE DOE 9 attended a public school that enforced the Mask Mandate. While she was playing outside during the school day and had removed her mask, a Duval County Public Schools teacher told JANE DOE 9 that she needed to put her mask back on or she would contract Covid-19. JANE DOE 9 complied and subsequently overheated while on the playground. After being taken inside, JANE DOE 9 vomited from heat exhaustion and was taken to the Emergency Room. At no other point in her life has JANE DOE 9 suffered from heat exhaustion or vomited due to exertion. The Adames have notified DCPS about these harms. DCPS has refused to take any remedial action.

12.    JEFF and CARRIE SELLERS reside in Duval County. They are the parents and guardians of JANE DOE 10, JOHN DOE 2, and JANE DOE 11, who all attend public school in Duval County (6th, 3rd and 1st grades). The Sellers and their three children have been harmed by the Mask Mandate. JANE DOE 10 became depressed, withdrawn, and regressed socially and suffered emotionally during DCPS' enforcement of its compelled masking policy during the 2020-21 school year. Additionally, JANE DOE 11 was prescribed an inhaler during the 2020-21 school year due to breathing difficulties - breathing difficulties that she never experienced at any time in her life, both before and after being forced to wear a mask for extended periods of time while at her public school. The Sellers opted out of the DCPS mask policy at the beginning of the 2021-22 school year and their daughter JANE DOE 11 has flourished and returned to her normal, social self while not being forced to wear a mask. JOHN DOE 2 also suffered with depression, anxiety, vision disturbances, and persistent headaches while masked during the 2020-21 school year,

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 8 of 62

behaviors and conditions that he has never exhibited at any other time in his life. Similar to JANE DOE 11, JOHN DOE 2 has returned to normal without any symptoms of anxiety, depression, vision disturbances, or headaches during the 2021-22 school year while unmasked. The Sellers' religious beliefs inform their rightful desire to not force their children to wear masks as DCPS seeks to compel, and the Mask Mandate interferes with the Sellers' God-given rights. The Sellers have a family practitioner for their children, and they were notified on September 1, 2021, that their family practitioner will not sign the Medical Certification necessary to comply with the Mask Mandate "unless their kids' ears are falling off." The Sellers will be unable to locate a suitable licensed health care provider in order to complete the Medical Certification ahead of the September 7, 2021, implementation of the Mask Mandate. The Sellers have notified DCPS about these harms. DCPS has refused to take any remedial action.

13.     SEAN and CAROLINA COLLINS reside in Duval County and are the parents and guardians of JOHN DOE 3. JOHN DOE 3 attends public school in Duval County and is currently in kindergarten. The Collins and their son have been harmed by the Mask Mandate. Mr. and Mrs. Collins opted their son out of the mask requirement instituted by DCPS at the beginning of the 2021-22 school year. Despite having complied with DCPS' policy, DCPS teachers and administrators at JOHN DOE 3's school have repeatedly placed a mask on JOHN DOE 3 despite the clear intent of Mr. and Mrs. Collins as evidenced by their opt-out form submitted to DCPS. Mr. Collins has reminded the school on several occasions that his son is not to be masked, and his requests have been ignored. The Collins are recent transplants from Texas and do not have a family practitioner for their son, and they are in the process of seeking out a health care provider to complete the Medical Certification ahead of the September 7, 2021, implementation of the Mask Mandate. The Collins have notified DCPS about these harms. DCPS has refused to take any remedial action.

14.     ROBBY and TAMSYN BELL reside in Duval County and are the parents and guardians of JANE DOE 12, JANE DOE 13, and JANE DOE 14, who all attend public school in Duval County (12th

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 9 of 62

and 11th grades). The Bells and their three daughters have been harmed by the Mask Mandate. All of the Bell's daughters suffered from exhaustion, fatigue, and persistent headaches during the 2020-21 school year in which they were forced to wear masks while at school. On repeated occasions, teachers at the Bell daughters' school intimidated and threatened the Bell girls when they momentarily removed their masks. The Bell daughters have always been enthusiastic about attending school, but now are fearful and reluctant to attend school. The Bells' family practitioner refused to sign the Medical Certification without further evaluation of the medical, physical, psychological, or other health harms being inflicted on the Bell daughters. The Bells have been unable to find a licensed health care provider to review the Medical Certification in order to comply with the Mask Mandate and will be unable to do so before the Mask Mandate takes effect on September 7, 2021. For this reason, the Bell daughters will face disciplinary action and further intimidation at school when they fail to comply with the Mask Mandate due to their legitimate physical, medical, psychological, and other health concerns. The Bells have notified DCPS about these harms. DCPS has refused to take any remedial action.

15.     STAN and KATIE LEWANDOSKI reside in Duval County and are the parents and guardians of JANE DOE 15 and JOHN DOE 4, who both attend public school in Duval County (5th and 3rd grades). The Lewandoskis and their children have been harmed by the Mask Mandate.  JANE DOE 15 suffers from seasonal and food allergies and has difficulty breathing *without* a mask. JANE DOE 15's allergies were exacerbated while being forced to wear a mask during the 2020-21 school year. JANE DOE 15 suffered from social anxiety due to the necessity of removing her mask periodically due to her breathing difficulties. JANE DOE 15 has expressed that she will comply with the Mask Mandate despite her medical conditions due to her fear that she will be bullied and ostracized if she does not comply. JOHN DOE 4 is active in youth sports where he does not have to wear a mask and is justifiably confused by the requirement that he wear a mask while at school beginning September 7, 2021. The Lewandoskis do not currently have a family practitioner for their children and due to the recently enacted Mask Mandate have attempted to

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 10 of 62

find one familiar with the Medical Certification with availability ahead of the Mask Mandate taking effect on September 7, 2021. Mrs. Lewandoski was informed by the pediatrician she contacted in an effort to complete the Medical Certification that there is no possibility of obtaining an appointment ahead of September 7, 2021. She has been unable to find a licensed health care provider to review the Medical Certification in an attempt to comply with the Mask Mandate. Moreover, the Lewandoskis are not comfortable sharing sensitive health information with DCPS in order to comply with the Mask Mandate. The Lewandoskis' intend to comply with the Mask Mandate when it is implemented on September 7, 2021, due in part to their legitimate fear and past experience confirming that their children will be socially excluded, intimidated, and threatened if they attend school without a mask. The Lewandoskis do not want to remove their children from their school despite the Mask Mandate because of the social and emotional upheaval that a sudden change will cause. The Lewandoskis' children's school did not take any measures over the summer of 2021 to improve the air quality in the school. The Lewandoskis have notified DCPS about these harms. DCPS has refused to take any remedial action.

16.    MARLEATIA BESS and ROBIN FREEL are residents of Duval County and are parents and legal guardians of JANE DOE 16 and JOHN DOE 5. JANE DOE 16 and JOHN DOE 5 attend public schools in Duval County. Ms. Bess and Ms. Freel and their daughters have been harmed by the Mask Mandate. JANE DOE 16 is asthmatic and suffered from persistent headaches during the 2020-21 school year. Despite JANE DOE 16's medical condition, she was not given the option to not wear a mask at school. DCPS compelled Ms. Bess to enroll JOHN DOE 5 for in-person schooling during the 2020-21 school year, and for JOHN DOE 5 to wear a mask, despite Duval County Public School's awareness and actual knowledge that JOHN DOE 5 has hearing and speech disabilities and is autistic. For these reasons, JOHN DOE 5 has an Individualized Education Plan (IEP) approved by DCPS. Due to JOHN DOE 5's significant physical and medical impairments and the lack of accommodation from DCPS, Ms. Bess had no choice but to withdraw her son from school during the 2020-21 school year. Ms. Bess and Ms. Freel were informed

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 11 of 62

by their children's physicians that they would not sign the Medical Certification for JANE DOE 16 and JOHN DOE 5's physical and medical conditions, and for this reason have been trying to locate an alternative health care provider. As such, Ms. Bess and Ms. Freel will be unable to obtain the requisite Medical Certifications for their children in time to comply with the Mask Mandate implementation on September 7, 2021. Ms. Bess and Ms. Freel have notified DCPS about these harms. DCPS has refused to take any remedial action.

### Defendant, Duval County Public Schools

17.     Duval County Public Schools is a political subdivision of the State of Florida managed by its Superintendent, Diana Greene, who acts as Duval County Public Schools' chief executive, and a School Board comprised of seven members representing seven districts within Duval County (the "Board").

18.     Duval County Public Schools is an agency within the meaning of that term under Chapter 120, Florida Statutes, and its rulemaking authority is provided by that Chapter.

19.     Elizabeth Andersen is the Chair of the Board (the "Chair"). Duval County Public Schools may be served via service on the Chair, or on the Superintendent if the Chair is unavailable.

### The DCPS Mask Mandate

20.     Less than two weeks ago, DCPS adopted its Mask Mandate in the form of the "Emergency Rule of the School Board of Duval County" at an "emergency" meeting held on August 23rd. A copy of the Mask Mandate is attached hereto as **Exhibit A**.

21.     The controversial Mask Mandate was approved pursuant to § 120.54(4), Florida Statutes. By using this emergency statute, DCPS was able to avoid many ordinary requirements for public notice of the intended policy, public comment, and public participation.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 12 of 62

22.     The Mask Mandate has caused great public consternation and unhappiness. It has divided neighbor from neighbor. It has created a treasured "right" for parents who want their children to be masked, and it has created a terrifying daily burden for parents who do not want their children to be masked. The Mask Mandate has caused upheaval and financial hardship to families who believed they were settled in their chosen public school for the 2021-22 school year. And it has caused anxiety and trepidation among children who lived through the masked dark ages of the 2020-21 school year.

23.     The Mask Mandate provides that "all students must wear a face covering that covers the nose and the mouth at all times while inside a school or any administrative facility, inside a building for purposes of a school-related or school-sponsored event (except as provided in administrative guidance for District athletics and performing arts, which will be conspicuously posted at District athletics and performing arts events), or on District-approved transportation." Mask Mandate, p. 4.

24.     The Board requires Duval County students in kindergarten through twelfth grades, including Plaintiffs' children, to wear a face mask.

25.     Prior to enacting the Mask Mandate, the Board never studied potential harms to students and staff.

26.     After enacting the Mask Mandate, the Board has never studied actual harms to students and staff.

27.     Neither the Board nor DCPS has *ever* performed any "balancing of harms" analysis regarding the Mask Mandate.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 13 of 62

28.     The Mask Mandate provides for an undefined process that will "provide for a parent to opt out their student from this policy due to a medical, physical, or psychological condition evidenced by a medical certification." Mask Mandate, p. 4. The Mask Mandate continues: "A face covering will not be required when it would cause an impairment due to an existing health condition as evidenced by a medical certification." Mask Mandate, p. 4. The Mask Mandate does not set out the process nor define what constitutes an impairment in the eyes of DCPS.

29.     The Mask Mandate makes no mention of efforts to be undertaken by DCPS to reduce any social stigma for a student who, for medical, physical, psychological, or other health reasons, cannot or should not where a mask. Other school districts in the State that have attempted to impose mask mandates have *at least* recognized the potential psychological and emotional harm caused by being singled out and ostracized, especially at a young age.

30.     DCPS has not set forth any training or procedures for teachers, administrators, and staff in methods for reducing social stigma and minimizing psychological trauma for students who obtain exemptions to the Mask Mandate. DCPS has not even attempted to prevent its own teachers and staff from participating in creating and perpetuating "mask stigma" towards students. Some DCPS teachers themselves participate in stigmatizing unmasked students and have perpetrated this harm during the unconditional opt-out period in effect at the beginning of the 2021-22 school year.

31.     The Mask Mandate in Duval County, in fact, aims to stigmatize and intimidate. DCPS has stated that students who do not follow the guidelines may be charged with a Code of Student Conduct infraction and be subject to the appropriate consequences.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 14 of 62

32.     As a result, the social stigmatization of children who do not wear masks at school will not be abated by DCPS under the Mask Mandate. Rather, DCPS has opted for a punitive approach to enforce the social stigmatization of children who do not wear face masks.

33.     The uncontrolled social stigma rampant in DCPS's schools is causing direct, immediate, and substantial psychological harm to the Plaintiffs' children.

34.     DCPS has irrationally, arbitrarily, and capriciously instituted a Rule that creates more questions than it answers, having left the entire process for obtaining a medical certification undefined.

35.     The Mask Mandate does not itself provide for any form to be used to request an exemption.

36.     On Thursday, August 26th, DCPS released its Covid-19 Face Covering Certification Form (the "Medical Certification") attached hereto as **Exhibit B**.

37.     The Medical Certification, as a supplement to the Mask Mandate, is facially void due to its ambiguity and vagueness. The Mask Mandate, as adopted and subsequently amended by the Medical Certification, does not inform parents which medical, physical, psychological, or other health conditions will be deemed sufficient by DCPS to justify opting out. Further, the Medical Certification only directs parents to: "Complete, sign, and return this form to your child's school." Nothing in the Mask Mandate sets forth who at the school will review the sufficiency of the Medical Certifications returned, how the sensitive health information will be protected, or even attempts to outline the process for appealing a rejection by a DCPS school employee.

38.     The form completely disregards the constitutional Right of Privacy belonging to the students and parents returning these Medical Certifications. In being compelled to return

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 15 of 62

these Medical Certifications to the school, the Plaintiffs are forced to disclose private health information to unidentified DCPS agents without limitation.

39.     Undoubtedly, the school administrators, teachers, and staff will share the information, pass around the form, and otherwise indiscriminately mishandle the sensitive health information now in their possession.

40.     The failure of the School Board and DCPS to set out a rational, coherent policy and adjudicative process with respect to its Mask Mandate is causing emotional turmoil, financial hardship, and family upheaval within the County as families scramble to understand the Mask Mandate, attempt to comply, arrange for appointments with their licensed health care providers, and consider their options to avoid allowing the School Board and DCPS to harm their kids indiscriminately.

41.     The aftershocks of the Mask Mandate's adoption on August 23rd are reverberating throughout Duval County and are causing direct, immediate, and substantial financial, emotional, and psychological harm to the Plaintiffs' and their children.

42.     DCPS has completely failed to provide any expectations or guidance to the local healthcare community to provide certainty and predictability to the "process". As a result, local healthcare providers have preemptively denied families requests for medical certifications by sending out notifications to their patients that they will only sign a Medical Certification for certain, specified conditions. DCPS's insufficient guidance has created a community where parents of children with valid medical, physical, and psychological, and other health conditions *cannot* opt-out as the Mask Mandate purports to allow them to do.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 16 of 62

43.     The procedure for first, obtaining an exemption from the Mask Mandate, and second, surviving whatever review process DCPS's bureaucrats intend to implement to review the sufficiency of medical certifications, could not be more opaque and unavailable if DCPS had deliberately conspired to obstruct parents' access to such a procedure. In other words, the School Board and DCPS have unlawfully conspired to prevent parents from knowing whether their children will be able to opt-out of the Mask Mandate come September 7th.

### Plaintiffs' Children

44.     Except where otherwise noted, the Plaintiffs' children attend public schools within Duval County and are subject to, and are being harmed by, the Mask Mandate.

45.     The Plaintiffs' children have not been allowed any exemption from the Mask Mandate, despite the prior harms caused to them by forced masking.

46.     The Plaintiffs' children, in many cases, have been preemptively denied exemptions from the Mask Mandate due to the ill-defined Rule and medical certification process.

47.     The Plaintiffs' children have been harmed, and are continuously being harmed, as a direct result of the proper and improper application of the DCPS Mask Mandate.

48.     Plaintiffs' children do not have Covid-19 and do not pose a transmission risk for a disease they do not have.

49.     Some of the Plaintiffs' children have already had Covid-19 and are now effectively shielded by antibodies, greatly reducing the chance of becoming a transmission risk for Covid-19 in the future.

50.     It is an undisputed fact that school children like the Plaintiffs' children are at low-risk for acquiring a serious case of Covid-19.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 17 of 62

51.     Implicitly recognizing this undisputed fact, the School Board focused only on the prevalence of Covid-19 in Duval County (pure numbers) in the preamble to their Emergency Rule adopting the Mask Mandate and did not make any findings or hear any evidence concerning the severity of cases affecting school-age children in Duval County.

52.     It is an undisputed fact that students — including the Plaintiffs' children —have less risk of dying from Covid-19 than from influenza even when unmasked.

53.     It is an undisputed fact that school children like the Plaintiffs' children are not the primary drivers of community spread of Covid-19.

54.     It is an undisputed fact that all Duval County teachers and staff have had a full and fair opportunity to be vaccinated against Covid-19 with vaccines reported to be over 90% effective.

55.     It is an undisputed fact that many, if not most, Duval County teachers and staff have been vaccinated against Covid-19.

56.     It is an undisputed fact that Duval County teachers and staff have the ability to opt-out of Covid-19 vaccination if they decide that a medical, physical, psychological or other health condition weighs against receiving the vaccination.

57.     It is an undisputed fact that those Duval County teachers and staff that have remained unvaccinated have not been compelled to provide medical certifications to DCPS signed by licensed health care providers attesting to the DCPS' employees medical, physical, psychological, or other health conditions.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 18 of 62

58.     Children like the Plaintiffs' children normally acquire lifelong immunities through ordinary exposure to a wide variety of common diseases at school, including respiratory viruses like Covid-19.

59.     Some Plaintiffs desire that their children can benefit from, and not be deprived of, their singular opportunity to encounter Covid-19 naturally at school and develop lifelong natural immunity to the virus and its variants.

60.     Plaintiffs' children will be further harmed if they are deprived of their opportunity to encounter Covid-19 naturally at school and develop lifelong natural immunity to the virus and its variants.

**DCPS Enforces the Mask Mandate in an Arbitrary and Capricious Manner**

61.     DCPS has intentionally or negligently failed to educate its teachers and staff how to consistently, rationally, and non-arbitrarily enforce the Mask Mandate.

62.     When questioned by Plaintiffs, DCPS administrators, teachers and staff are completely unprepared to address which medical, physical, psychological, or other health conditions will satisfy the wizard behind the curtain at DCPS who will decide on the sufficiency of any Medical Certification completed by the parents and signed by a licensed health care provider as required.

63.     Similarly, DCPS administrators, teachers and staff are unequipped to answer how the sensitive health information on the medical certifications will be protected and disseminated within the DCPS system.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 19 of 62

64.     The lack of uniform guidance and procedure has led to conflicting answers from DCPS administrators, teachers, and staff, and predictably, confusion and anxiety among parents and children in the Duval County public school system.

65.     Under previous iterations of the mask mandate, DCPS's teachers and staff have forced students to wear face masks *outdoors* under strenuous conditions at high temperatures even though the Mask Mandate does not address the wearing of face masks be optional outdoors.

66.     Plaintiffs have not been able to obtain consistent or reliable answers concerning how their child's school will ensure that their child knows that they can and is reminded to remove their mask when playing or running outdoors in the Florida heat, leading to predictable harm to Plaintiffs' children.

67.     Many students including Plaintiffs' children have been subject to discipline and ridicule for violations of previous iterations of the mask mandate, and under the newly-adopted Mask Mandate, such discipline will continue to be inconsistently applied between similarly-situated students in an irrational, arbitrary, and capricious manner that varies widely from school to school, class to class, teacher to teacher, from indoors to outdoors, and even varies by time of day.

68.     As evidence of this likely harm, DCPS has not provided any guidance in the Emergency Rule regarding the constraints of potential disciplinary action and has instead only issued stern warnings through the press and otherwise about vague punishments doled out according to the Student Code of Conduct.

**The Department of Education's Data — DCPS's Mask Mandate Does <u>Not</u> Work**

69.     DCPS's Mask Mandate does not slow the spread of Covid-19.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 20 of 62

70.     On April 14, 2021, the Florida Department of Education ("DOE") sent official notice to the Superintendent of DCPS, as its chief executive officer, stating unequivocally and without qualification that "**the data shows us that district's face covering policies do not impact the spread of the virus**" (bold-face and underlined emphasis in the original). A copy of the DOE's April 14, 2021, letter (the "DOE's Covid Guidance") is attached hereto as **Exhibit C.**

71.     The DOE compared the Covid-19 performance in 27 county school districts having optional masking policies to the Covid-19 performance in 40 county school districts having mandatory masking policies.

72.     After reviewing the actual data, the DOE's Chancellor concluded that "[t]he review of this data showed <u>no link</u> between face mask policies and counties' positivity rates" (emphasis added).

73.     The DOE, in conjunction with a report on Florida's reopening from the CDC, concluded that "the health data on school campuses has increasingly bested the health data in communities at large, clearly other factors – <u>**NOT face covering policies**</u> – are driving healthy results for Florida's schools" (emphasis added).

74.     The DOE's Chancellor of Public Schools' email dated Thursday May 13, 2021, containing the DOE's conclusions represented above, is attached hereto as **Exhibit D.**

75.     DCPS has never disputed the facts asserted in the DOE's Covid Guidance, or the information cited by the DOE's Chancellor in her email.

76.     It is irrational, arbitrary, and capricious for DCPS to adopt and implement the Mask Mandate when the undisputed facts show that the Mask Mandate does not impact the spread of the virus.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 21 of 62

77.    In other words, DCPS's Mask Mandate policy is not rationally related to its stated objective of slowing or preventing the spread of Covid-19.

78.    Masks serve **no remaining good at this point in Duval County schools**.

79.    The DOE's Covid Guidance notified DCPS that "broad sweeping mandatory face covering policies **serve no remaining good at this point in our schools**" (bold-face and underlined emphasis in the original).

80.    It is irrational, arbitrary, and capricious for DCPS to maintain the Mask Mandate when it serves no remaining good at this point in our schools.

81.    DCPS disputes this fact only indirectly, by making vague references to remote political agencies (FDA, CDC) unconnected and detached from Florida's government, geography, culture, climate, and community — and not through any rationally-based local analysis or science.

82.    DCPS did not introduce, nor refer to in its Emergency Rule, any data contradicting DOE's Florida study regarding the effectiveness of masks, nor did it hear from anyone at the August 23rd "emergency" meeting suggesting that they were in possession of such contrary data.

83.    Neither the CDC nor the FDA has undertaken any analysis of the relevant data in Florida on a county-by-county basis to determine the effectiveness of mandatory masking of students in this State.

84.    DCPS's Mask Mandate is not based on science or reason, but instead some combination of the political leanings, emotions, irrational fears and psychological anxieties of its Superintendent and School Board Members.

85.    Masks generally harm students by:

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 22 of 62

a)   inhibiting peer-to-peer learning in our classrooms;

b)   creating a barrier for students and families who would otherwise choose in-person instruction if the Mask Mandate were not in place; and

c)   impeding face-to-face instruction.

(the "General Harms").

86.   DCPS received actual notice of the General Harms when it received the DOE's Covid Guidance.

87.   Although DCPS received actual notice of the General Harms, DCPS irrationally, arbitrarily, and capriciously failed to take any remedial action. Instead DCPS pretends that it did not receive notice of the General Harms and ignores them, as if by ignoring them they will go away.

88.   To be clear, since receiving notice, DCPS has not taken a single step to mitigate, reduce, or address in any way the General Harms.

89.   It is irrational, arbitrary, and capricious for DCPS to ignore the General Harms to children identified by the DOE.

90.   DCPS schools are safer from Covid-19 than is the community at large.

91.   On April 14, 2021, DCPS received actual notice from the DOE's Covid Guidance that "[r]ight now, our schools are safer than the community at large."

92.   DCPS schools are located in a state — Florida — that has never required mandatory masking.

93.   DCPS schools are located in a county — Duval County — that has never required mandatory masking.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 23 of 62

94.     Notwithstanding that its schools are safer than both the state *and* the county in which its schools are located, DCPS has irrationally, arbitrarily, and capriciously required higher levels of personal protective equipment be used by its students than what are required by similarly-situated adults and children who do not attend public schools in Duval County.

95.     DCPS has irrationally, arbitrarily, and capriciously ignored the fact that its schools are safer from Covid-19 than the community at large.

96.     Finally, the DOE notified DCPS that, "**we ask that districts, which are currently implementing a mandated face covering policy, revise their policy to be voluntary for the 2021-2022 school year**" (emphasis is original).

97.     Rather than receive this guidance backed by scientific data, DCPS went the other direction, and is obstinately, irrationally, arbitrarily, and capriciously ignoring the DOE's official request that, if it implements any mask mandate, such mandate should be unconditionally voluntary for the 2021-22 school year.

### The Department of Health's Unmasking Order

98.     DCPS has recently made a habit of ignoring the guidance of the Florida Department of Health and has acted defiantly in crafting, adopting, and implementing the Mask Mandate.

99.     On April 29, 2021, the Florida Department of Health ("DOH") categorically rescinded all of its guidance related to masking such that the DOH no longer even *recommends* face masking. Not even for adults, much less for children. A copy of the DOH's order rescinding all its previous masking recommendations is attached hereto as **Exhibit E** (the "DOH Unmasking Order").

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 24 of 62

100.    After DOH rescinded its masking recommendation, DCPS, without any explanation *stopped* following the guidance of the Florida Department of Health.

101.    DCPS is picking and choosing the source of authority that will support the Mask Mandate that it wishes to impose on students. Selecting vague guidance from the CDC or FDA not based on State data is not a rational approach drawn from science or reason.

102.    DCPS has irrationally, arbitrarily, and capriciously ignored the effect of the DOH Unmasking Order, which removes even a voluntary masking suggestion throughout the State of Florida.  DCPS crafted, adopted and is in the process of implementing the Mask Mandate *after* the DOH unmasked Florida.

### The Governor's Emergency Orders and the New Law

103.    On May 3, 2021, the Governor of the State of Florida signed two emergency orders and a new law.[2]

104.    Demonstrating the express will of both the Executive and Legislative branches of the State's government, the two emergency orders and the new law suspended and/or cancelled all standing Covid-19 emergency orders at all county and municipal levels in Florida.

105.    In other words, DCPS's students are not required to wear masks anywhere *except* at school.

106.    DCPS's Mask Mandate is now irrationally, arbitrarily, and capriciously premised on the magical belief that the Covid-19 virus can only spread on school property. If students do not wear masks when moving through the community at large, in their churches, at stores, when

_____

[2] Following scientific evidence and data to a rational conclusion, the Governor signed Emergency Executive Orders 2021-101 and 2021-102, and signed SB 2006 into law.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 25 of 62

they get together in each other's homes, in restaurants, and so forth, and even in their own homes with parents who are not required to wear masks anywhere, school masking accomplishes nothing.

107.    DCPS is irrationally, arbitrarily, and capriciously taking a position opposed by the Governor, the Legislature, the Department of Health, the Department of Education, and common sense.

108.    As further evidence of these facts, DCPS has ignored the Florida Department of Health's Emergency Rule (Rule No. 64DER21-12 titled Protocols for Controlling COVID-19 in School Settings) attached hereto as **Exhibit F.**

### DCPS's Inexcusable Failure to Mitigate Aerosols

109.    As the CDC has acknowledged as established fact, Covid-19 is *not* primarily spread through large respiratory droplets as initially believed, but rather is spread through sub-micron-sized fine aerosolized particles.

110.    DCPS had actual knowledge of this fact as early as September 2020.

111.    The utility of masks, or "face coverings" as DCPS euphemistically refers to them, was always premised on the false belief that Covid-19 was primarily spread through large respiratory water droplets that are captured in the mask's fibers.

112.    With consensus that Covid-19 is spread through fine sub-micron-sized aerosols masks have no effect. The very fine particles simply travel with airflow as it exits the sides, bottom, and top of a student's or teacher's mask. With every inhalation and exhalation, these minuscule particles travel around the mask and even through the mask unimpeded.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 26 of 62

113.     Covid-19 aerosols can remain suspended in midair in indoor rooms for up to 60 days if the air remains still.

114.     Therefore, the beneficial effects of masks — if there are any beneficial effects at all — are much less significant than other available mitigations. Mask benefits are outweighed by the harms and risks of harms attendant with involuntary masking.

115.     Specialists in airborne pathogens recommend improving indoor air quality as the first step in a "hierarchy of controls" for mitigating an indoor aerosol.

116.     Even if filters and ultraviolet lamps cannot quickly be installed in air systems, there are other quick, easy, and inexpensive steps that can be *immediately* taken to remove aerosols and vastly reduce the risk of spreading a virus.

117.     For example, until other mitigations become available, you could simply keep doors and windows open and allow fresh air to circulate the indoor air. Add some ordinary inexpensive fans and most aerosols can be removed from an indoor area in minutes. Moving and circulating are is inexpensive and does not harm anyone.

118.     In fact, the scientific consensus is that Covid-19 does not spread outdoors, because of the constant air flow and ultraviolet radiation (sunlight). Therefore, making the indoor environment as much like the outdoors is a primary objective if reducing transmission is the goal.

119.     Despite having actual notice that Covid-19 is an airborne pathogen and having actual notice that interior air quality is the *primary* way to mitigate an airborne pathogen, DCPS de-prioritized and has not pursued these easy, simple, and inexpensive ways of slowing the spread of Covid-19.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 27 of 62

120.    DCPS has ignored the management of interior air quality as the easy fix, ignoring it altogether and failing to issue guidance to its schools as to how to maximize indoor air quality through air circulation and filtration systems.

121.    It is irrational that DCPS ignored indoor air quality while pushing its Mask Mandate, which is fantastically more expensive, difficult to manage, and harmful than more effective available mitigations.

122.    The School Board is compelled to implement the least restrictive means necessary, and it has failed to do so.

123.    In its Emergency Rule, DCPS does not (because it cannot) explain why it failed — and continues to fail — to implement the most simple, basic, and inexpensive steps for effectively mitigating an airborne pathogen.

124.    DCPS's tunnel vision leading it to the Mask Mandate at the exclusion of *every other mitigation tool* is irrational *at best* and is tragically harmful and destructive at worst.

### Specific Harms Caused by the Mask Mandate

125.    The Mask Mandate hurts the very students it is intended to protect.

126.    There may be many students who are unaffected by the Mask Mandate and are well adjusted to wearing a mask for the entire school day. Admittedly, the Mask Mandate likely does some psychological and emotional good for certain students who fear Covid-19. These students should be allowed to continue wearing face masks for as long as they see fit.

127.    But other students are **harmed by face masks** in a variety of specific ways.

128.    Some students are harmed because the masks are uncomfortable and an ongoing distraction, and the Mask Mandate degrades their academic performance.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 28 of 62

129.    Some students suffer from persistent headaches while wearing the masks at school - even kids who have never experienced such headaches in the past.

130.    Some students experience exacerbation of existing sensory issues or deficits, and the masks lead to disciplinary problems for them due to their good-natured preference to sacrifice their mask compliance in an effort to learn.

131.    Some students have developed dermatological conditions or eye infections arising from the wearing of masks.

132.    Some students have difficulty hearing teachers when teachers are masked, or they have difficulty seeing through their fogged glasses, and these students' academic performance suffers.

133.    Some students have difficulty learning ordinary language and social skills when they and their peers are masked, and their social development suffers as a result.

134.    Some students experience anxiety when wearing a mask, or at the thought of having to wear a mask for an extended period of time.

135.    Some students have difficulty breathing when wearing a mask, especially when engaged in physical activity, and many of these students do not have pre-existing respiratory disorders.

136.    In May 2021, Dr. Michael Lauzardo, the University of Florida's Emerging Pathogens Institute's Covid-19 expert, testified under oath that there was no public health justification to compel a child to wear a mask if the child is experiencing *any* negative effects.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 29 of 62

137.    In pursuit of its own objectives at the expense of certain students, DCPS's Mask Mandate compels children to wear face masks despite these recognized, sub-clinical harms to a sizable portion of the county's students.

138.    The Mask Mandate is irrational in that it prioritizes one *potential* harm - Covid-19 - over the specific *actual* harms inflicted upon Plaintiffs' children by forced masking.

### The Exceptions to the Mask Mandate Are Insufficient and Violative of Fundamental Rights

139.    The text of the Mask Mandate provides for exceptions for students who have medical, physical, psychological or other health conditions.

140.    However, DCPS provides no published procedure for parents to obtain an exemption, instead throwing a medical certification form at these parents and expecting them to figure it out.

141.    DCPS has not trained its staff or teachers or administrators in how to determine the sufficiency of an exemption in the form of a completed Medical Certification.

142.    Instead, when Plaintiffs who believe their children qualify for an exemption based on clinical or sub-clinical conditions seek guidance from their "child's school", they receive inconsistent and haphazard responses from DCPS employees with absolutely no qualifications or training to opine on something as sensitive as a child's medical, physical, psychological, and other health conditions.

143.    Parents who follow this up by suggesting that they must send their children to school without a mask despite the school's determination regarding the sufficiency of the Medical

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 30 of 62

Certification, are threatened that their child will be turned away and denied access to the school, or the school will discipline the child.

144.    When parents have submitted completed Medical Certifications on behalf of their children, they are met with silence and indecision, receiving no formal response and being left to wonder if their child will be able to continue attending school without being harmed by the Mask Mandate.

145.    Other parents have been unequivocally told that their child does not qualify for an exemption, and no process to appeal the decision can be explained by DCPS or its teachers or administrators. In any case, the review process is undefined and the qualifications of those DCPS agents making sufficiency determinations are unknown. But, based on information and belief, someone is reviewing the medical certifications and applying some sort of nebulous criteria in determining the adequacy of the submitted exemptions.

146.    In other words, whatever the process behind the DCPS curtain, the School Board and the Superintendent have illegally imposed unauthorized amendments to the Mask Mandate that were never noticed, set for public hearing, or even voted upon.

147.    The illegally imposed unauthorized amendments to the Mask Mandate occurred outside the Sunshine Laws, violating civil and criminal statutes.

148.    Egregiously, DCPS has not provided any procedure for withholding a signed Medical Certification for a particular student and bearing the personal information of a licensed health care provider from public records and keeping it confidential, or otherwise provided any guarantees to health care professionals, parents and students that their identities and sensitive personal information will be kept confidential and undisclosed.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 31 of 62

149.    Some parents have discovered that, in this age of cancel culture, their health care providers are unsurprisingly reluctant to wade into fierce social and political controversies like the Mask Mandate by putting their names on medical certifications that will (potentially) immediately be published after being put into public records. Some are just as fearful that with no controls in place to guard against the unauthorized sharing of this sensitive information within DCPS, their names will be leaked, their professional reputations attacked, and their children will suffer retaliation.

150.    Furthermore, many kinds of harms - poor academic performance, delayed language development, persistent, unexplained headaches, depressed social development, and developing anxiety disorders - are not harms which family practice physicians would normally "certify" or hold any qualifications to certify.

151.    Plaintiffs and other similarly situated families are left to seek out the appropriate specialists to address and properly "certify" these harms, incurring a significant financial burden, emotional toll, and additional stress in getting their child diagnosed, only so they can immediately turn around and share this most private information with their "child's school", and within it, who knows.

152.    For all intents and purposes, there is no consistently effective exception to the Mask Mandate, and DCPS has not articulated one.

### The Florida Constitution's Rights to Due Process and Privacy

153.    The Florida Constitution guarantees that citizens — including students — shall not "be deprived of life, liberty or property without due process of law." Citizens also have the

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 32 of 62

constitutional "right to be let alone and free from governmental intrusion into the person's private life[.]"

154.    Our Constitution also guarantees that similarly situated citizens be treated the same, and not in any irrational, arbitrary or capricious manner.

155.    Masks have a significant negative historic connotation, both as speech and as having profound historical roots as symbols and are steeped in implied and explicit meaning. Masks interfere with speech (literally and figuratively), are compelled speech, and are categorically different from seat belts, helmets, or basic articles of clothing.

156.    Historically, citizens have always been allowed to choose whether to wear masks or not.

157.    On March 31, 2020, the U.S. Surgeon General said that the data does not support wearing masks, which are ineffective in preventing respiratory diseases and actually increase the risk of getting Covid-19. ("On an individual level, there was a study in 2015 looking at medical students and medical students wearing surgical masks touch their face on average 23 times...We know a major way that you can get respiratory diseases like coronavirus is by touching a surface and then touching your face so **wearing a mask improperly can actually increase your risk of getting disease. It can also give you a false sense of security.**")

158.    Masks do not protect wearers from airborne transmissible infectious agents. The Occupational Safety and Health Administration's ("OSHA") website plainly states that cloth face masks "**will not protect the wearer against airborne transmissible infectious agents due to loose fit and lack of seal or inadequate filtration.**"

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 33 of 62

159.     On June 8, 2020, the World Health Organization announced that "[f]rom the data we have, it still seems to be rare that an asymptomatic person actually transmits onward to a secondary individual," casting serious doubt on the rationality and effectiveness of wearing masks to prevent Covid-19.

160.     In May 2021 — months behind its peer agencies and the scientific community — the CDC substantially revised its prior guidance, admitting that Covid-19 is *not* spread primarily through respiratory droplets but rather is primarily spread through very fine airborne transmissible infectious agents. This fact casts serious doubt about the rationality and effectiveness of wearing masks to prevent Covid-19.

161.     While the CDC is a helpful resource for policy makers, it is irrational to rely solely on that public-health agency, which is not located in Florida, does not analyze Florida-specific issues, and is not familiar with the local climate, culture, and community. The problems of the CDC's well-known tardiness in updating its scientific guidance, and its constantly shifting advice on the tardy guidance it has issued, are a matter of public record.

162.     As recently as mid-May 2021, U.S. media were roundly criticizing the CDC for its sluggardly performance during the entire pandemic. For example:

[T]hroughout the health crisis, the CDC has been so slow to issue guidance in line with the research consensus on COVID-19 that it's brought new meaning to the concept of 'follow the science.' The CDC was several months late to the idea that surface transmission of the coronavirus is largely mythical. It was months late to the notion that the disease rarely spreads outdoors. Until this week, it continued to issue byzantine advice for vaccinated individuals even as evidence piled up that inoculated people are at extremely low risk of serious disease or transmission. **On vaccines and masks, the agency has been all over the place.**

The CDC's Big Mask Surprise Came Out of Nowhere, The Atlantic, May 15, 2021, *available online* at https://www.msn.com/en-us/news/opinion/the-cdc-e2-80-99s-big-mask-surprise-came-out-of-nowhere/ar-BB1gJTY8 (emphasis added).

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 34 of 62

163.   Despite this public lashing, the CDC is one of only two purported agency authorities relied upon by the School Board in adopting its Mask Mandate.[3]

164.   On June 19, 2020, Florida Governor Ron DeSantis rightly stated that wearing masks must be voluntary because "the Constitution is not suspended just because there is a virus."

165.   Countless studies over the last 100 years published in the world's top medical journals by the world's most respected scientists have concluded, over and over and over, that face masking is not effective for controlling or preventing respiratory illnesses, especially airborne ones.

166.   Face masking is not effective in preventing transmission of the Covid-19 virus. As many as 85% of new infections occur in persons who report they regularly wear face masks.[4]

167.   The Florida Constitution's privacy right is very broad. It "embraces more privacy interests and extends more protection to the individual in those interests, than does the federal Constitution." *In re T.W.*, 551 So.2d 1186, 1193 (Fla. 1989).

168.   Article I, Section 4 of the Florida Constitution further states that "No law shall be passed to restrain or abridge the liberty of speech[.]"

169.   The Florida Constitution also guarantees that "No person shall be deprived of life, liberty or property without due process of law." Article I, § 9, Fla. Const.

---

[3] The other being the FDA, and while vaccinations are certainly within the FDA's purview, masks are not.

[4] The School Board and DCPS did not provide any analysis of the Covid-19 cases cited in the Emergency Rule to determine the number of those cases affecting students and teachers who have opted-in to masking versus those who have opted out. Raw numbers tell the public and this Court nothing about the necessary finding to show a rational basis: Has Covid-19 been less prevalent in those that are wearing masks in Duval County schools this year?

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 35 of 62

170.     In order to invade a citizen's fundamental right of privacy, the County must meet a "strict scrutiny" standard. *N. Fla. Women's Health & Counseling Servs., Inc. v. State*, 866 So.2d 612, 635 (Fla.2003) ("Florida courts consistently have applied the 'strict' scrutiny standard whenever the Right of Privacy Clause was implicated, regardless of the nature of the activity").

171.     To withstand strict scrutiny, a law must be necessary to promote a compelling governmental interest and must be <u>narrowly tailored</u> to advance that interest. *J.P.*, 907 So. 2d at 1110.

172.     Strict scrutiny requires DCPS to show that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the <u>least intrusive</u> means. *See Winfield v. Div. of Pari–Mutuel Wagering*, 477 So.2d 544 (Fla. 1985) (explaining that where a law intrudes on the fundamental right to privacy guaranteed in Florida's Constitution, the State must demonstrate that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means).

173.     Where strict scrutiny is required, the offending legislation is **<u>presumed to be unconstitutional</u>** and **<u>DCPS has the burden</u>** of proving that the law passes muster. *N. Fla. Women's Health & Counseling Servs., Inc.*, 866 So.2d at 625 n.16 ("The legislation is presumptively unconstitutional … the State must prove that the legislation furthers a compelling State interest through the least intrusive means").

### DCPS Lacked Statutory Authority to Order the Mask Mandate

174.     DCPS makes its rules pursuant to the Florida Administrative Procedures Act (the "APA").

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 36 of 62

175.     The APA prescribes procedures for agencies to make rules, but the rules must be (1) enabled by a specific authorizing statute, and not just part of any "general" intent, and (2) may not be arbitrary and/or capricious as the APA defines those terms.

176.     The Mask Mandate is not founded on any specific authorizing statute, because none exists.

177.     The Mask Mandate is arbitrary and/or capricious as those terms are defined in the APA.

178.     For both reasons, DCPS lacks authority to order the Mask Mandate.

179.     The Mask Mandate is *void ab initio* and *ultra vires*.

**The Mask Mandate is Not Rationally Related to Any Constitutionally Legitimate End**

180.     The School Board did not articulate a compelling interest in its Emergency Rule.

181.     Based upon reasonable inferences, DCPS's compelling interest is to "achieve a uniform, efficient, and safe school system" and reduce the number of Covid-19 cases reported in the DCPS system.

182.     The Mask Mandate fails in its intended purpose, resulting in non-uniform application of avague and ill-defined Rule, making the DCPS system more inefficient with parents and teachers and administrators attention directed towards hopelessly invasive medical certifications, and likely to do nothing in the way of mitigating Covid-19 based on the available data in Florida comparing masked and unmasked populations, all while harming certain children in the process.

183.     To recap, the Mask Mandate is non-uniform, inefficient, and unsafe.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 37 of 62

184.     The DCPS Mask Mandate is not rationally related to its legitimate interest of reducing the number of Covid-19 cases within the DCPS system.

185.     With the absence of masking in the broader community, compelling kids to wear masks seven hours per day does not affect the exposure of the student and teacher population (even if masks worked), and cases will proceed as if no Mask Mandate was ever handed down.

186.     The Mask Mandate fails the rational basis test and must be overturned.

**Florida Always Intended for Covid-19 Measures to Protect Civil Rights**

187.     On May 4, 2020, the State of Florida's Covid-19 Task Force published a Report[5] called "Plan for Florida's Recovery"(the "Plan") that describes various scenarios under which citizens should "consider" using masks. Nothing in the Plan suggests that masks should be mandatory.

188.     The Plan identifies seven "Guiding Principles."

189.     The Plan's fifth Guiding Principle is "Protecting Civil Rights:"

Measures taken by the government must not impair the fundamental rights of Floridians, and when **restrictive measures** are imposed, they should be **the least restrictive measures feasible** to accomplish a **specific <u>medically necessary</u>** objective.

Florida's Re-Opening Task Force Report, p. 7 (emphasis added).

190.     DCPS's Mask Mandate impairs the fundamental rights of the Plaintiffs.

191.     The mandatory masking of all DCPS students does not accomplish any specific medically necessary objective and ignores every other specific medically necessary consideration.

192.     DCPS's Mask Mandate does not use the least restrictive measures feasible to accomplish any specific medically necessary objective.

---

[5] *Available online* at https://www.flgov.com/wp-content/uploads/covid19/Taskforce%20Report.pdf.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 38 of 62

## Summary / Conclusion

193.    The Mask Mandate imposes a restrictive measure.

194.    The Mask Mandate is not medically necessary to a specific objective.

195.    The Mask Mandate is not the least restrictive feasible measure.

196.    There is a significant likelihood of irreparable harm to the Plaintiffs due to the deprivation of fundamental rights.

197.    Plaintiffs lack an adequate remedy at law.

198.    The ongoing harms to Plaintiffs and their children, and the deprivation of the Plaintiffs' Constitutional Rights, cannot be remedied by money or any judgment other than an injunction.

199.    The Plaintiffs and their children are not being let alone and free from government interference.

200.    DCPS's Mask Mandate is facially and presumptively invalid since it implicates and infringes the Plaintiffs' fundamental Constitutional Rights.

201.    A permanent injunction of DCPS's Mask Mandate will serve the public interest. All school children, parents, teachers, and staff are unduly burdened by the DCPS's irrational, arbitrary, and capricious over-reach in a fashion never seen before in the history of Florida. Not only is it irrational, but the mask requirement violates the Plaintiffs' fundamental Florida Constitutional Rights. The Right of Privacy is destroyed by the medical certification "process". The public has a strong interest in protecting their rights, keeping children from harm, and allowing students, teachers, and staff to control their own bodies in the workplace and in public.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 39 of 62

202.    Plaintiffs have been injured and will continue to be injured as a result of the Mask Mandate.

203.    The Plaintiffs have been forced to incur attorney's fees and expend costs in order to prosecute this action.

## COUNT I
### Declaratory Action—Invalid Exercise of Statutory Authority

204.    Paragraphs 1-203 are incorporated by reference.

205.    DCPS's authority to make rules like the Mask Mandate are derived from Florida Statute by an express delegation of authority.

206.    The Mask Mandate does not disclose the rule's statutory basis anywhere in its text - that is, the School Board failed to (because it cannot) point to the specific law it is implementing in adopting the Emergency Rule.

207.    DCPS's authority may not exceed the specific powers delegated to it under statute. General delegations are ineffective to provide any basis for DCPS to implement the Mask Mandate.

208.    Florida Statutes § 120.536(1) is often called the "Map-Tack" requirement because it states that a grant of rulemaking authority alone is not sufficient authorization for an agency to adopt a rule, and only authorizes an agency to adopt rules that implement or interpret the specific powers and duties granted by the enabling statute. Florida's Map-Tack requirement provides in relevant part that:

A grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule; a specific law to be implemented is also required. An agency may adopt only rules that implement or interpret the specific powers and duties granted by the enabling statute. No agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious or is within the

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 40 of 62

agency's class of powers and duties, <u>nor shall an agency have the authority to implement</u> <u>statutory provisions setting forth general legislative intent or policy</u>. Statutory language granting rulemaking authority or generally describing the powers and functions of an agency <u>shall be construed to extend no further than implementing or interpreting the specific powers</u> <u>and duties conferred by the enabling statute</u>.

§ 120.536(1), Florida Statutes (emphasis added).

209.     Florida Statutes do not provide any specific delegated power that would support any legitimate basis for the Mask Mandate.[6]

210.     Just because DCPS believes (wrongly) that mandatory masking may be "generally related" to statutes describing some intent related to student health, § 120.533(1) specifically precludes such a general intent from forming the basis for authority for the Mask Mandate.

211.     Pursuant to § 120.52(8), an "[i]nvalid exercise of delegated legislative authority" means an action that goes beyond the powers, functions, and duties delegated to the agency by the Legislature.

212.     Pursuant to § 120.52(8)(b), if an agency exceeds its grant of statutory rulemaking authority, the action is an invalid exercise of delegated legislative authority.

213.     Pursuant to § 120.52(8)(e), a rule is invalid exercise of delegated legislative authority if it is arbitrary or capricious. "A rule is arbitrary if it is not supported by logic or the necessary facts; a rule is capricious if it is adopted without thought or reason or is irrational." *Id.*

214.     DCPS's Mask Mandate is an invalid exercise of delegated legislative authority.

---

[6] In its Emergency Rule, the School Board relies on Fla. Stat. § 1001.43(7), which provides for "First Aid and Emergencies". DCPS's reliance on this provision is either deceptive or laughable, as to take this at face value would require deeming extended mandatory masking akin to providing first aid, responding to a bomb threat, or reporting a traffic accident. Such a read ignores one the primary canons of statutory construction - *Ejusdim generis*. The School Board's inclusion of this supposed basis demonstrates how thin the support for DCPS's power grab is.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 41 of 62

215.     DCPS has acted without colorable statutory authority that is clearly in excess of its delegated powers.

216.     There is a present bona fide dispute regarding the Plaintiffs' and their children's rights and obligations under the Mask Mandate.

WHEREFORE Plaintiffs ask the Court to declare that the Mask Mandate is void as an invalid exercise of delegated statutory authority because (i) it exceeds DCPS's grant of statutory rulemaking authority, and/or (ii) it is not supported by logic or the necessary facts and has been adopted without thought or reason or is irrational, or is being applied in an arbitrary or capricious manner; and (iii) grant all such other relief as the Court deems necessary and appropriate under the circumstances, and award Plaintiffs their attorney's fees and costs.

## COUNT II
### The Mask Mandate Fails Rational Basis Review

217.     Paragraphs 1-203 are incorporated by reference.

218.     The Mask Mandate is unreasonable, illogical, arbitrary, and capricious and fails rational basis review.

219.     In *Amherst Pizza, et al v. Cuomo, et al*, No. 801673-2020 (N.Y. Sup. Ct. Erie Co. Jan. 13, 2021), the court granted a preliminary injunction of indoor dining restrictions finding that state's reliance on general contact-tracing data did not provide a sufficient factual foundation to meet the rational basis test, and therefore petitioners had a likelihood of success on the merits that the regulation was "arbitrary or capricious."

220.     DCPS's unlawful Mask Mandate is an arbitrary and unreasonable exercise of governmental power. *Noel v. State*, 191 So. 3d 370, 373 (Fla. 2016).

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 42 of 62

221.    A statute that is initially reasonable and constitutional may become irrational and unconstitutional as circumstances change, as they manifestly have done here in Duval County. *N. Broward Hosp. Dist. v. Kalitan*, 219 So. 3d 49, 55 (Fla. 2017).

222.    Even if the Court finds that the Emergency Rule was initially reasonable, the incoherence of DCPS's approach in effecting the medical certification exemption process makes the Mask Mandate irrational.

223.    Rationality further requires an appreciation for cause and effect, and a showing that the suggested action actually has an effect on the desired outcome. The School Board and DCPS have not provided, nor can they, any rational basis connecting increased masking with decreased Covid-19 in the state of Florida.

224.    DCPS's Mask Mandate is not rationally related to any legitimate governmental purpose.

WHEREFORE Plaintiffs ask the Court to declare that the Mask Mandate is void because it fails rational basis review, and to award Plaintiffs their attorney's fees and costs.

## COUNT III
### Declaratory Judgment — Right to Privacy

225.    Paragraphs 1-203 are incorporated by reference.

226.    Article I, § 23 of the Florida Constitution provides that "[e]very natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

227.    Students and their parents are natural persons residing in Florida.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 43 of 62

228.     A rule requiring a child to alter his or her physical appearance in a fundamental way—i.e., covering their face, and thereby masking their identity—is a clear invasion of the child's bodily autonomy, i.e., privacy.

229.     A rule requiring a child to involuntarily use unnecessary garments or medical devices that implicate personal medical decisions is a clear invasion of the child's bodily autonomy, i.e., privacy.

230.     A rule requiring a child to disclose the existence of medical conditions unrelated to the specific disease that the governmental agency is trying to mitigate is a clear and absolute violation of the child's privacy.

231.     A rule requiring a parent to disclose the existence of medical, physical, psychological, or other health conditions affecting their child and unrelated to the specific disease to be mitigated (is a clear and absolute violation of the parent's privacy.

232.     A rule requiring parents and children to disclose the existence of medical, physical, psychological, or other health conditions of which the governmental agency would otherwise remain unaware were it not for the compulsory disclosure is an egregious violation of both the parent's and the child's right to privacy.

233.     DCPS's rationale for mandatory masks is contradicted by the facts that the virus is airborne — not primarily transmitted by respiratory droplets — and that DCPS has inexplicably, utterly, and completely failed to take even the most basic and inexpensive steps to mitigate an airborne pathogen, such as by requiring windows and doors to remain opened, fans to be on, and outdoor classroom time to be maximized.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 44 of 62

234.    The vast majority DCPS students are healthy and are statistically unlikely to ever contract or transmit Covid-19—but are — for a perfectly arbitrary reason — required to wear masks anyway and accept the clinical and sub-clinical harms that come with extended masking *or* be subject to discipline.

235.    Furthermore, the Mask Mandate, as applied, arbitrarily exempts, or co-opts children based on a non-uniform sufficiency review process once medical certifications are submitted, providing disparate treatment within a class.

236.    The Mask Mandate also requires healthy, previously infected and/or vaccinated students to comply notwithstanding such compliance serves no purpose and only causes them harm in other ways - prioritizing prevention of a low probability potential harm (Covid-19) over actual harm and disregarding the independent judgment of these Florida citizens and children who desire to remain mask free.

237.    Even if DCPS is able to articulate a compelling State interest, which they have not yet done, the Mask Mandate is not narrowly tailored, nor is it the least intrusive means.[7]

238.    DCPS's unconstitutional Mask Mandate is a radical infringement on the well-settled constitutional and human right to privacy shared by all Floridians, which includes our rights to self-determination, bodily autonomy, medical freedom, and liberty. *J.P.*, 907 So. 2d at 1115.

---

[7] Keeping Covid-19 numbers down, at the exclusion of all other considerations, is not a compelling state interest. DCPS's favorite federal agency - the CDC - has preached the importance of herd immunity, and reducing exposure, especially in children who do not develop serious symptoms, is counterproductive in reaching the CDC's stated goal of herd immunity. We are, after all, putting shots in our arms for this very reason.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 45 of 62

239.     There is a present bona fide dispute regarding the Plaintiffs' rights and obligations under the Mask Mandate.

WHEREFORE Plaintiffs request the Court to declare that the Mask Mandate be found to be an unconstitutional violation of Plaintiffs' and their children's Right to Privacy, and therefore void, and award Plaintiffs their attorney's fees and costs.

## COUNT IV
### Preliminary Injunctive Relief

240.     Paragraphs 1-203 are incorporated by reference.

241.     A party seeking an injunction in Florida must demonstrate: 1) irreparable harm; 2) a clear legal right; 3) an inadequate remedy at law; and 4) consideration of the public interest.

242.     The continuing General Harms and Specific Harms created by the Mask Mandate, the aggravation of prior injuries created by the Mask Mandate, and the ongoing violations of the Plaintiffs' Constitutional Rights create irreparable ongoing injuries.

243.     The Plaintiffs' have clear legal rights vested in the U.S. Constitution, the Florida Constitution, and the Parents' Bill of Rights.

244.     Because of DCPS's lack of authority to enact the Mask Mandate, and the ongoing constitutional violations, Plaintiffs have a clear legal right to this relief.

245.     The Plaintiffs have no adequate remedy at law.

246.     The public interest is clearly implicated in this action, since the harm to Plaintiffs is duplicated with regard to each and every parent and student attending Duval County Public Schools who are being harmed by the Mask Mandate and/or do not wish for their children to remain masked and who do not want to be masked while attending school. Also, the public

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 46 of 62

interest favors saving children from harm by well-intended but poorly-considered "health" regulations resulting in harm greater than the threat.

247.     Furthermore, because the Mask Mandate is *ultra vires*, unreasonable, arbitrary, and capricious, and unconstitutional, and stands on an isolated island of irrationality whereas nearly all other Florida institutions — including its public health agencies — have repudiated the odious involuntary masking policy, Plaintiffs are likely to succeed on the merits.

WHEREFORE Plaintiffs request that this Court permanently enjoin DCPS from enforcing the Mask Mandate, and award Plaintiffs their attorney's fees and costs.

## COUNT V
### Declaratory Judgment — Equal Protection (Duval County)

248.     Paragraphs 1-203 are incorporated by reference.

249.     When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being "treated alike, under like circumstances and conditions." *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 602 (2008).

250.     The Florida Constitution's Declaration of Rights, section 1, which reads "all men are equal before the law . . .," is the source of Florida's equal protection guarantee. *Ga. So. & Fla. Ry. v. Seven-up Bottling Co.*, 175 So.2d 39, 40 (Fla. 1965), *quoting from Davis v. Fla. Power Co.*, 64 Fla. 246, 60 So. 759 (1913).

251.     There must, under our Florida Charter, be "some just relation to, or reasonable basis in, essential difference of conditions and circumstances with reference to the subject regulated, and [the statute] should not merely be arbitrary ...." *Eslin v. Collins*, 108 So.2d 889, 891 (Fla. 1959).

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 47 of 62

252.    In addition, a class should include all those similarly situated, unless there are practical differences sufficient to warrant a special classification. *See Ga. So., supra* note 1.

253.    DCPS's Mask Mandate and the medical certification sufficiency review process is enforced differently from school to school, class to class, teacher to teacher, and student to student.

254.    Some teachers are sympathetic to the harms encountered by students who are attempting to comply with the Mask Mandate and are sympathetic and helpful and non-punitive.

255.    Other teachers are less sympathetic. A small number of teachers are subject to irrational fears that cause them to over-react to ordinary issues of masking and mistreat students by subjecting them to harsh and unnecessary discipline.

256.    DCPS has failed to provide teachers, staff, administrators, parents and students with clear policies and procedures related to masking, particularly: how to review the sufficiency of medical certifications; how to treat sensitive medical, physical, psychological and other health data now in the school's possession; how to minimize social disruption and exclusion caused by being the child in class not wearing a mask due to a legitimate exemption; expectations regarding the proper punishment for non-compliance with the Mask Mandate; and finally, how the DCPS system will address students and parents who cannot comply due to financial burdens when a health care provider's signature is too expensive to obtain or an appointment is unavailable.

257.    As a result, the Mask Mandate is and will continue to be applied in a profoundly inconsistent, arbitrary, and capricious manner that varies widely depending on the good or bad fortune of individual students.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 48 of 62

258.    Furthermore, DCPS students are treated completely differently from students in other counties where masks are not required, even though their Constitutional Rights do not vary based on their county of residence.

259.    There is no rational basis for not exempting students who have a demonstrated and observable medical, physical, psychological or health condition that prevents them from wearing a mask while at school just because these students and their parents cannot obtain the signature of a licensed health care provider, for any number of reasons.

260.    DCPS's unconstitutional Mask Mandate is not rationally related to any legitimate end. DCPS's unlawful mandate bears no rational relationship to a legitimate government interest and blatantly violates the Florida Constitution's Equal Protection Clause. *N. Broward Hosp. Dist. v. Kalitan*, 219 So. 3d 49, 55 (2017).

261.    The Mask Mandate violates the Equal Protection clause of the Florida Constitution and is void.

262.    There is a present bona fide dispute regarding citizens' duties under the Mask Mandate.

WHEREFORE Plaintiff requests the Court to declare that the Mask Mandate be found to be an unconstitutional violation of the Equal Protection Clause under the U.S. and Florida Constitutions and therefore void, and award Plaintiffs their attorney's fees and costs.

## COUNT VI
### Violation of Basic Rights

263.    Paragraphs 1-203 are incorporated by reference.

264.    DCPS has subjected, or caused to be subjected, Plaintiffs to a deprivation of their Constitutional Rights.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 49 of 62

265.     DCPS's Mask Mandate not only deprives all students, including Plaintiffs, the right to breathe without impediment, but it also jeopardizes the spirit of the sturdy and self-reliant philosophy of individualism which underlies and supports our entire system of government, opting instead for arbitrary and autocratic power to invade vital rights and personal liberty. *See State ex rel. Davis v. City of Stuart*, 97 Fla. 69, 102-03, 120 So. 335, 347 (1929).

266.     DCPS's unconstitutional Mask Mandate clearly violates Article I, § 2, Fla. Const. because it deprives persons, including the Plaintiffs, of life, liberty, and the pursuit of happiness.

267.     The Mask Mandate strips away the Plaintiffs liberty without due process of law, which requires a fair and impartial adjudicatory process to, among other things, review the sufficiency of the medical certifications.

268.     Plaintiffs have been harmed as a result of being deprived of their Constitutional Rights.

WHEREFORE Plaintiffs request that the Court enjoin DCPS's illegal Mask Mandate, declare that the Mask Mandate be found to be an unconstitutional violation of Article I, Section 2 of the Florida Constitution and the Equal Protection Clause and therefore void, and award Plaintiffs their damages and attorney's fees and costs.

## COUNT VII
### Declaratory Judgment — Violation of Substantive Due Process

269.     Paragraphs 1-203 are incorporated by reference.

270.     The Due Process Clause of the Fourteenth Amendment, as well as Article I, § 2 of the Florida Constitution, guarantee that the state may not deprive any person of life, liberty, or property without due process of law.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 50 of 62

271.    DCPS's Mask Mandate is unconstitutional. It violates the Due Process Clause of Article I, § 9 of the Florida Constitution because it deprives Plaintiffs and countless other students of life, liberty, or property without due process of law.

272.    DCPS's unlawful Mask Mandate is an arbitrary and unreasonable exercise of governmental power. *Noel*, 191 So. 3d at 373.

273.    The Mask Mandate is vague, arbitrary, unreasonable, and irrational because it requires healthy persons who cannot possibly transmit the virus to wear masks or face discipline.

274.    The Mask Mandate is vague, arbitrary, unreasonable, and irrational because it treats similarly situated students differently only because of the luck of each student's draw of teacher, classroom, school, doctor, and last but not least, the affluence of his or her parents.

275.    Because DCPS's Mask Mandate is unconstitutionally vague, any person violating the unlawful Emergency Rule could be guilty of a misdemeanor of the second degree, pursuant to § 252.50, Florida Statutes.

276.    DCPS intends to impose discipline to Plaintiffs' children should they rationally follow the Governor's Executive Orders, the County's rules, the DOH guidance, or the DOE guidance, none of which compel mask wearing.

277.    No specific statutory delegations actually authorize the imposition of discipline in these circumstances, much less the Mask Mandate itself, leaving students unclear as to whether they may nonetheless be wrongfully punished, or – indeed - exactly what conduct is proscribed.

278.    The due process of the Plaintiffs is further violated because no clearly established review or adjudicative process has been set out by the Emergency Rule to determine the sufficiency of medical certifications and to provide the Plaintiffs a right to review.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 51 of 62

279.     There is a present bona fide dispute regarding Plaintiffs' duties and obligations under the Mask Mandate.

WHEREFORE Plaintiffs requests the Court to enjoin DCPS's illegal Mask Mandate, declare that the Mask Mandate be found to be an unconstitutional violation of the Fourteenth Amendment and Article I, § 2 of the Florida Constitution, and therefore void, and award Plaintiffs their damages and attorney's fees and costs.

## COUNT VIII
### Violation of Procedural Due Process

280.     Paragraphs 1-203 are incorporated by reference.

281.     An agency may not take action depriving a person of a liberty interest without affording procedural due process. *See Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Van Poyck v. Dugger*, 582 So.2d 108 (Fla. 1st DCA 1991).

282.     Liberty interests have been determined to include "not merely freedom from bodily restraint but also the right … to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, … and generally to enjoy those privileges long recognized … as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), 29 A.L.R. 1446.

283.     DCPS has not provided Plaintiffs with sufficient procedural due process.

284.     The Mask Mandate deprives Plaintiffs of liberty interests.

WHEREFORE Plaintiffs request the Court to enjoin DCPS's illegal Mask Mandate, declare that the Mask Mandate be found to be an unconstitutional deprivation of the Plaintiffs'

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 52 of 62

procedural due process, and therefore void, and award Plaintiffs their damages and attorney's fees and costs.

## COUNT IX
## Negligence

285.    Paragraphs 1-203 are incorporated by reference.

286.    DCPS had a duty of care to create a policy that did not harm students.

287.    DCPS had a duty of care to study potential harms that could result to children from the extended and compulsory wearing of face masks.

288.    DCPS had a duty of care to study the actual harms that did result to children from the extended and compulsory wearing of face masks.

289.    DCPS had a duty of care to promptly respond to parent requests for information concerning how to comply with the Mask Mandate.

290.    DCPS had a duty of care to properly train its staff in how to effectively enforce the Mask Mandate.

291.    DCPS had a duty of care to properly supervise its staff in its enforcement of the Mask Mandate.

292.    DCPS had a duty of care to provide adequate notice of the Mask Mandate's implementation so that parents and their children could make reasonably informed decisions about their educational options.

293.    DCPS had a duty of care to create and deploy a reasonably accessible procedure whereby a parent or student or teacher could obtain a review or appeal of a denial of an exemption to the Mask Mandate.

294.    DCPS did none of those things.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 53 of 62

295.     DCPS breached its duties of care to parents and children.

296.     DCPS was negligent.

297.     DCPS was grossly negligent.

298.     As a result of DCPS's breach of its duties of care, Plaintiffs have been injured by, without limitation, aggravation of existing physical and psychological conditions, creation of new physical and psychological disorders, anxiety, loss of educational attainment, cost of private school, loss of earning potential due to lowered academic performance, loss of enjoyment of life, unexpected financial burdens, loss of time and earnings, and other similar and related harms.

WHEREFORE Plaintiffs demand judgment against DCPS for all their damages, including special damages, and award Plaintiffs their damages and attorney's fees and costs. Plaintiffs reserve the right to move for punitive damages in the manner provided by Florida Statute.

## COUNT X
### Violation of Freedom of Speech

299.     Paragraphs 1-203 are incorporated by reference.

300.     DCPS's unlawful Mask Mandate is unconstitutional because it violates the freedom of speech of Plaintiffs, other students, and visitors guaranteed by Article I, § 4 of the Florida Constitution, which provides in pertinent part "No law shall be passed to restrain or abridge the liberty of speech[.]"

301.     Masks are compelled symbolic speech.

302.     DCPS intends the Mask Mandate to coercively convey an affiliation with a particular political party and/or ideology.

303.     DCPS's agents have stated that the Mask Mandate is intended to coercively convey a message that the wearer "cares about others."

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 54 of 62

304.     Ironically, as DCPS is perfectly aware, face masks have always historically communicated messages of intimidation, violence, and actual and implied threats.

305.     Masks interfere with students' ability to <u>speak</u> and <u>communicate</u>, essential components of fundamental free speech.

306.     The face has a unique role in communication. No other part of the body serves as specific a function for personal identity and for expression of thought and emotion. A degree of normalcy is expected for effective verbal and non-verbal communication. The face is such a prominent feature of a person that it plays a critical role in his or her physical, psychological and emotional make up.

307.     Masks prevent citizens from expressing themselves through their faces, facial expressions, and other non-verbal communication.

308.     Masks interfere with students' physical, psychological, and emotional make up.

309.     Facial coverings severely impinge on speaking and not only impair speech, but also discourage students from speaking or communicating at all, due to difficulties such as inability to hear a muffled voice, or difficulties breathing, or making oneself understood, as many students experience while being forced to wear face masks.

310.     DCPS's Mask Mandate violates Plaintiffs' freedom of speech because a mask is in and of itself a form of speech. By forcing countless individuals, including the Plaintiffs, to wear a mask, DCPS has not meaningfully protected anyone from harm or disease, but has unjustly and unlawfully forced a warped and potentially harmful form of speech upon hundreds of thousands of people.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 55 of 62

311.     DCPS has forced students and Plaintiffs' children to act as DCPS's chosen vessels to communicate its political and/or sociological ideologies.

312.     DCPS's Mask Mandate infringes upon early childhood development and the learning of speech. Children, as well as adults, need to see mouths moving and facial expressions to develop speech and learn to communicate properly as living, breathing human beings have done for countless generations.

313.     Without question, DCPS's Mask Mandate *literally* curbs free speech for all its students, especially including children still learning how to speak, or to speak well—who now must attempt to do so wearing a harmful and completely unnecessary device that impedes and prevents speech.

314.     DCPS's unconstitutional Mask Mandate recklessly retards speech and language development, which (DCPS may deem) inexplicably do not fall within the arbitrary and inexplicable exceptions to the Emergency Rule.

WHEREFORE Plaintiffs request that the Court permanently enjoin the County's illegal Mask Mandate, declare that the Mask Mandate is an unconstitutional violation of Plaintiffs' free speech rights, and therefore void, and award Plaintiffs their damages and attorney's fees and costs.

## COUNT XI
### Declaratory Judgment – Right to High Quality Education

315.     Paragraphs 1-203 are incorporated by reference.

316.     Article IX of the Florida Constitution provides Floridians with a fundamental right to a high-quality education:

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 56 of 62

Adequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality system of free public schools that allows students to obtain a high quality education[.]

317.    As applied, the Mask Mandate unconstitutionally prevents the Plaintiffs from obtaining a free high-quality education within the Duval County Public School system.

318.    In order to obtain a high-quality education, the Plaintiffs' children would be required to pay for private school where masking is optional, or alternatively, relocate to a county where masks remain properly optional.

319.    Facially, the Mask Mandate prevents many Duval County students from obtaining a high-quality education, whereas in other Florida counties where masking is optional, students can obtain a categorically higher quality education.

320.    Therefore, the Mask Mandate unconstitutionally destroys a "uniform" high quality system of public education throughout the State of Florida and deprives the Plaintiffs of their fundamental constitutional rights.

WHEREFORE Plaintiffs request that the Court declare that the Mask Mandate is an unconstitutional violation of Plaintiffs' and their children's Right to Public Education, and therefore void, and award Plaintiffs their attorney's fees and costs.

## COUNT XII
### Violation of the Parents Bill of Rights – Fla. Stat. § 1014.01 et seq.

321.    Paragraphs 1-203 are incorporated by reference.

322.    The Mask Mandate is a violation of the Parents' Bill of Rights, pursuant to Fla. Stat. § 1014.01 et seq.

323.    "[I]t is a fundamental right of parents to direct the upbringing, education, and care of their minor children." Fla. Stat. § 1014.02.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 57 of 62

324.     The Mask Mandate, if enforced, violates the statutory right of the Plaintiffs to direct the upbringing, education, and care of their children.

325.     In direct violation of the Parents' Bill of Rights, DCPS's Mask Mandate usurps the rights of these Plaintiffs and compels the parents to allow for education and care of their children in violation of the Plaintiffs' personal beliefs.

326.     DCPS is required to, and cannot, demonstrate that it is infringing on the fundamental rights of the Plaintiffs using reasonable and necessary action to achieve a compelling state interest, and that DCPS's Mask Mandate is narrowly tailored and is not otherwise served by a less restrictive means.

327.     DCPS is a political subdivision and governmental entity of the State and cannot enforce the Mask Mandate absent this requisite showing. The Emergency Rule and the "emergency" meeting, nor any of the follow-on guidance from DCPS, have failed to discuss or demonstrate how the Mask Mandate is narrowly tailored or why DCPS's ends are not served by a less restrictive means.

328.     Plaintiffs will show that there are feasible, less restrictive means available to DCPS that could achieve DCPS's desired outcomes (assuming that outcome is something besides forcing every kid in DCPS schools to wear a mask for political sport).

329.     "All parental rights are reserved to the parent of a minor of this state without obstruction or interference from the state, any of its political subdivisions, any other governmental entity, or any other state institution" [.] Fla. Stat. § 1014.04.

330.     Further, the "rights of a parent of a minor child in this state" expressly include:

a)       The right to direct the education and care of his or her minor child.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 58 of 62

b)      The right to direct the upbringing and the moral or religious training of his or her minor child.

c)      [omitted intentionally]

d)      The right . . . to access and review all school records relating to his or her minor child.

e)      The right to make health care decisions for his or her minor child, unless otherwise prohibited by law.

f)      The right to access and review all medical records of his or her minor child . . . .

331.    DCPS's Mask Mandates violates the provisions above in reinforcing moral training not desired by the parent Plaintiffs, failing to provide an adequate process and assurances that the Plaintiffs will receive the medical records created by DCPS in processing the Medical Certifications submitted, and deciding *for the* Plaintiff parents which health, medical and psychological conditions the Plaintiffs shall prioritize.

332.    Further, "a parent of a minor child in this state has inalienable rights that are more comprehensive than those listed in this section, unless such rights have been legally waived or terminated." Fla. Stat. § 1014.04(4).

333.    The Plaintiffs have not waived their fundamental, inalienable legal rights.

334.    DCPS lacks the power or authority to terminate the Plaintiffs fundamental, inalienable legal rights.

335.    DCPS, and the School Board, must develop and implement policies allowing for a parent to object to instructional materials and other materials used in the classroom, and parents

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 59 of 62

are expressly given the ability to object based upon moral and religious beliefs or simply upon the belief that such materials are harmful. *See,* Fla. Stat. § 1014.05(1)(c).

336.    The Mask Mandate compels the usage of masks, which are intended both as instructional materials to send a moral and/or political and/or scientific message. Further, the masks compelled by the Mask Mandate are indisputably materials used in the classroom.

337.    Plaintiffs are allowed to object to these materials based upon their moral and religious beliefs or based upon their belief that the materials used are harmful, and DCPS has not provided a policy to allow the Plaintiff parents to object on moral, religious, or harm grounds – instead providing only a medical opt-out policy through the Medical Certification.

338.    DCPS must provide procedures for a parent to learn about parental rights and responsibilities under general law, including: (6) the right of a parent to inspect district instructional materials; and (11) the right of a parent to opt out of any district-level data collection relating to his or her minor child not required by law. *See*, Fla. Stat. 1014.05(1)(f).

339.    The Plaintiffs and other similarly-situated parents have requested and been denied the procedures and instructional materials provided by DCPS to its staff and employees regarding the Mask Mandate.

340.    Similarly, DCPS has not provided and has refused to provide specificity regarding the data collection underway through collection of the Medical Certification forms and how a parent can opt out of the requirement due to concerns over unauthorized data collection.

341.    The Plaintiffs and other similarly-situated parents have requested the information required under Fla. Stat. § 1014.05 and the Superintendent has vailed to provide such information within the requisite 10-day period.

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 60 of 62

WHEREFORE Plaintiffs request the Court to declare that the Mask Mandate be found to be an illegal violation of the Parents' Bill of Rights, and as such an unconstitutional violation of Plaintiffs' fundamental, inalienable rights, and therefore void, to temporarily or permanently enjoin DCPS from implementing the Mask Mandate, and award Plaintiffs their attorney's fees and costs.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

## REQUEST FOR EXPEDITED CONSIDERATION

Plaintiffs respectfully request that this Court expedite consideration of this action pursuant to § 86.111, Fla. Stat., which authorizes the Court to "order a speedy hearing of an action for a declaratory judgment" and "advance it on the calendar."

**DATED** this 2nd day of September, 2021.

ANDERSONGLENN LLP

/s/ Nicholas P. Whitney
**Gregory A. Anderson, Esquire**
Florida Bar Number: 398853
gaanderson@asglaw.com
**Nicholas P. Whitney, Esquire**
Florida Bar Number: 119450
nwhitney@asglaw.com
10751 Deerwood Park Boulevard, Ste. 105
Jacksonville, Florida 32256
Telephone: (904) 273-4734
Facsimile: (904) 273-4712
*Attorneys for Plaintiff*

/s/ Cord Byrd
**Cord Byrd, Esquire**
Florida Bar No. 134406
cord@cordbyrdlaw.com
esther@cordbyrdlaw.com

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 61 of 62

1015 Atlantic Boulevard, #281
Atlantic Beach, FL 32233
Telephone:  (904) 246-2404
*Co-Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on September 2, 2021, I electronically filed the foregoing document with the Clerk of the Court using Florida Court's E-Filing Portal and that Defendant is being furnished a copy of the foregoing document via service of process.

*/s/ Nicholas P. Whitney*
**Nicholas P. Whitney, Esquire**

Complaint for Declaratory and Injunctive Relief
Helm, et al., v. Duval County Public Schools
Page 62 of 62

*EXHIBIT "A"*

## EMERGENCY RULE OF THE SCHOOL BOARD OF DUVAL COUNTY

WHEREAS, Article IX, § 1 of the Florida constitution provides for a uniform, efficient, safe, secure, and high-quality system of free education; and

WHEREAS, To achieve a uniform, efficient, and safe school system, the Florida Constitution created school boards (Art. IX); and

WHEREAS, The Florida constitution grants the school boards the right to "operate, control and supervise all free public schools." *See* Art. IX § 4 (Fla. Const.); and

WHEREAS, The School Board of Duval County, Florida (the "School Board") is a duly elected body; and

WHEREAS The School Board is responsible for the "proper attention to health, safety, and other matters relating to the welfare of students." Fla. Stat § 1001.42(8)(a); and

WHEREAS, The School Board also has supplemental powers to "adopt programs and policies to ensure appropriate response in emergency situations." Fla. Stat. § 1001.43(7); and

WHEREAS Duval County Public Schools is one of the largest school districts in Florida;

WHEREAS, The School Board of Duval County values the health, safety, and welfare of its students and the District staff; and

WHEREAS, The Delta variant of COVID-19 has been shown to be highly transmissible; and

WHEREAS, the Governor of Florida issued Executive Order 21-175 which in part directed the Florida Department of Health and the Florida Department of Education to immediately execute emergency rule to

ensure safety protocols for controlling the spread of COVID-19 IN SCHOOLS; and

WHEREAS, The Florida Department of Health executed Emergency Rule 64DER21-12 which provides in part "Student may wear masks or facial covering as a mitigation measure; however, the school must allow for a parent or legal guardian of the student to opt-out the student from wearing a face covering or mask"; and

WHEREAS, The 2021-2022 school year began on August 10, 2021 in Duval County; and

WHEREAS, After only ten days of school, 815 cases of Covid-19 were reported to FDOH.  Of those, 111 involved staff and 704 involved students who reported a positive Covid-19 result; and

WHEREAS, a total of 2498 cases were reported in total on the School's dashboard for the 2020-2021 school year, meaning that in less than a week into the 2021-2022 school year beginning, DCPS was already at 19% of the total cases reported for the entire 2020-2021 school year;

WHEREAS, the Florida Department of Health has admittedly been unable to complete contact tracing, case investigations and timely notification to impacted families regarding the results of the investigation;

WHEREAS, of the 895 Covid-19 positive cases reported this year, only 106 cases have been completed and closed by FDOH;

WHEREAS, due to an immediate danger to public health, safety, and welfare that required emergency action, an Emergency meeting of the School Board was called by the Chair, as well as other Board members, to immediately address the emergency; and

WHEREAS, The School Board of Duval County heard from the Duval County Department of Health and medical experts and doctors at

numerous meetings predating the emergency meeting as well as at the August 23, 2021 emergency meeting; and

WHEREAS, The doctors and medical experts testified that the wearing of masks and vaccines are the most effective tools for controlling the spread of COVID-19 in schools; and

WHEREAS, Masks protect the wearer and those around them by protecting against the transmission of large droplets from one person to another; and

WHEREAS, Mask usage is beneficial to keeping children in school; and

WHEREAS, The U.S.Food & Drug Administration ("FDA") previously stated: "There is no adequate, approved, and available alternative to the emergency use of face masks for source control by the general public … to help prevent the spread of the virus due to face mask shortages during the COVID-19 pandemic"; and

WHEREAS, The Emergency Rule executed by the Department of Health does not prohibit the requirement of a medical certificate for opting out; and

WHEREAS, The Emergency rule adopted by the School Board of Duval County gives the decision opting out of the facial covering requirement to the parent with a medical certification; and

WHEREAS, The Center for Disease Control ("CDC") recommends children in school wear facial coverings indoors.

NOW, THEREFORE, THE SCHOOL BOARD OF DUVAL COUNTY ENACTS THE FOLLOWING EMERGENCY RULE PURSUANT TO SECTION 120.54, FLORIDA STATUTES AND BOARD POLICY 2.25:

I.      Subject to the process that provides for a parent to opt out their student from this policy due to a medical, physical, or psychological condition evidenced by a medical certification (see paragraph II), all students must wear a face covering that covers both the nose and the mouth at all times while inside a school or any administrative facility, inside a building for purposes of a school-related or school-sponsored events (except as provided in administrative guidance for District athletics and performing arts, which will be conspicuously posted at District athletics and performing arts events), or on District-approved transportation.

II.      **Opt-out/Exemptions.**  A face covering will not be required when it would cause an impairment due to an existing health condition as evidenced by a medical certification. To claim an exemption/opt-out due to an existing health condition, the District will require a medical certification from a licensed health care provider that the student has a medical, physical, or psychological condition that prevents the student from being able to safely wear a face covering, and a description of the medical reason.  This certification will be set forth on a form identified by a process and format by the District.

III.      **Duration of Emergency Rule**.  The Emergency Rule was approved by the School Board on August 23,2021, for a ninety (90) day period (except as set forth in paragraph IV) commencing on September 7, 2021.

IV.      **Further action required.** The Superintendent shall develop procedures, to be approved by the Board on September 7, 2021, that

provide for certain health data points to result in an automatic suspension of this emergency policy while such policy is in effect.

V.     **Basis for Emergency Rule**

This Emergency Rule approved is based upon the School Board's findings at the Emergency Meeting held August 23, 2021 including, but not limited to the number of students and staff in the DCPS reporting positive COVID-19 tests, FDOH's admitted inability to conduct timely case investigations which has a direct impact on the spread of the virus throughout our schools, and communication predating and occurring at the August 23, 2021 meeting from the professional health community.

VI.    **Procedural Fairness Afforded**.

The meeting was properly noticed on August 22, 2021 at 1:00 p.m. and amended and reposted on August 23, 2021 at 9:00 a.m.

*EXHIBIT "B"*

**DUVAL COUNTY PUBLIC SCHOOLS**
**COVID-19 FACE COVERING CERTIFICATION**

**Instructions:** Complete, sign, and return this form to your child's school.

### Duval County School Board Emergency Face Covering Policy (Effective September 7, 2021)

Subject to the process that provides for a parent to opt out their child from this policy due to a medical, physical, or psychological condition evidenced by a medical certification , all students must wear a face covering that covers both the nose and the mouth at all times while inside a school or any administrative facility, inside a building for purposes of a school-related or school-sponsored events (except as provided in administrative guidance for District athletics and performing arts, which will be conspicuously posted at District athletics and performing arts events), or on District-approved transportation.

A face covering WILL NOT be required for persons who provide this COVID-19 Face Covering Certification from a licensed health care provider stating that the person has a medical, physical, or psychological condition that prevents the person from being able to safely wear a face covering.  A licensed health care provider means any provider of health care services who is licensed or certified by the applicable governmental regulatory authority **to the extent that services are within the scope of the license or certification.**

*Note:  Students who 1) submitted documentation containing substantially similar information to what is contained in this Certification, AND 2) the condition set forth in those documents still applies to the student due to a continuing condition, are not required to additionally submit this particular form for the 2021-2022 school year.*

**The CDC recommends universal indoor masking for all teachers, staff, students, and visitors to K-12 schools, regardless of vaccination status. Properly wearing face coverings, physical distancing, and promoting vaccinations for eligible students and employees are key strategies that mitigate against the spread of COVID-19.**

**By filling out the form below, I am requesting that my child be released from the COVID-19 emergency face covering requirement as recommended by the CDC.  I understand that the above policy language requiring a mask will be reconsidered on or before December 6, 2021, at which time this form may no longer be applicable.  I also understand that pursuant to section 768.38, Florida Statutes, an educational institution is not liable for damages, injury, or death arising from or related to COVID-19, provided it made a good faith effort to substantially comply with one or more sources or set of health standards or guidance that was authoritative or controlling at the time the cause of action is alleged to have occurred.**

**Student Name (Print)** _____
                                              *Last*                                    *First*                              *Middle*

**Student School** _____ **Grade** _____

**As the Parent/Guardian of** _____ ,  _____
                                                              *Student Name*                                              *DOB*

**I hereby request that my child be released from the COVID-19 emergency face covering requirement based on a medical need as certified by a licensed health care provider below.**

_____     _____     _____
**Parent/Guardian Name (Print)**              **Parent/Guardian (Signature)**                **Date**

-------------------------------------------------------------------------------------------------------------------------------

**FOR LICENSED HEALTH CARE PROVIDER ONLY** (physician/psychologist, etc.):

I certify that _____ cannot wear a  ☐ mask   ☐ face shield   ☐ or both
                         *First & Last Name (Print)*
due to a medical, physical or psychological condition.

_____     _____
*Health Care Provider License No.*                          *Health Care Provider Phone No.*

_____     _____  _____
*Licensed Health Care Provider Name (Print)*          *Licensed Health Care Provider Signature*       *Date*

*EXHIBIT "C"*



**FLORIDA DEPARTMENT OF**
# EDUCATION
fldoe.org

State Board of Education

Andy Tuck, *Chair*
Marva Johnson, *Vice Chair*
*Members:*
Monesia Brown
Ben Gibson
Tom Grady
Ryan Petty
Joe York

Richard Corcoran
Commissioner of Education

## MEMORANDUM

**TO:**        School District Superintendents

**FROM:**   Richard Corcoran

**DATE:**   April 14, 2021

**SUBJECT:**   Planning for the 2021-2022 School Year

Florida continues to outwork and outperform the nation in the number of students receiving a high-quality education in an in-person educational setting, and our success has been rooted in schools, districts and the state implementing learned best practices and constantly relying on science and evidence.

Throughout the successful reopening of our schools for in-person instruction, we have consistently provided families with the ability to make educational decisions that are in the best interest of their children. Our efforts ensured parents had the ability to choose from multiple learning modality options for the current school year, with the option to transition to new modalities when their child may have required another option to ensure they were achieving adequate progress.

Florida has once again proven that one-size-fits-all policies do not meet the unique needs of individual students or their families. Therefore, we should continue to make surgical – not sweeping – decisions to mitigate large-scale educational disruptions as we are planning for the upcoming 2021-2022 school year.

As you reflect on the current school year and look ahead to 2021-2022, an example of a one-size-fits-all policy are the mandatory face covering policies in some districts and schools. Upon reviewing the policies of those districts with mandatory face covering policies, reviewing all districts relevant health data, and factoring in such data points as the percentage of students learning in-person and the relative population of a county (which is often synonymous with a county's community health resources), **the data shows us that districts' face covering policies do not impact the spread of the virus.**

Face coverings are a personal decision **and certainly families and individuals should maintain their ability to make a decision that is unique to their circumstances.** Broad sweeping mandatory face covering policies **serve no remaining good at this point in our schools.**

Mandatory face covering policies inhibit peer-to-peer learning in our classrooms and they may also unintentionally create a barrier for students and families who would otherwise choose in-person instruction if such a policy were not in place. **Such policies may also impede instruction in certain cases, especially for students with disabilities and English language learners who benefit from viewing a teacher's face and mouth.**

Planning for the 2021-2022 School Year
April 14, 2021
Page Two

As we are planning to provide our students with robust summer programs and welcoming students returning to school in the 2021-2022 school year, we expect more students to participate in face-to-face instruction. Right now, our schools are safer than the communities at large. This safety record should only increase next school year with the increased availability of vaccines.

With this return, **we ask that districts, which currently are implementing a mandated face covering policy, revise their policy to be voluntary for the 2021-2022 school year.**

Florida's districts and schools have done an incredible job implementing, learning and improving upon mitigations and protections for our students, educators, school leaders and Florida's entire education family. Without a doubt, our teachers and school leaders are heroes and they have led the nation in reopening Florida's schools, while giving families broad choices for their child's education. Let us continue to support those choices for our families as we ready ourselves for the 2021-2022 school year.

*EXHIBIT "D"*















**From: Chancellor of Public Schools |**
Chancellor.Oliva@fldoe.org

**To:** ×××××××××
××××××××××

Thursday, May 13,
11:08 AM

Dear ××××,

Thank you for reaching out to the Florida Department of Education. We appreciate your insights and are grateful for feedback like this.

Please see the department's guidance to districts regarding Executive Orders 21-101 and 21-102 below.

**Guidance on State of Florida's Executive Orders 21-101 and 21-102:**

Questions have arisen over the impacts of the Executive Orders EO-21-101, which is not effective until July 1, 2021, and EO-21-102, which is effective immediately.

To clarify, EO-21-102 only impacts city and county governments, and does NOT impact school districts and individual schools.
Moreover, EO-21-101 and EO-21-102 only impacts restrictive COVID-19 orders/ordinances that are adopted through emergency enactment.

**Neither EO-21-101 nor EO-21-102 impact any school district's policies for the remainder of the 2020-21 school year.**

Additionally, from the beginning of the pandemic, the #1 mitigation strategy the Department advised, and was consistently advising, was to keep sick people at home. Endless research continues to show that staying home when you are sick is the best proven method. With this in mind, on April 14, 2021, Commissioner Corcoran sent a letter of guidance to all of Florida's school superintendents recommending that masks be made a matter of parental choice. That letter is attached along with data used to make this recommendation.

Regarding your data request, the data referenced in the memo includes the following:

- **2020-2021 school year face covering policies by district (attached)** - 27 county school districts had optional face covering policies; and 40 county school districts had required face covering policies.
- **District populations** – Defined by county school district eligibility for sparsity funds in the FEFP found on page 6, column 7 here: Florida Education Finance Program.
- **Positivity rates by district** - Weekly FDOH positivity rates here: Florida's COVID-19 Data and Surveillance Dashboard (arcgis.com) and historical positivity rates here: Home | Florida Department of Health COVID-19 Outbreak (floridahealthcovid19.gov).
- **Preliminary survey 3 data from school districts (attached)**

The review of this data showed no link between face mask policies and counties' positivity rates.

The CDC's March 2021 Florida report (graphic below) also validated the conclusion the Commissioner articulated in his letter by highlighting that Florida schools got it right – they were learning and implementing best practices quickly and our schools were leading the way. The data also supports the CDC's finding that incidents at schools reflect what students and adults bring to campuses, and are NOT driven by what happens in school. The CDC's report about Florida's experience with school campus re-openings showed that week by week, as more students were returning to campuses, districts and schools did a tremendous job implementing and constantly improving upon best practices for health and safety – making schools actually safer than their communities at large. The health data on school campuses has increasingly bested the health data in communities at large, clearly other factors – NOT face covering policies – are driving healthy results for Florida's schools.



FIGURE. Weekly school-related COVID-19 cases reported among students, as a proportion of overall cases in children aged 5–17 years and in the general population — Florida, August–December 2020*

Sincerely,

The Office of the Chancellor, Division of Public Schools







*EXHIBIT "E"*



**Mission:**
To protect, promote & improve the health
of all people in Florida through integrated
state, county & community efforts.



**Florida HEALTH**

**Ron DeSantis**
Governor

**Scott A. Rivkees, MD**
State Surgeon General

2021 APR 29  PM 3: 20

**STATE OF FLORIDA
DEPARTMENT OF HEALTH
PUBLIC HEALTH ADVISORY**

In Re:
Rescission of Prior COVID-19 Public Health Advisories,
Eligibility for COVID-19 Vaccines,
Resuming in-person Government Services

**WHEREAS**, Novel Coronavirus Disease 2019 (COVID-19) is a severe acute respiratory illness that presents with symptoms similar to those of influenza; and

**WHEREAS**, on March 1, 2020, I declared a Public Health Emergency exists in the State of Florida as a result of COVID; and

**WHEREAS**, On March 25, 2020, I issued a Public Health Advisory relating to protective measures for vulnerable populations, gatherings of private citizens, and density of the workforce; and

**WHEREAS**, on June 22, 2020, and July 21, 2020, I issued Public Health Advisories updating the guidance relating to protective measures; and

**WHEREAS**, Florida's first phase of vaccine distribution prioritized seniors first; and

**WHEREAS**, on March 26, 2021, Governor DeSantis issued Executive Order 21-79, allowing all Floridians to be eligible to receive COVID-19 vaccinations beginning April 5, 2021 in accordance with the requirements prescribed by the Food and Drug Administration; and

**WHEREAS**, the State has taken tremendous steps to vaccinate nearly 9 million individuals against COVID-19; and

**WHEREAS**, the State maintains a sufficient supply of COVID-19 vaccines to

**Florida Department of Health
Office of the State Surgeon General**
4052 Bald Cypress Way, Bin A-01 • Tallahassee, FL 32399
PHONE: 850/245-4444 • FAX: 850/414-6894
FloridaHealth.gov



Accredited Health Department
Public Health Accreditation Board

provide an opportunity for every eligible Floridian who desires a COVID-19 vaccine to be vaccinated; and

**WHEREAS,** scientific studies show that COVID-19 vaccines protect individuals from COVID-19, dramatically diminish hospitalizations and death caused by COVID-19, and protect both the vaccinated individual and others against COVID-19 infection; and

**WHEREAS,** continuing COVID-19 restrictions on individuals, with no end in sight, including long-term use of face coverings and withdrawal from social and recreational gatherings, pose a risk of adverse and unintended consequences; and

**WHEREAS,** due to COVID-19 wide-spread vaccine availability, fully vaccinated individuals should no longer be advised to wear face coverings or avoid social and recreational gatherings except in limited circumstances; and

**WHEREAS,** due to COVID-19 vaccine efficacy, State government offices should be conducting in-person operations to carry out their duties and better serve Floridians.

**NOW, THEREFORE,** I, Scott A. Rivkees, M.D., as State Surgeon General and State Health Officer, hereby rescind the COVID-19 public health advisories issued on March 25, 2020, June 22, 2020, July 21, 2020, and January 21, 2021 and issue the following:

1. Until further notice, every individual in Florida providing COVID-19 vaccinations, or assisting with coordinating COVID-19 vaccination administration should provide a COVID-19 vaccine to any eligible individual (as prescribed by the Food and Drug Administration) who is a Florida resident or who is present in Florida for the purpose of providing goods or services for the benefit of residents and visitors of the State of Florida. Additionally, every individual in Florida providing COVID-19 vaccinations, or assisting with

2

coordinating COVID-19 vaccination administrations, is encouraged to ensure that no COVID-19 vaccines are wasted.

2.  Because vaccines are available to all eligible Floridians state-wide, Government offices should be conducting in-person operations and services.

Issued this 29th day of April, 2021, in Department of Health offices, Tallahassee, Leon County, Florida.

Scott A. Rivkees, M.D.
State Surgeon General

3

*EXHIBIT "F"*

Notice of Emergency Rule

**DEPARTMENT OF HEALTH**
**Division of Disease Control**
RULE NO.:        RULE TITLE:
64DER21-12    Protocols for Controlling COVID-19 in School Settings
SPECIFIC REASONS FOR FINDING AN IMMEDIATE DANGER TO THE PUBLIC HEALTH, SAFETY OR
WELFARE: Because a recent increase in COVID-19 infections, largely due to the spread of the COVID-19 delta
variant, coincides with the imminent start of the school year, it is imperative that state health and education authorities
provide emergency guidance to school districts concerning the governance of COVID-19 protocols in schools.
Accordingly, pursuant to its authority to adopt rules governing the control of preventable communicable diseases in
public schools, *see* section 1003.22(3), Florida Statutes, the Florida Department of Health, after consultation with the
Department of Education, hereby promulgates an emergency rule regarding COVID-19 protocols in public schools to
encourage a safe and effective in-person learning environment for Florida's schoolchildren during the upcoming
school year; to prevent the unnecessary removal of students from school; and to safeguard the rights of parents and
their children.

This emergency rule conforms to Executive Order Number 21-175, which ordered the Florida Department of Health
and the Florida Department of Education to ensure safety protocols for controlling the spread of COVID-19 in schools
that (1) do not violate Floridians' constitutional freedoms; (2) do not violate parents' rights under Florida law to make
health care decisions for their minor children; and (3) protect children with disabilities or health conditions who would
be harmed by certain protocols, such as face masking requirements.  The order, which is incorporated by reference,
directs that any COVID-19 mitigation actions taken by school districts comply with the Parents' Bill of Rights, and
"protect parents' right to make decisions regarding masking of their children in relation to COVID-19."

Because of the importance of in-person learning to educational, social, emotional and mental well-being, removing
healthy students from the classroom for lengthy quarantines should be limited at all costs.  Under Florida law, parents
have a fundamental right to direct the upbringing, education, health care, and mental health of their minor children
and have the right to make health care decisions for their minor children. HB 241, Ch. 2021-199, Laws of Fla. In
furtherance of the Florida Department of Health's authority to adopt rules governing the control of preventable
communicable diseases—and because students benefit from in-person learning—it is necessary to immediately
promulgate a rule regarding COVID-19 safety protocols that protects parents' rights and to allow for in-person
education for their children. Removing children from school poses a threat to developmental upbringing and should
not occur absent a heightened showing of illness or risk of illness to other students.

REASON FOR CONCLUDING THAT THE PROCEDURE IS FAIR UNDER THE CIRCUMSTANCES: This
emergency rule is necessary in light of the recent rise in COVID-19 cases in Florida and the urgent need to provide
COVID-19 guidance to school districts before the upcoming school year commences.  Given that a majority of schools
will resume in-person learning for the 2021-2022 school year within the next four weeks, there is insufficient time to
adopt the rule through non-emergency process.

SUMMARY: Emergency rule 64DER21-12 sets forth the procedures for controlling COVID-19 in school settings.
THE PERSON TO BE CONTACTED REGARDING THE EMERGENCY RULE IS: Carina Blackmore, Florida
Department of Health, 4052 Bald Cypress Way, Tallahassee, Florida 32399-1703, (850)245-4732.

THE FULL TEXT OF THE EMERGENCY RULE IS:

64DER21-12 Protocols for Controlling COVID-19 in School Settings
(1) GENERAL PROTOCOLS AND DEFINITION. The following procedures should be instituted to govern the
control of COVID-19 in public schools:
(a) Schools should encourage routine cleaning of classrooms and high-traffic areas.

(b) Students should be encouraged to practice routine handwashing throughout the day.

(c) Students should stay home if they are sick.

(d) Students may wear masks or facial coverings as a mitigation measure; however, the school must allow for a parent or legal guardian of the student to opt-out the student from wearing a face covering or mask.

(e) For purposes of this rule, "direct contact" means cumulative exposure for at least 15 minutes, within six feet.

(2) PROTOCOLS FOR SYMPTOMATIC OR COVID-19 POSITIVE STUDENTS. Students experiencing any symptoms consistent with COVID-19 or who have received a positive diagnostic test for COVID-19 should not attend school, school-sponsored activities, or be on school property until:

(a) The student receives a negative diagnostic COVID-19 test and is asymptomatic; or

(b) Ten days have passed since the onset of symptoms or positive test result, the student has had no fever for 24 hours and the student's other symptoms are improving; or

(c) The student receives written permission to return to school from a medical doctor licensed under chapter 458, an osteopathic physician licensed under chapter 459, or an advanced registered nurse practitioner licensed under chapter 464.

(3) PROTOCOLS FOR STUDENTS WITH EXPOSURE TO COVID-19. Students who are known to have been in direct contact with an individual who received a positive diagnostic test for COVID-19 should not attend school, school-sponsored activities, or be on school property until:

(a) The student is asymptomatic and receives a negative diagnostic COVID-19 test after four days from the date of last exposure to the COVID-19 positive individual; or

(b) The student is asymptomatic and seven days have passed since the date of last exposure to the COVID-19 positive individual.

(c) If a student becomes symptomatic following exposure to an individual that has tested positive for COVID-19, the student should follow the procedures set forth in subsection (2), above.

(4) PROTOCOL FOR STUDENTS WITH PRIOR COVID-19 INFECTION. A student who has received a positive diagnostic test for COVID-19 in the previous 90 days and who is known to have been in direct contact with an individual who has received a positive diagnostic test for COVID-19 is not subject to the protocols set forth in subsection (3), so long as the student remains asymptomatic. If a student with a previous COVID-19 infection becomes symptomatic, the student should follow the procedures set forth in subsection (2), above. This subsection applies equally to students that are fully vaccinated for COVID-19.

(5) TESTING. Any COVID-19 testing of minors at school requires informed written consent from a parent or legal guardian.

(6) NON-DISCRIMINATION. Students whose parents or legal guardian have opted them out of a mask or face covering requirement shall not be subject to any harassment or discriminatory treatment, including but not limited to:

(a) Relegation to certain physical locations;

(b) Isolation during school activities; or

(c) Exclusion from any school-sponsored events or activities.

Rulemaking Authority 1003.22(3) FS. Law Implemented 1003.22(3) FS. History–New .

THIS RULE TAKES EFFECT UPON BEING FILED WITH THE DEPARTMENT OF STATE UNLESS A LATER TIME AND DATE IS SPECIFIED IN THE RULE.

EFFECTIVE DATE:

Scott A. Rivkees, MD
State Surgeon General

8/6/21
Date