Filing # 133972916 E-Filed 09/02/2021 04:56:58 PM

## FORM 1.997.   CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.   CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE FOURTH   JUDICIAL CIRCUIT,
IN AND FOR DUVAL   COUNTY, FLORIDA

Kyle Helm, Taran Helm, Gary Desjardins, Amy Desjardins, Michelle Petty, Heather Wallace, Gregory Adame, Krystle Adame, Jeff Sellers, Carrie Sellers, Sean Collins, Carolina Collins, Robby Bell, Tamsyn Bell, Stan Lewandoski, Katie Lewandoski, Marleatia Bess, Robin Freel, Jane Doe 1, Jane Doe 2, Jane Doe 3, John Doe 1, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, Jane Doe 8, Jane Doe 9, Jane Doe 10, John Doe 2, Jane Doe 11, John Doe 3, Jane Doe 12, Jane Doe 13, Jane Doe 14, Jane Doe 15, John Doe 4, Jane Doe 16, John Doe 5

Plaintiff

Case # _____
Judge   _____

vs.

Duval County School Board
Defendant

### II.   AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000

- 1 -

ACCEPTED: DUVAL COUNTY, JODY PHILLIPS, CLERK, 09/03/2021 03:10:45 PM

☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

**III.    TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
  ☐ Business governance
  ☐ Business torts
  ☐ Environmental/Toxic tort
  ☐ Third party indemnification
  ☐ Construction defect
  ☐ Mass tort
  ☐ Negligent security
  ☐ Nursing home negligence
  ☐ Premises liability—commercial
  ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐ Commercial foreclosure
  ☐ Homestead residential foreclosure
  ☐ Non-homestead residential foreclosure
  ☐ Other real property actions

☐ Professional malpractice
  ☐ Malpractice—business
  ☐ Malpractice—medical
  ☐ Malpractice—other professional
☒ Other
  ☐ Antitrust/Trade regulation
  ☐ Business transactions
  ☒ Constitutional challenge—statute or ordinance
  ☐ Constitutional challenge—proposed amendment
  ☐ Corporate trusts
  ☐ Discrimination—employment or other
  ☐ Insurance claims
  ☐ Intellectual property
  ☐ Libel/Slander
  ☐ Shareholder derivative action
  ☐ Securities litigation
  ☐ Trade secrets
  ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
     ☐ Residential Evictions
     ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**     **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.**     **NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

  <u>12</u>

**VI.**     **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**     **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**     **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Nicholas Price Whitney</u>       Fla. Bar # <u>119450</u>
       Attorney or party              (Bar # if attorney)

<u>Nicholas Price Whitney      </u>       <u>09/03/2021</u>
 (type or print name)               Date

Filing # 133972916 E-Filed 09/02/2021 04:56:58 PM

## IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
## IN AND FOR DUVAL COUNTY, FLORIDA

KYLE and TARAN HELM, individually and as next
friends for JANE DOE 1, JANE DOE 2 and JANE DOE
3,
GARY and AMY DESJARDINS, individually and as
next friends for JOHN DOE 1 and JANE DOE 4,
MICHELLE PETTY, individually and as next friend
for JANE DOE 5 and JANE DOE 6,
HEATHER WALLACE, individually and as next
friends for JANE DOE 7 and JANE DOE 8,
GREGORY and KRYSTLE ADAME, individually and
as next friend for JANE DOE 9,
JEFF and CARRIE SELLERS, individually and as next
friends for JANE DOE 10, JOHN DOE 2 and JANE
DOE 11,
SEAN and CAROLINA COLLINS, individually and as
next friend for JOHN DOE 3,
ROBBY and TAMSYN BELL, individually and as next
friends for JANE DOE 12, JANE DOE 13 and JANE DOE
14,
STAN and KATIE LEWANDOSKI, individually and as
next friends for JANE DOE 15 and JOHN DOE 4,
MARLEATIA BESS and ROBIN FREEL, individually
and as next friends for JANE DOE 16 and JOHN DOE
5,

        Plaintiffs,

v.

DUVAL COUNTY SCHOOL BOARD,

        Defendant.

_____/

Case No.: 2021-CA-_____
Division:

## PETITION FOR AN EMERGENCY PRELIMINARY INJUNCTION

    **COME NOW** KYLE and TARAN HELM, individually and as next friends for JANE DOE

1, JANE DOE 2 and JANE DOE 3, GARY and AMY DESJARDINS, individually and as next

friends for JOHN DOE 1 and JANE DOE 4, MICHELLE PETTY, individually and as next friend

Petition for Emergency Preliminary Injunction
Helm, et al., v. Duval County Public Schools
Page 1

for JANE DOE 5 and JANE DOE 6, HEATHER WALLACE, individually and as next friends for JANE DOE 7 and JANE DOE 8, GREGORY and KRYSTLE ADAME, individually and as next friend for JANE DOE 9, JEFF and CARRIE SELLERS, individually and as next friends for JANE DOE 10, JOHN DOE 2 and JANE DOE 11, SEAN and CAROLINA COLLINS, individually and as next friend for JOHN DOE 3, ROBBY and TAMSYN BELL, individually and as next friends for JANE DOE 12, JANE DOE 13 and JANE DOE 14, STAN and KATIE LEWANDOSKI, individually and as next friends for JANE DOE 15 and JOHN DOE 4, and MARLEATIA BESS and ROBIN FREEL, individually and as next friends for JANE DOE 16 and JOHN DOE 5, ("Plaintiffs"), requesting that the Court enjoin the DUVAL COUNTY SCHOOL BOARD or Duval County Public Schools (collectively "DCPS") from enforcing its Emergency Rule adopted August 23, 2021 (the "Mask Mandate") and additionally, from enforcing DCPS's unpublished and unvetted post-hoc amendments to the Mask Mandate. The Plaintiffs request an immediate and expedited hearing to avoid suffering irreparable harm, and state:

### Introduction

1.      DCPS's Mask Mandate is, facially and as-applied, harmful to a class of children who are susceptible to and at-risk of injuries caused by the Mask Mandate.

2.      DCPS's Mask Mandate expressly provides that it "values the health, welfare, and safety of its students."

3.      Unlike some children, this class of children (among the Plaintiffs) is susceptible to physical, psychological, developmental, social, academic, and spiritual injuries caused by mandatory long-term extended-period masking.

4.      DCPS's Mask Mandate expressly limits the decision of a parent to opt-out of the Mask Mandate to those children and parents who present a medical certification evidencing a medical, physical, or psychological condition.

5.      In doing so, DCPS's Mask Mandate ignores the health, welfare and safety of some students who suffer from developmental, social, academic, and spiritual injuries caused by mandatory long-term extended-period masking. Many of these students have documented physical and learning disabilities known to DCPS, yet DCPS will not even allow those children to opt out absent a Medical Certification.

6.      DCPS's Mask Mandate also ignores the rights of those parents and children who are unable to obtain Medical Certifications evidencing medical, physical, psychological or other health conditions myriad reasons, among them: lack of financial resources,  lack of access to elective medical care, inability to get an appointment with a primary care physician or other suitable licensed health care provider in time to comply with the vague opt-out requirements prior to the Mask Mandate taking effect on September 7, 2021,  and sub-clinical conditions that do not rise to diagnosable medical, physical, psychological or other health conditions sufficient to meet DCPS' as-yet-undefined  and unpublished standards and criteria.

7.      Unfortunately, either intentionally or negligently, DCPS has failed to provide any uniform procedure for a child who is being harmed to obtain an exemption.

8.      When the Emergency Rule was adopted by a vote of 5-2, DCPS provided no guidance as to what a medical certification entails or what suffices as a medical, physical, psychological, or other health condition in DCPS's eyes. DCPS's Emergency Rule provides only that "the medical certification will be set forth on a form identified by a process and format by the District." *See* Emergency Rule attached as **Exhibit A.**

9.      The Medical Certification form actually outlining the signature requirements and allowing parents to comply was not published until Thursday, August 26, 2021, leaving Duval County parents only six (6) business days to comply: to locate the Medical Certification form (which was not disseminated to Duval County parents directly), to arrange an appointment with their licensed health care providers, to take time off of work, to find an alternative licensed health care provider if necessary (most families do not have a psychologist on call for their children's anxiety and/or depression, as one example), and to have their child evaluated. *See* Medical Certification Form attached as **Exhibit B**.

10.      Six (6) business days is entirely insufficient for such an arduous process given that DCPS had *all summer long* to get its act together and give parents fair notice of what would be required to opt out of DCPS's mask policy as required by the Florida Department of Health.

11.      Even then, parents who attempt to obtain clarification regarding the Medical Certification, the repercussions for non-compliance, and the sufficiency review process for the medical opt-out find themselves captured in an arbitrary, byzantine bureaucratic game of phone and email tag, often passed from one DCPS official to another, given conflicting answers, and routinely shut down by county bureaucrats for capricious procedural reasons.

12.      DCPS's Mask Mandate does not designate and DCPS has never designated any official for approval of exemptions to the Mask Mandate, nor has DCPS set forth how determinations regarding the sufficiency of a parent/child's medical certification will be made.

13.      DCPS has not published or made available any policy or guidelines to inform parents how the data collected via the Medical Certification forms will be handled and protected, who will have access to the forms, what training DCPS employees have to decide upon the sufficiency of a Medical Certification signed by a licensed health care provider, which DCPS

employees will approve or disapprove a Medical Certification form submitted by a parent. Nor has DCPS allowed parents to inspect the instructional materials published alongside its Mask Mandate and disseminated to DCPS employees and teachers or set forth how parents with moral and religious objections will be allowed to opt out of the Mask Mandate. These failures are direct violations of Florida's Parents' Bill of Rights.

14.     Because DCPS has not allowed for moral or religious bases to opt out of the Mask Mandate, parents of children with sub-clinical harms are without relief and DCPS has violated these parents' fundamental, inalienable rights.

15.     DCPS also has arbitrarily taken the position that it will not take the word of any parent who requests an exemption from the Mask Mandate, based on observable medical, physical, psychological, or other health conditions readily apparent to these parents, even if the parent will attest to the truth of the matter asserted under penalty of perjury.

16.     Instead, DCPS demands that parents "prove" the harm being done to their children by obtaining a signed Medical Certification from a licensed health care provider (the "Evidence Requirement").

17.     DCPS's demand that parents obtain Medical Certifications without providing any indication of how DCPS will determine the sufficiency of submitted Medical Certifications is patently vague, arbitrary, and capricious.

18.     First, DCPS provides no guidance regarding who qualifies in DCPS's eyes as a licensed health care provider it will deem as qualified to issue Medical Certifications, and no indication of which providers in Duval County can provide medical certifications has been provided. DCPS's mandate is so vague as to cause harm to parents who obtain Medical Certifications at substantial expense from what they reasonably understand to be licensed health

care providers, and parents are arbitrarily told that their signed Medical Certification is insufficient after-the-fact. The process is akin to telling parents to guess what DCPS is thinking.[1]

19.     Second, even if parents can guess what DCPS and the Duval County School Board deem a suitable licensed health care provider, "mask mandate examinations" are not covered by any insurance provider. DCPS's medical certification Evidence Requirement adds a significant expense as a barrier to the opt-out process mandated by the Florida Department of Health, and discriminates against parents with limited financial resources, inability to access elective medical care, and those who are unable to comply due to time constraints (from work or otherwise) in the six-day period allowed for strict compliance.

20.     Third, and perhaps most significantly, the Evidence Requirement and medical certification process that DCPS has created was not disclosed and the policy was not published ahead of the "emergency" meeting of the School Board held on August 23, 2021. In fact, the "emergency" meeting was noticed *one day prior* with only a vague reference to discussion of amendment to the section of code of student conduct, previously adopted August 3, 2021, pertaining to face masks. *See* Meeting Notice attached as **Exhibit C**. DCPS's rushed and ill-considered approach is clearly violative of Chapter 120, Florida Statutes.

21.     Relatedly, the Evidence Requirement requires that DCPS create some kind of hidden adjudicatory process (the "Exemptions Court"), whereby Medical Certifications are reviewed and requests for exemptions are tried in secret, and denied without explanation or any

---

[1] The Mask Mandate does not define "licensed health care provider", and Duval County parents are left in the void wondering if the DCPS intended to designate "health care practitioners" under Fla. Stat. 766.1116, a designation which would include chiropractors, podiatrists, nurses, dentists, and midwives. Or does a licensed health care provider include those who are licensed by the Florida Department of Health, including massage therapists, acupuncturists, athletic trainers, social workers, family therapists, optometrists, physical therapists, and speech pathologists, to name a few. All of these would be reasonable providers in the parents' eyes in lieu of further guidance (and any post-hoc amendment would need to be noticed for public comment).

procedure for appeal.[2] DCPS has not advised Duval County parents of the magical 8-ball it will look into when deciding upon the sufficiency of Medical Certifications provided by parents to opt-out of the Mask Mandate, and DCPS did not bring its magic 8-ball to the "emergency" meeting when it passed the Emergency Rule. No one has seen it, and everyone is in the dark except the five authoritarian members of the School Board that adopted the diktat.

22.     In other words, ahead of the August 23rd "emergency" meeting, the citizens and parents of Duval County did not know that DCPS would add onerous, expensive, and discriminatory conditions to the Code of Student Conduct in the form of the Mask Mandate when DCPS noticed the "emergency" meeting. At this point, no one knows what process will be set out for determinations on the sufficiency of medical certifications, even though the Mask Mandate is supposed to take effect in less than two weeks.

23.     Note that DCPS has not a single employee in the entire school district whose job description includes helping parents obtain exemptions to the Mask Mandate. There is no one to reach at DCPS who can explain to a deserving parent which providers can and will issue Medical Certifications. There is no one program at DCPS to provide financial resources to assist financially-strapped parents in obtaining a Medical Certification for their otherwise qualified child.

24.     The Evidence Requirement and the Exemptions Court are, therefore, improper post-hoc amendments to the Mask Mandate.

25.     The Mask Mandate permits the Superintendent to develop the procedures - the flesh on the skeleton Mask Mandate - without notice, as late as the day the Mask Mandate is to

---

[2] That is, of course, unless DCPS intends to except any signed Medical Certification from an undefined category of licensed health care providers, so long as the parent submits one.

take effect on September 7, 2021, subject only to the approval of the same authoritarian Board Members that adopted the arbitrary and capricious diktat, and Plaintiffs have no recourse. *See* Emergency Rule at Section IV.

26.     The Mask Mandate is facially unconstitutional as a violation of the Right to Privacy, Due Process, and Equal Protection.

27.     Finally, the Mask Mandate is irrational, arbitrary, capricious, and unconstitutional when applied to the class of parents who will suffer financial, psychological, and emotional hardship, and when applied to children who are harmed by compulsory, extended mask wearing for one reason or another outside the bounds of the medical exemptions provided.

### Incorporation of Complaint

28.     The factual allegations set forth in the Plaintiffs' Complaint filed in this action, as well as its Exhibits and its Counts, are hereby incorporated by reference as though fully set forth herein.

### The Plaintiffs Are Suffering
### Irreparable Harms and Have No Adequate Remedy at Law

29.     This matter involves physical, psychological, developmental, social, academic, moral, religious, and spiritual injuries to *children*, caused by the Mask Mandate and DCPS's headstrong, irrational, arbitrary, and capricious approach. There is no amount of money that can compensate a parent for knowingly having to mask his or her child and send them off to school despite the physical, psychological, developmental, social, academic, moral, religious, and spiritual harm caused to that child - *their child* - on a daily basis.

30.     This matter also involves ongoing violations of Plaintiffs' fundamental, inalienable, Constitutional rights. Courts hold ongoing Constitutional violations to be irreparable harms.

31.     Every single minute that passes while the Mask Mandate remains in place, including the ad-hoc rulemaking and fleshing out process where parents scramble to seek out standard-less Medical Certifications or exercise their Constitutional Rights, causes potentially irreversible damage.

32.     Even if DCPS were to attempt to moot this matter by delaying or temporarily lifting the Mask Mandate, which has not happened, the Plaintiffs remain at imminent peril and many of them will experience ongoing anxiety and incur financial hardship because DCPS's Superintendent retains the ability to unilaterally alter the mandate without notice at any time. The Superintendent's authority includes the ability to set forth the process, the form, and the format needed for a medical certification, to develop the Exemptions Court, and to decide upon as-yet undefined health data points to suspend the Mask Mandate despite the Superintendent's glaring incompetence and absence of proper expertise to make such decisions.

33.     "[T]he United States Supreme Court has stated that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Additionally, both the Federal Courts and Florida District Courts of Appeal have presumed irreparable harm when certain fundamental rights are violated. *See, e.g., Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) (irreparable harm presumed in Title VII cases); *Cunningham v. Adams*, 808 F.2d 815, 822 (11th Cir. 1987) (stating that the injury suffered by the plaintiff is irreparable only if it cannot be undone through monetary remedies); *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983) (irreparable injury presumed from violation of First Amendment rights "for even minimal periods of time"); *see also Tucker v. Resha*, 634 So.2d 756, 759 (Fla. 1st DCA 1994) (finding no legislative waiver of sovereign immunity as to the privacy provision of the Florida Constitution

and therefore concluding that money damages are not available for violations of that right); *Thompson v. Planning Comm'n of Jacksonville*, 464 So.2d 1231, 1237 (Fla. 1st DCA 1985) (where calculation of damages is speculative, legal remedy is inadequate)." *Gainesville Woman Care, LLC v. State*, 210 So. 3d 1243, 1263–64 (Fla. 2017).

34.    The deprivation of personal rights is often equated with irreparable injury and serves as an appropriate predicate for injunctive relief. *See, e.g., Branti v. Finkle*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (injunctive relief to prevent dismissal from public employment because of political beliefs); *Robins v. Pruneyard Shopping Ctr.*, 23 Cal.3d 899, 153 Cal.Rptr. 854, 592 P.2d 341 (1979), aff'd, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980) (injunctive relief to permit solicitation in shopping center); *Bright v. Pittsburgh Musical Soc'y*, 379 Pa. 335, 108 A.2d 810 (1954) (injunctive relief to prevent blacklisting of entertainer); 17 Fla.Jur. Injunctions § 30; 43A C.J.S. Injunctions § 149; 14 C.J.S. Civil Rights Supp. § 94." *Hitt v. N. Broward Hosp. Dist.*, 387 So. 2d 482 n. 3 (Fla. 4th DCA 1980).

35.    Plaintiffs are suffering irreparable harms for which there is no adequate remedy at law.

### Plaintiffs Have a Substantial Likelihood of Success on the Merits

36.    Plaintiffs are substantially likely to succeed on the merits because, without limitation:

a)    The Mask Mandate is an overt invasion of the privacy rights of these families, and DCPS cannot demonstrate that compelled masking of *all* children is the least restrictive means to meet its ends of reducing Covid-19 transmission;

b)      The Mask Mandate is irrational in light of the knowledge that Covid-19 is spread through aerosolized particles and not droplets[3];

c)      The rationale (an overstatement) behind the Emergency Rule does not set forth the Covid-19 numbers for masked and unmasked children in Duval County, or even more broadly, Florida, and is based entirely on the assumption that masking the children who have opted out as allowed per the State's guidance are the source of local transmission;

d)      Plaintiffs will prove it is more likely than not that mask mandates in Florida schools do *not* slow the spread of Covid-19, as the Department of Education has already concluded, and DCPS has *no* admissible rebuttal evidence;

e)      The Mask Mandate has been arbitrarily applied by DCPS, violating Plaintiffs' due process and equal protection rights; and

f)      The Plaintiffs' requests for exemptions have been capriciously and illogically denied, also violating Plaintiffs' due process and equal protection rights.

37.      But even if the Plaintiffs failed to succeed on all the above, still DCPS's illegal post-hoc amendments to the Mask Mandate - establishing the actual process and form for obtaining medical certifications, deciding without public comment on the health data points to be considered in ending the harm to parents and children, and in adding the Evidence Requirement - violate the requirements of Chapter 120, are indefensible, and will surely fall.

### DCPS Cannot Prove its Mask Mandate is Rational: Evidence

38.      Upon information and belief, DCPS's evidence will only be inadmissible hearsay and opinion.

---

[3] The Plaintiffs will bring forth evidence to show that attempting to "stop" Covid-19 with the cloth and paper face masks worn by Duval County children at school is no more effective than constructing a chain link fence to stop mosquitoes from interrupting your backyard barbecue.

39.     DCPS will argue that masks don't hurt any children, and will complain that it, most of all, has children's best interests at heart. In fact, DCPS will argue that it knows better than the parents of the children subjected to the observable harms caused by the Mask Mandate.

40.     In doing so, DCPS will momentarily and necessarily ignore its own Mask Mandate, which clearly anticipates harm to certain children because it expressly recognizes the medical, physical, and psychological toll extended-mask wearing can take. In recognition of the harm it will cause, DCPS intended to provide for exceptions to its cruel Mask Mandate.

41.     DCPS will ignore all the affidavits and testimony from the Plaintiffs, other parents, and their experts who will testify that masks *do* cause, *have* caused, and *are* causing harm to a susceptible class of children well beyond those harms condoned as legitimate on DCPS's Medical Certification form.

42.     After extolling the depths of its benevolence and omniscience, DCPS will callously ignore all the evidence of harm right in front of its eyes, just as it has done for months over the protests of affected parents and children at its public meetings and through written correspondence. DCPS has put on its earmuffs to shut out parents that have repeatedly begged it to make exceptions for their children - children who *have* suffered and *will* suffer harm living under the thumb of DCPS and its cruel Mask Mandate.

43.     DCPS's bizarre inability to recognize evidence of harm right in its own district is evidence of how irrational, arbitrary, and capricious it and its Mask Mandate are, particularly as applied.

44.     DCPS will also be completely unable to demonstrate any actual benefit from its Mask Mandate that outweighs the harm to the class of susceptible children who have been injured and are at-risk of further injury from the Mask Mandate.[4]

45.     DCPS will argue that its Evidence Requirement is necessary for any enforcement of the Mask Mandate, but will be unable to enunciate any rational basis for the Evidence Requirement without (i) further modifying the Mask Mandate on the fly to clarify who can issue a Medical Certification; (ii) excluding sub-clinical harms from qualifying as sufficient opt-out criteria; (iii) recognizing that the Mask Mandate fails to appreciate religious and spiritual exemptions protected under the U.S. and Florida Constitutions; and (iv) that is not premised on an irrational suspicion that parents are liars.

### DCPS Cannot Prove its Mask Mandate is Rational: Mask Science

46.     The evidence demonstrating the (in)effectiveness of masks shows the irrationality of the Mask Mandate.

47.     In May 2021, the Centers for Disease Control (CDC) finally conceded what the World Health Organization (WHO) has repeatedly stated since early in the pandemic - that Covid-19 is airborne, and not primarily transmitted through droplets.[5]

a)      Masks — especially homemade, paper, and cotton masks — are primarily intended by DCPS to be useful source control, by capturing respiratory droplets, and are not intended to be effective at controlling aerosols. Droplets are made of water, are heavy enough to

---

[4] The best, on-point evidence available for anyone in the State of Florida is the Department of Educations' analytical study showing that there was no appreciable difference between those counties that masked their children and those that did not during the 2020-21 school year. After "reviewing all districts relevant health data", "the data shows us that districts' face covering policies do not impact the spread of the virus." *See* Commissioner of Education's April 14, 2021, Letter to School District Superintendents attached as **Exhibit D.**

[5] Had the CDC conceded this fact earlier, earlier iterations of mask mandates would have properly been recognized as pointless, and worse, harmful.

be subject to the forces of gravity, and large enough to be captured in paper and cotton mask fibers. However, aerosols are so minuscule that they are suspended in the air for hours and days at a time, not subject to gravity in any meaningful way, and are too small to be captured in cotton or paper mask fiber. Covid-19 aerosols are so small that they easily escape the gaps around the sides, tops, and bottoms of cotton and paper face masks.[6]

48.     Airborne viruses are best-controlled by improving indoor air quality. Even opening a window is a big improvement. In a still room, otherwise a virus particle can hang suspended in mid-air for days. Improvements to air ventilation systems are crucial to prevent viruses transmitted by aerosols from spreading and improving air ventilation systems does not violate anyone's Constitutional rights.

49.     The Affidavit of Stephen R. Petty is attached hereto as **Exhibit E**.[7]

50.     DCPS has irrationally adopted, and subsequently refused to reconsider or adjust its Mask Mandate in light of the relevant science.

51.     The Florida Department of Education (FLDOE) has notified DCPS that its Mask Mandate will not and cannot help slow the spread of the virus in Florida, but DCPS has obstinately and irrationally ignored the FLDOE.

52.     Other school districts in Florida do not require children to wear facial coverings, and did not require children to wear masks during the 2020-2021 school year, and Covid-19 has

---

[6] If DCPS believes this fact is in contention, then Plaintiffs invite DCPS to produce an expert to testify why children and parents who wear glasses have them fog up when they are wearing masks. That is, without admitting that suspended moisture and exhaled gases escape around the mask.
[7] Mr. Petty's Affidavit addresses the Polk County Public Schools (PCPS) Mask Mandate, which provides for compelled masking using the same non-medical masks being forced on students and parents by DCPS. The scientific and industrial hygiene opinions of Mr. Petty are identical, since DCPS, like PCPS, did not mandate the use of respirators. PCPS decided not to enforce its Mask Mandate once Mr. Petty's Affidavit was set forth.

not spread any differently in those districts or their surrounding communities than as compared to Duval County.

53.     The evidence will show that DCPS has completely ignored all the easy and inexpensive ways to mitigate the virus by improving indoor air quality and/or providing additional flexibility to learn virtually or outdoors and has irrationally, arbitrarily, and capriciously focused only on its ineffective and harmful Mask Mandate.

**DCPS Cannot Prove its Mask Mandate is Rational: Constitutional Violations**

54.     The evidence will show that the Mask Mandate, facially and as-applied, is a clear constitutional violation of Plaintiffs' Rights to Privacy, Freedom of Expression, Freedom of Religion, Due Process, and Equal Protection.

55.     "*Any law* that implicates the right of privacy is **presumptively unconstitutional**, and the burden falls on the State to prove both the existence of a compelling state interest and that the law serves that compelling state interest through the least restrictive means." *Gainesville Woman Care, LLC v. State*, 210 So. 3d 1243, 1256 (Fla. 2017).

56.     The Plaintiffs challenge the privacy intrusion imposed by DCPS's Mask Mandate, and until such time as DCPS can make its showing, the Mask Mandate *is* presumptively unconstitutional.

57.     "**The right of privacy is a fundamental right** which we believe demands the compelling state interest standard. **This test shifts the burden of proof to the state to justify an intrusion on privacy.** The burden can be met by demonstrating that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means. Thus, while the Federal Constitution, at the very least, requires the recognition and protection of an implicit right of privacy, **Florida** voters have clearly opted for a broader, explicit

protection of their right of privacy. Indeed, Florida voters rejected a constitutional amendment in 2012 that would have interpreted Florida's explicit constitutional right of privacy as being no broader than the implicit federal constitutional right of privacy." *Id.* at 1252 (internal citations omitted, emphasis added).

58.     "We conclude that the First District Court of Appeal misapplied and misconstrued our precedent by placing the initial evidentiary burden on Petitioners to prove a "significant restriction" on Florida's constitutional right of privacy before subjecting the Mandatory Delay Law to strict scrutiny." *Gainesville Woman Care, LLC v. State*, 210 So. 3d 1243, 1245 (Fla. 2017).

59.     The evidentiary burden *here* rests on DCPS to show that the Mask Mandate serves a compelling state interest *and* is the least restrictive means available to meet its objectives.[8]

60.     DCPS will not be able to show that it has adopted the least restrictive means, since it has not improved air quality inside its schools, installed or improved the necessary air ventilation and filtration systems, allowed for flexibility through virtual learning at the option of parents, nor does its Mask Mandate provide for the ability of students to remove their masks when they experience sub-clinical harms such as anxiety attacks, shortness of breath, headaches, overheating, exacerbation of sensory issues, or fogged glasses that prevent academic engagement. Further, DCPS has not provided for exceptions to those students who have documented medical and learning disabilities substantial enough to administer Individualized Education Plans (IEPs) or 504 plans *without* further medical documentation.

---

[8] It remains unclear what DCPS's objective was in adopting the Mask Mandate, but based on the citations to sheer numbers without further analysis in the Emergency Rule, one is left to assume that the objective of DCPS was to reduce the number of Covid-19 cases in the DCPS school population. Notably, the daily Covid-19 numbers reported by DCPS peaked on August 23rd, the day the Mask Mandate was adopted, and have declined since that time *even ahead* of implementation of the Mask Mandate. To illustrate, DCPS reported 201 cases on August 23rd, 189 on August 30th, and 123 on September 1st. The decline is occurring without the Mask Mandate having been implemented, so it is left to DCPS to articulate its compelling objective.

61.     Next, the evidence will show that the Mask Mandate does not meet the minimum standard of rational basis review.

62.     As a general matter, the rational basis test requires only that the governmental action "bear[] a rational relationship to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996).   While rational basis review is a forgiving standard for government acts, it "is not a toothless one ...." *Mathews v. Lucas*, 427 U.S. 495, 510 (1976).   The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446 (1985).

63.     Government action must have "some just relation to, or reasonable basis in, essential difference of conditions and circumstances with reference to the subject regulated, and [the statute] should not merely be arbitrary[.]" *Eslin v. Collins*, 108 So.2d 889, 891 (Fla. 1959).

64.     When the CDC and WHO recognize the futility of wearing masks to prevent transmission by aerosols, when the data shows no difference in conditions (rate of Covid-19 transmission) and circumstances (absence of any statistically significant difference in positive Covid-19 cases in Florida counties with and without mask mandates), and when there is no admissible evidence to demonstrate the effectiveness of masks (the subject regulated), the Mask Mandate cannot survive rational basis review.

65.     The Mask Mandate violates Plaintiffs' state and federal rights to due process.

66.     "Under traditional equal protection analysis, a legislative classification must be sustained, *if the classification itself is rationally related* to a legitimate governmental interest." *U. S. Dept. of Agric. v. Moreno*, 413 U.S. 528, 533 (1973) (emphasis added).

67.     The Mask Mandate violates Plaintiffs' Equal Protection rights.

68.     The Florida Constitution's Declaration of Rights, section 1, is the primary source of Florida's equal protection inhibition. It provides that "all men are equal before the law . . . ;". *Ga. So. & Fla. Ry. v. Seven-up Bottling Co.,* 175 So.2d 39, 40 (Fla. 1965), *quoting from Davis v. Fla. Power Co.,* 64 Fla. 246, 60 So. 759 (1913). Our Florida Charter requires there be "some just relation to, or reasonable basis in, essential difference of conditions and circumstances with reference to the subject regulated, and [the statute] should not merely be arbitrary . . . ." *Eslin v. Collins,* 108 So.2d 889, 891 (Fla. 1959).

69.     Article I § 4 of the Florida Constitution provides in pertinent part "[N]o law shall be passed to restrain or abridge the liberty of speech[.]" The Mask Mandate forces Plaintiffs to *implicitly* convey DCPS's message, and that of the authoritarian School Board members who voted in favor of the diktat, via a long-recognized form of communication called "symbolic speech." The Masks convey an ideological, moral, and political message above all else.

### The Court Should Dispense with any Bond Requirement

70.     No bond is necessary here, and the public interest lies in dispensing with the bond. Fla. R. Civ. Pro. 1.610(b).

71.     Plaintiffs will separately file their affidavits in support of this Petition.

**WHEREFORE**, Plaintiffs request that this Court enjoin DCPS as follows:

a)     Order DCPS to immediately suspend enforcement of the Mask Mandate, allowing parents to choose for themselves whether their children should be masked at school;

b)     Alternatively, order DCPS to immediately halt its Evidence Requirement and Exemption Court (however DCPS and the Superintendent ultimately characterize or implement those things), and accept Medical Certifications without further scrutiny and without the signature of a licensed health care provider so long as the parent providing the medical

certification attests that the forced masking of their child will likely cause medical, physical, psychological, or other harm to their child; and

      c)     Order all such further relief as the Court deems necessary and just.

**DATED** this 2nd day of September, 2021.

                               **ANDERSONGLENN LLP**

                               */s/ Nicholas P. Whitney*
                               **Gregory A. Anderson, Esquire**
                               Florida Bar Number: 398853
                               gaanderson@asglaw.com
                               **Nicholas P. Whitney, Esquire**
                               Florida Bar Number: 119450
                               nwhitney@asglaw.com
                               10751 Deerwood Park Boulevard, Ste. 105
                               Jacksonville, Florida 32256
                               Telephone: (904) 273-4734
                               Facsimile:  (904) 273-4712
                               *Attorneys for Plaintiff*

                               */s/ Cord Byrd*
                               **Cord Byrd, Esquire**
                               Florida Bar No. 134406
                               cord@cordbyrdlaw.com
                               esther@cordbyrdlaw.com
                               1015 Atlantic Boulevard, #281
                               Atlantic Beach, FL 32233
                               Telephone:  (904) 246-2404
                               *Co-Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on September 2, 2021, I electronically filed the foregoing document with the Clerk of the Court using Florida Court's E-Filing Portal and that Defendant is being furnished a copy of the foregoing document via service of process.

                               */s/ Nicholas P. Whitney*
                               **Nicholas P. Whitney, Esquire**

# *EXHIBIT "A"*

## EMERGENCY RULE OF THE SCHOOL BOARD OF DUVAL COUNTY

WHEREAS, Article IX, § 1 of the Florida constitution provides for a uniform, efficient, safe, secure, and high-quality system of free education; and

WHEREAS, To achieve a uniform, efficient, and safe school system, the Florida Constitution created school boards (Art. IX); and

WHEREAS, The Florida constitution grants the school boards the right to "operate, control and supervise all free public schools." *See* Art. IX § 4 (Fla. Const.); and

WHEREAS, The School Board of Duval County, Florida (the "School Board") is a duly elected body; and

WHEREAS The School Board is responsible for the "proper attention to health, safety, and other matters relating to the welfare of students." Fla. Stat § 1001.42(8)(a); and

WHEREAS, The School Board also has supplemental powers to "adopt programs and policies to ensure appropriate response in emergency situations." Fla. Stat. § 1001.43(7); and

WHEREAS Duval County Public Schools is one of the largest school districts in Florida;

WHEREAS, The School Board of Duval County values the health, safety, and welfare of its students and the District staff; and

WHEREAS, The Delta variant of COVID-19 has been shown to be highly transmissible; and

WHEREAS, the Governor of Florida issued Executive Order 21-175 which in part directed the Florida Department of Health and the Florida Department of Education to immediately execute emergency rule to

ensure safety protocols for controlling the spread of COVID-19 IN SCHOOLS; and

WHEREAS, The Florida Department of Health executed Emergency Rule 64DER21-12 which provides in part "Student may wear masks or facial covering as a mitigation measure; however, the school must allow for a parent or legal guardian of the student to opt-out the student from wearing a face covering or mask"; and

WHEREAS, The 2021-2022 school year began on August 10, 2021 in Duval County; and

WHEREAS, After only ten days of school, 815 cases of Covid-19 were reported to FDOH.  Of those, 111 involved staff and 704 involved students who reported a positive Covid-19 result; and

WHEREAS, a total of 2498 cases were reported in total on the School's dashboard for the 2020-2021 school year, meaning that in less than a week into the 2021-2022 school year beginning, DCPS was already at 19% of the total cases reported for the entire 2020-2021 school year;

WHEREAS, the Florida Department of Health has admittedly been unable to complete contact tracing, case investigations and timely notification to impacted families regarding the results of the investigation;

WHEREAS, of the 895 Covid-19 positive cases reported this year, only 106 cases have been completed and closed by FDOH;

WHEREAS, due to an immediate danger to public health, safety, and welfare that required emergency action, an Emergency meeting of the School Board was called by the Chair, as well as other Board members, to immediately address the emergency; and

WHEREAS, The School Board of Duval County heard from the Duval County Department of Health and medical experts and doctors at

numerous meetings predating the emergency meeting as well as at the August 23, 2021 emergency meeting; and

WHEREAS, The doctors and medical experts testified that the wearing of masks and vaccines are the most effective tools for controlling the spread of COVID-19 in schools; and

WHEREAS, Masks protect the wearer and those around them by protecting against the transmission of large droplets from one person to another; and

WHEREAS, Mask usage is beneficial to keeping children in school; and

WHEREAS, The U.S.Food & Drug Administration ("FDA") previously stated: "There is no adequate, approved, and available alternative to the emergency use of face masks for source control by the general public … to help prevent the spread of the virus due to face mask shortages during the COVID-19 pandemic"; and

WHEREAS, The Emergency Rule executed by the Department of Health does not prohibit the requirement of a medical certificate for opting out; and

WHEREAS, The Emergency rule adopted by the School Board of Duval County gives the decision opting out of the facial covering requirement to the parent with a medical certification; and

WHEREAS, The Center for Disease Control ("CDC") recommends children in school wear facial coverings indoors.

NOW, THEREFORE, THE SCHOOL BOARD OF DUVAL COUNTY ENACTS THE FOLLOWING EMERGENCY RULE PURSUANT TO SECTION 120.54, FLORIDA STATUTES AND BOARD POLICY 2.25:

I.      Subject to the process that provides for a parent to opt out their student from this policy due to a medical, physical, or psychological condition evidenced by a medical certification (see paragraph II), all students must wear a face covering that covers both the nose and the mouth at all times while inside a school or any administrative facility, inside a building for purposes of a school-related or school-sponsored events (except as provided in administrative guidance for District athletics and performing arts, which will be conspicuously posted at District athletics and performing arts events), or on District-approved transportation.

II.     **Opt-out/Exemptions.**  A face covering will not be required when it would cause an impairment due to an existing health condition as evidenced by a medical certification. To claim an exemption/opt-out due to an existing health condition, the District will require a medical certification from a licensed health care provider that the student has a medical, physical, or psychological condition that prevents the student from being able to safely wear a face covering, and a description of the medical reason.  This certification will be set forth on a form identified by a process and format by the District.

III.    **Duration of Emergency Rule**.  The Emergency Rule was approved by the School Board on August 23,2021, for a ninety (90) day period (except as set forth in paragraph IV) commencing on September 7, 2021.

IV.     **Further action required**. The Superintendent shall develop procedures, to be approved by the Board on September 7, 2021, that

provide for certain health data points to result in an automatic suspension of this emergency policy while such policy is in effect.

## V.    **Basis for Emergency Rule**

This Emergency Rule approved is based upon the School Board's findings at the Emergency Meeting held August 23, 2021 including, but not limited to the number of students and staff in the DCPS reporting positive COVID-19 tests, FDOH's admitted inability to conduct timely case investigations which has a direct impact on the spread of the virus throughout our schools, and communication predating and occurring at the August 23, 2021 meeting from the professional health community.

## VI.    **Procedural Fairness Afforded**.

The meeting was properly noticed on August 22, 2021 at 1:00 p.m. and amended and reposted on August 23, 2021 at 9:00 a.m.

*EXHIBIT "B"*

DUVAL COUNTY PUBLIC SCHOOLS
**COVID-19 FACE COVERING CERTIFICATION**

**Instructions:** Complete, sign, and return this form to your child's school.

### Duval County School Board Emergency Face Covering Policy (Effective September 7, 2021)

Subject to the process that provides for a parent to opt out their child from this policy due to a medical, physical, or psychological condition evidenced by a medical certification , all students must wear a face covering that covers both the nose and the mouth at all times while inside a school or any administrative facility, inside a building for purposes of a school-related or school-sponsored events (except as provided in administrative guidance for District athletics and performing arts, which will be conspicuously posted at District athletics and performing arts events), or on District-approved transportation.

A face covering WILL NOT be required for persons who provide this COVID-19 Face Covering Certification from a licensed health care provider stating that the person has a medical, physical, or psychological condition that prevents the person from being able to safely wear a face covering.  A licensed health care provider means any provider of health care services who is licensed or certified by the applicable governmental regulatory authority **to the extent that services are within the scope of the license or certification.**

*Note:  Students who 1) submitted documentation containing substantially similar information to what is contained in this Certification, AND 2) the condition set forth in those documents still applies to the student due to a continuing condition, are not required to additionally submit this particular form for the 2021-2022 school year.*

**The CDC recommends universal indoor masking for all teachers, staff, students, and visitors to K-12 schools, regardless of vaccination status. Properly wearing face coverings, physical distancing, and promoting vaccinations for eligible students and employees are key strategies that mitigate against the spread of COVID-19.**

**By filling out the form below, I am requesting that my child be released from the COVID-19 emergency face covering requirement as recommended by the CDC. I understand that the above policy language requiring a mask will be reconsidered on or before December 6, 2021, at which time this form may no longer be applicable.  I also understand that pursuant to section 768.38, Florida Statutes, an educational institution is not liable for damages, injury, or death arising from or related to COVID-19, provided it made a good faith effort to substantially comply with one or more sources or set of health standards or guidance that was authoritative or controlling at the time the cause of action is alleged to have occurred.**

**Student Name (Print)** _____
                                        *Last*                       *First*             *Middle*

**Student School** _____ **Grade** _____

**As the Parent/Guardian of** _____ , _____
                                                  *Student Name*                   *DOB*

**I hereby request that my child be released from the COVID-19 emergency face covering requirement based on a medical need as certified by a licensed health care provider below.**

_____

**Parent/Guardian Name (Print)**        **Parent/Guardian (Signature)**        **Date**

-------------------------------------------------------------------------------------------------------------------

**FOR LICENSED HEALTH CARE PROVIDER ONLY** (physician/psychologist, etc.):

I certify that _____ cannot wear a ☐ mask   ☐ face shield   ☐ or both
                  *First & Last Name (Print)*
due to a medical, physical or psychological condition.

_____

   *Health Care Provider License No.*             *Health Care Provider Phone No.*

_____

   *Licensed Health Care Provider Name (Print)*     *Licensed Health Care Provider Signature*    *Date*

*EXHIBIT "C"*

# MEETING NOTICE
## DUVAL COUNTY SCHOOL BOARD
## 1701 PRUDENTIAL DRIVE
## JACKSONVILLE, FL 32207

MS. ELIZABETH ANDERSEN, CHAIRMAN
MR. DARRYL WILLIE, VICE-CHAIRMAN
DR. KELLY COKER
MS. LORI HERSHEY
MR. WARREN A. JONES
MS. CHARLOTTE JOYCE
MS. CINDY PEARSON

Date:  August 23, 2021          <u>REVISED</u>          Time:  2:00 P.M.

The Duval County School Board will hold an Emergency Meeting on August 23, 2021, at 2:00 p.m. The meeting will be held in the Cline Auditorium, at the Administration Building at 1701 Prudential Dr., Jacksonville, Florida 32207.

The purpose is to discuss the following topic(s):

- **COVID-19 MITIGATION MEASURES**
- <u>**AMENDMENT OF THE SECTION OF CODE OF STUDENT CONDUCT, PREVIOUSLY ADOPTED AUGUST 3, 2021, PERTAINING TO FACE MASKS**</u>

Any person who anticipates an appeal of a decision made by the Duval County School Board with respect to any matter considered at this meeting, or who may decide to appeal such decision, will need to ensure that a verbatim record of the proceedings is made. This record will need to include the testimony and evidence upon which the appeal is to be based.

NOTICE TO PERSONS NEEDING SPECIAL ACCOMMODATIONS AND TO ALL HEARING-IMPAIRED PERSONS: In accordance with the Americans with Disabilities Act; persons needing a special accommodation to participate in the proceedings should contact the School Board office at (904) 390-2293.

POSTED:  AUGUST 22, 2021 - 1:00 PM
REPOSTED:  AUGUST 22 <u>23</u>, 2021 – 9:00 AM
NS

*EXHIBIT "D"*



**FLORIDA DEPARTMENT OF**
**EDUCATION**
fldoe.org

**State Board of Education**

Andy Tuck, *Chair*
Marva Johnson, *Vice Chair*
*Members*
Monesia Brown
Ben Gibson
Tom Grady
Ryan Petty
Joe York

Richard Corcoran
Commissioner of Education

## MEMORANDUM

**TO:**      School District Superintendents

**FROM:**   Richard Corcoran

**DATE:**   April 14, 2021

**SUBJECT:**   **Planning for the 2021-2022 School Year**

Florida continues to outwork and outperform the nation in the number of students receiving a high-quality education in an in-person educational setting, and our success has been rooted in schools, districts and the state implementing learned best practices and constantly relying on science and evidence.

Throughout the successful reopening of our schools for in-person instruction, we have consistently provided families with the ability to make educational decisions that are in the best interest of their children. Our efforts ensured parents had the ability to choose from multiple learning modality options for the current school year, with the option to transition to new modalities when their child may have required another option to ensure they were achieving adequate progress.

Florida has once again proven that one-size-fits-all policies do not meet the unique needs of individual students or their families. Therefore, we should continue to make surgical – not sweeping – decisions to mitigate large-scale educational disruptions as we are planning for the upcoming 2021-2022 school year.

As you reflect on the current school year and look ahead to 2021-2022, an example of a one-size-fits-all policy are the mandatory face covering policies in some districts and schools. Upon reviewing the policies of those districts with mandatory face covering policies, reviewing all districts relevant health data, and factoring in such data points as the percentage of students learning in-person and the relative population of a county (which is often synonymous with a county's community health resources), **the data shows us that districts' face covering policies do not impact the spread of the virus**.

Face coverings are a personal decision **and certainly families and individuals should maintain their ability to make a decision that is unique to their circumstances**. Broad sweeping mandatory face covering policies **serve no remaining good at this point in our schools**.

Mandatory face covering policies inhibit peer-to-peer learning in our classrooms and they may also unintentionally create a barrier for students and families who would otherwise choose in-person instruction if such a policy were not in place. **Such policies may also impede instruction in certain cases, especially for students with disabilities and English language learners who benefit from viewing a teacher's face and mouth.**

Planning for the 2021-2022 School Year
April 14, 2021
Page Two

As we are planning to provide our students with robust summer programs and welcoming students returning to school in the 2021-2022 school year, we expect more students to participate in face-to-face instruction. Right now, our schools are safer than the communities at large. This safety record should only increase next school year with the increased availability of vaccines.

With this return, **we ask that districts, which currently are implementing a mandated face covering policy, revise their policy to be voluntary for the 2021-2022 school year**.

Florida's districts and schools have done an incredible job implementing, learning and improving upon mitigations and protections for our students, educators, school leaders and Florida's entire education family. Without a doubt, our teachers and school leaders are heroes and they have led the nation in reopening Florida's schools, while giving families broad choices for their child's education. Let us continue to support those choices for our families as we ready ourselves for the 2021-2022 school year.

*EXHIBIT "E"*

# AFFIDAVIT OF STEPHEN E. PETTY, P.E., C.I.H., C.S.P.

Before me, the undersigned authority, on this day personally appeared STEPHEN E. PETTY ("Affiant") who, being by me first duly sworn, deposes and says:

1.  I am an adult in sound mind and body and have personal knowledge of the fact averred herein.

2.  Since April 14, 1996, I have owned and operated EES Group, Inc., a forensic engineering and consultancy corporation specializing in health and safety.

3.  I hold relevant industry certifications including board certifications as a C.I.H. (Certified Industrial Hygienist), a C.S.P. (Certified Safety Professional), and as a P.E. (Professional Engineer) in six states (Florida, Kentucky, Ohio, Pennsylvania, Texas and West Virginia).

4.  I have served as an expert in personal protective equipment and related disciplines in approximately 400 legal cases. I have often been certified as, and provided testimony as, an expert in these areas.

5.  For example, I am currently serving as an expert in the Monsanto Roundup, DuPont C-8 and 3-M PFAS litigation.

6.  I taught Environmental and Earth Sciences.as an adjunct professor at Franklin University

7.  I hold nine U.S. patents, most related to heating, ventilation and air conditioning (HVAC) systems.

8.  I am a current member in good standing of the following relevant associations: American Industrial Hygiene Association (AIHA), American Board of Industrial Hygiene (ABIH), American Conference of Governmental Ind. Hygienists (ACGIH), American Institute of Chemical Engineers (AIChE), American Society of Refrigeration, Air Conditioning and Refrigeration Engineers (ASHRAE); Member ASHRAE 40 Std. and TC 2.3, and Sigma Xi.

9.  I am an expert in the field of Industrial Hygiene, which is the science and art devoted to the anticipation, recognition, evaluation, and control of those environmental factors or stressors — including viruses — arising in or from the workplace, which may cause sickness, impaired health and well-being, or significant discomfort among workers or among the citizens of the community.

Affidavit of Stephen E. Petty, P.E., C.I.H., C.S.P.

10. Industrial Hygiene is fundamentally concerned the proper methods of mitigating airborne/dermal hazards and pathogens, as well as with the design and use of personal protective equipment, among other things.

11. Medical doctors, virologists, immunologists, and many public health professionals are not qualified experts in these areas by virtue of those aforementioned credentials.

12. On May 7, 2021, the Centers for Disease Control (CDC) updated its guidance, providing that the primary mechanism for transmission of Covid-19 is through airborne aerosols, and not, as previously believed, by touching contaminated surfaces or through large respiratory droplets, as believed during previous periods of the pandemic.

13. Airborne viral aerosols can consist of a single viral particle or multiple viral particles clumped together, and usually smaller than 5 $\mu$ (microns) in size. By comparison, droplets are >5 $\mu$ to >10 $\mu$ in size.

14. A square micron is approximately 1/4000th the area of the cross-section of a human hair and 1/88th the diameter of a human hair. Covid particles are ~1/10 of a micron or ~1/40,000th the area of a cross section of a human hair or ~1/1,000th the diameter of a human hair.

15. A recent University of Florida study capturing air samples within an enclosed automobile cabin occupied by a Covid-positive individual showed that the only culturable Covid-19 virus samples obtained were between 0.25$\mu$ to 0.5$\mu$ in size. Particles smaller than 5$\mu$ are considered very small and/or very fine or aerosols.

16. Very small particles are not affected by gravity in the same way that larger particles are and can stay suspended in still air for a long time, even days to weeks.

17. Because they stay suspended in concentration in indoor air, very small particles can even accumulate and become more concentrated over time if the ventilation is poor.

18. Very small airborne aerosols pose a particularly great risk of exposure and infection because, since they are so small, they easily reach the deep lung. This explains in part why Covid-19 is so easily spread, and why so little Covid-19 is required for infection.

19. Exposure to airborne aerosols is a function of two primary parameters: concentration and time. Less is better regarding both parameters.

20. For many reasons, personal protective equipment (PPE) is the least desirable way to protect people from very small airborne aerosols. Moreover, masks are not PPE since they cannot be sealed and do not meet the provisions of the Occupational Safety and

2

Affidavit of Stephen E. Petty, P.E., C.I.H., C.S.P.

Health Administration (OSHA) Respiratory Protection Standard (RPS), namely 29 CFR 1910.134.

21. Regarding PPE, facial coverings do not effectively protect individuals from exposure to very small airborne aerosols. A device referred to as a respirator is required to provide such protection.

22. Industrial hygienists refer to an "Hierarchy of Controls" that are typically implemented to minimize exposures, including exposures to very small airborne aerosols like Covid-19.

23. Regarding practical or "engineering" controls, industrial hygienists focus on practices that dilute, destroy, or contain airborne hazards (or hazards in general).

24. PPE — especially facial coverings — do not dilute, destroy, or contain airborne hazards. Therefore, facial coverings do not appear anywhere in the Industrial Hygiene (IH) Hierarchy of Controls for very small airborne aerosols like Covid-19. Even respirators (part of the PPE Category and not masks) are in the last priority on the Hierarchy of Controls.

25. Facial coverings are not comparable to respirators. Leakage occurs around the edges of ordinary facial coverings. Thus, ordinary facial coverings do not provide a reliable level of protection against inhalation of very small airborne particles and are not considered respiratory protection.

26. For example, during the seasonal forest fires in the summer of 2020, the CDC issued public guidance warning that facial coverings provide no protection against smoke inhalation. That is because facial coverings do not provide a reliable level of protection against the small particles of ash contained in smoke. Ash particles are substantially larger than Covid-19 aerosolized particles.

27. I have reviewed the Polk County Public Schools (PCPS) facial covering policy and its mask policy as set forth in the Code of Conduct.

28. Ordinary facial coverings like the ones required by the PCPS facial covering policy do not meet any of the several key OSHA Respiratory Protection Standards for respirators.

29. Because of the gaps around the edges of facial coverings required by PCPS' policy, they do not filter out Covid-19 aerosols.

30. The effectiveness of a cloth facial covering falls to zero when there is a 3% or more open area in the edges around the sides of the facial covering.

3

Affidavit of Stephen E. Petty, P.E., C.I.H., C.S.P.

31. Most over-the-counter disposable facial coverings have edge gaps of 10% or more. When adult-sized facial coverings are used by children, edge gaps will usually greatly exceed 10%.

32. Even short breaks (e.g. to eat) expose individuals to Covid-19 aerosols in indoor spaces.

33. Ordinary cloth facial coverings like the ones required by the PCPS mask requirement do not provide any filtering benefit relative to particles smaller than 5μ if not sealed.

34. Substantial mitigation of Covid-19 particles could be immediately achieved by:

   a. opening windows and using fans to draw outdoor air into indoor spaces (diluting the concentration of aerosols)
   b. setting fresh air dampers to maximum opening on HVAC systems,
   c. overriding HVAC energy controls,
   d. increasing the number of times indoor air is recycled,
   e. installing needlepoint ionization technology to HVAC intake fans, and
   f. installing inexpensive ultraviolet germicide devices into HVAC systems.

35. All of the above-referenced techniques are more effective and meet standard industrial hygiene hierarchy of controls (practices) for controlling exposures in place for nearly 100 years.   The use of cloth facial coverings do not fit within these basic hierarchy of controls since masks are not PPE and cannot be sealed. There are no OSHA standards for facial coverings (masks) as respiratory protection.

36. Extended use of respiratory PPE is not indicated without medical supervision.

37. In summary:

   a. PPE is the least desirable way to protect people from very small airborne aerosols.
   b. Facial coverings as required by the PCPS  policy are not recognized as PPE since they cannot be sealed and are not covered by the OSHA RPS.
   c. If PPE were to be used for protection, respirators, not facial coverings as required by the PCPS  policy are needed to provide any effective protection from very small airborne aerosols.
   d. Very small aerosol particles are more likely to be a greater cause of disease than respiratory droplets because they can evade PPE and reach deep into the lungs, whereas respiratory droplets have to work against gravity in order to travel up a person's nose into the sinus.

4

Affidavit of Stephen E. Petty, P.E., C.I.H., C.S.P.

e.  Much better alternatives to controlling exposure are available (i.e., engineering controls of dilution – ventilation and destruction), and should be used to minimize exposures as opposed to masks.

STATE OF FLORIDA
COUNTY OF BROWARD

Sworn to and subscribed before me this 1st day of June, 2021, by Stephen Petty, who is (✓) personally known to me or (__) who produced FL D L _____ as identification.

_____
NOTARY PUBLIC, State of Ohio
Commission No. _____

My Commission Expires: _____

x _____
STEPHEN PETTY

Diana Wilkinson
Notary Public
State of Florida
Comm# HH075659
Expires 12/29/2024

5



**JODY PHILLIPS**

# RECEIPT
3978322

CLERK OF THE CIRCUIT AND COUNTY COURTS
JACKSONVILLE, DUVAL COUNTY, FLORIDA

Printed On:
09/03/2021 03:13
Page 1 of 1

| Receipt Number: 3978322 - Date 09/03/2021  Time 3:12PM | | |
|---|---|---|
| **Received of:** | AndersonGlenn, LLP | |
| | 10751 Deerwood Park Blvd | |
| | Suite 105 | |
| | jacksonville, FL 32256 | |
| **Cashier Name:** EFile | | **Balance Owed:** 401.00 |
| **Cashier Location:** E-Filing | | **Total Amount Paid:** 401.00 |
| **Receipt ID:** 7304637 | | **Remaining Balance:** 0.00 |
| **Division:** CV-G(Circuit Court) | | |

| Case# 16-2021-CA-004794-XXXX-MA -- PLAINTIFF: HELM, KYLE | | | |
|---|---|---|---|
| Item | Balance | Paid | Bal Remaining |
| Fees | 401.00 | 401.00 | 0.00 |
| **Case Total** | **401.00** | **401.00** | **0.00** |

| Payments | | |
|---|---|---|
| **Type** | **Ref#** | **Amount** |
| EFILING | 32260124 | 401.00 |
| **Total Received** | | **401.00** |
| **Total Paid** | | **401.00** |

## The clerk of courts is here to help you.

| We can be found online at: | **WWW.DUVALCLERK.COM** |
|---|---|
| **The main courthouse Location is:** | **Clerk of the Circuit and County Courts** |
| | **Duval County, Florida** |
| | 501 West Adams Street |
| | Jacksonville, Florida 32202 |
| **The main telephone number is:** | 904-255-2000 |
| **Other Locations:** | **Neptune Beach Courthouse Annex** |
| | 1543 Atlantic Blvd |
| | Neptune Beach, Florida 32266 |