# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

CASE NO.: 3-21-cv-00900-MMH-JRK

**KYLE and TARAN HELM**, individually and as next friends for **JANE DOE 1, JANE DOE 2** and **JANE DOE 3**, et al.,

Plaintiffs,

v.

**DUVAL COUNTY SCHOOL BOARD**,

Defendant.

_____/

## AMENDED COMPLAINT FOR
## <u>DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES</u>

**COME NOW KYLE** and **TARAN HELM**, individually and as next friends for **JANE DOE 1, JANE DOE 2**, and **JANE DOE 3**, et al., Plaintiffs, requesting judgment of the Court and declaration that the **DUVAL COUNTY SCHOOL BOARD**, and through the Board, Duval County Public Schools (collectively "DCPS") Emergency Rule adopted August 23, 2021 (the "Mask Mandate") is void under Florida Statutes, the Florida Constitution, and because it cannot survive strict scrutiny, enjoining DCPS from enforcing its harmful and unconstitutional

Mask Mandate on an emergency basis, and awarding Plaintiffs judgment against DCPS for their damages.

## Introduction

"Of all tyrannies, a tyranny sincerely exercised for the good of its victims may be the most oppressive. It would be better to live under robber barons than under omnipotent moral busybodies."

—C.S. Lewis

Is it acceptable for the School Board to inflict harm on certain students in an ill-founded attempt to reduce the case count of one specific virus? Just how much harm to any single kid is the School Board willing to accept in the pursuit of its ends?  The only civilized answer must, of course, be "none." What justifies the elevation of statutorily-vested School Board powers over the Constitutional rights of parents and their children? Just how much financial hardship, anxiety, and heartache can the School Board mete out to parents who differ from the School Board in their view of what is best for *their* children?

The enactment of the Mask Mandate on August 23, 2021, perfectly illustrates the risks of giving unilateral "emergency powers" to School Board members and DCPS officials, who, once possessed with these powers, wield them like a gorilla with an oversized paint brush, blotting out valid concerns of parents over *their* kids' particular health issues, social development, emotional well-being, and educational progress. The Mask Mandate co-opts the Plaintiffs' children and

tramples their Constitutional rights while ignoring the data showing that mask mandates have had no effect statewide (among Florida's sixty-seven counties and comparing Covid numbers in those with and without mask mandates). The message is simple: "We hold the power, and we will weaponize it against you at a moment's notice. We know better than parents how to raise and protect their kids. And your Constitutional rights be damned."

More than eighteen months after Covid-19 was unleashed upon the western world, with every citizen of this State having had more than adequate time to inform him or herself of the risks of Covid-19, the potential mitigation measures, and each having made an independent judgment and decision about how to adapt to the reality that Covid-19 is not going away, the School Board called an "emergency" meeting for Monday, August 23rd, with initial notice sent out on Sunday, August 22nd. Following their weekend backroom discussions, the School Board arrived to "listen" to parents, who remained uninformed of the School Board's true agenda and oblivious to the fact that the School Board had arrived with an Emergency Rule (drafted over the weekend no doubt) in hand. After being faced with intense opposition from parents at the "emergency" meeting, these parents providing data to demonstrate the ineffectiveness of forced masking and relaying personal and traumatic experiences lived by their children under masks,

3

the School Board pulled out its Emergency Rule from under the table and signed it.  The parents in attendance were left in the dark about the School Board's true intentions and the pre-ordained outcome of the "emergency" meeting because the Emergency Rule was not noticed or circulated for public comment ahead of the meeting.

In obstinate defiance of the State, the County, the court system, and the community represented at the "emergency" meeting, the School Board implemented the most destructive and restrictive of all potential alternatives: its odious involuntary mask mandate for children. DCPS clutches onto this harmful policy, in spite of the facts that the State has rejected forced masking, the County has rejected forced masking, the First District Court of Appeal over Duval county has determined that forced masking as violative of Constitutional rights, the Department of Health has rejected forced masking and requires that parents be given the right to opt-out of any student masking policy at the parent's *sole discretion*, and the Department of Education has informed counties around the State that their mask policies are not making any difference in slowing the spread of Covid-19 (that is, the precipitous drop in Covid cases has been uniform across the State regardless of any School District's masking policies) and they should allow students to opt-out, without conditions. Had the School Board only spent its

weekend looking at the available data, rather than secretly drafting its Emergency Rule, it would have realized that there is no statistically significant difference in the Covid-19 case numbers between the counties in Florida that have and have never had mask mandates. The same is true of states across the United States, and indeed, entire countries who have never imposed mask mandates on their citizens.

Notwithstanding all of that, the School Board and DCPS bureaucrats irrationally, arbitrarily, and capriciously push forward with perhaps the *most* restrictive means of trying to mitigate the Covid-19 cases in DCPS schools, and without proper consideration of the available *less* restrictive alternatives. Even more fatally, the School Board has engaged willful and inhumane blindness to the harms it is causing to many of its students, each of whom has a story to tell about how the mask has caused them physical discomfort, anxiety, depression, destroyed their love of going to school, hampered their education, exacerbated their medical condition, and on and on and on. Parents have been forced to withdraw their children from school to avoid these harms and protect their children from the School Board's unrelenting madness. A small minority of counties across the State took similar draconian action in response to the increase in Covid cases seen at the beginning of the school year, and the majority of these outlier counties have now abandoned their mask mandates in recognition of the

precipitous drop in Covid cases in the past two months. Stubbornly, DCPS remains a holdout, one of only three or four of the sixty-seven counties in the State with forced masking, despite a similar precipitous drop in cases in Duval County and within DCPS schools. Despite internal dissent, the School Board has now taken action to implement a permanent policy to allow for forced masking at the Superintendent's discretion under the guise of a policy retitled "Control of Communicable Diseases". The School Board has indicated that its goal is to implement the new policy before relaxing the current Emergency Rule, so that the power claimed during this so-called emergency is not surrendered willfully. Thus, the Court *must* act. It must act now, to protect these particular children from an entrenched School Board unwilling to relinquish its claimed power despite the evidence of continued harm.

### Jurisdictional Allegations

1.      This is an action for declaratory and injunctive relief, and an action for damages exceeding $100,000.00, against a chartered county's public school district located in Florida.

2.      Venue is properly in Duval County because it is where the Defendant is located, it is where the causes of action accrued, and it relates to certain orders issued by the Defendant or its purported agents within Duval County.

3.     Jurisdiction is appropriate in Circuit Court. The Circuit Court has primary jurisdiction to hear constitutional challenges brought under the Florida Constitution to the facial validity of agency rules and other actions. Plaintiffs require emergency injunctive relief, which can only be obtained through the Circuit Court. Finally, the subject matter of this case is not within the scope of DCPS's authority to resolve.

4.     The Circuit Court has authority to review the Mask Mandate, as it was created under emergency agency rulemaking provisions governed by Chapter 120, Florida Statutes (the "Administrative Procedures Act" or the "Act").[1]

5.     This lawsuit challenges: (i) DCPS's compelling governmental interest for the Mask Mandate, and whether the Mask Mandate is the least restrictive means to achieve the stated interest (ii) the facial and as-applied constitutionality of the Mask Mandate, and (iii) the delegated statutory authority of DCPS to implement the Mask Mandate in the first place.

6.     The Plaintiffs also seek emergency injunctive relief from the Mask Mandate.

---

[1] Specifically, the Mask Mandate was implemented pursuant to § 120.54(4), Florida Statutes, which provides DCPS with emergency rulemaking authority providing for limited notice, public comment and participation, etc.

**The Plaintiffs**

7.     KYLE and TARAN HELM are residents of Duval County. They are the parents and guardians of JANE DOE 1, JANE DOE 2, and JANE DOE 3, who all attend public school in Duval County (grades eight and seven). The Helms and their three children have been harmed by the Mask Mandate. JANE DOE 1 suffers from single-sided deafness and is unable to function in a school environment that compels masking of both teachers and students alike. JANE DOE 2 suffers from severe anxiety when forced to wear a mask. Ms. Helm has a background in early child development and is qualified as both a parent and a professional to identify the clinical and sub-clinical harms suffered by her daughters as a result of the Mask Mandate. Ms. Helm is immunocompromised and perceives Covid-19 as a real and persistent threat, but she has greater concerns about the immediate harm done to her daughters by the Mask Mandate. The Helms have notified DCPS about these harms. DCPS has refused to take any remedial action.

8.     GARY and AMY DESJARDINS reside in Duval County and are the parents and guardians of JOHN DOE 1 and JANE DOE 4, who both attend public school in Duval County. The Desjardins and their children have been harmed by the Mask Mandate. JOHN DOE 1 has a reading disability, learns kinesthetically, and has a 504 Plan in place at the Duval County public school he attends. The Plan

provides special resources and additional instruction and test-taking accommodations for JOHN DOE 1. With the 504 Plan in place, JOHN DOE 1 progressed well, and the effects of his reading disability were ameliorated - so much so that JOHN DOE 1 became a top-performing student. After Duval County Public Schools forced students to wear masks during the 2020-21 school year, JOHN DOE 1's academic performance regressed. In the first part of the 2021-22 school year, JOHN DOE 1 opted out of the mask requirement and flourished academically and emotionally. With the school-approved 504 Plan in place, the Desjardins have requested an exception for their son, JOHN DOE 1, but have yet to hear back from DCPS. Mr. Desjardins has notified DCPS about these harms. DCPS has refused to take any remedial action.

9. MICHELLE PETTY is a resident of Duval County, whose daughters JANE DOE 5 and JANE DOE 6 attend sixth grade and kindergarten in public schools in Duval County. Ms. Petty and JANE DOE 5 and JANE DOE 6 have been harmed by the Mask Mandate. JANE DOE 5 attended school last year at a Duval County public school and was compelled to wear a mask. During the school year, JANE DOE 5 was sick on more than five occasions, having not previously been sick with the same frequency during prior years. JANE DOE 6 attended school unmasked last year and was not sick. Ms. Petty attempted to schedule an

appointment with her children's physician in an attempt to comply with the Mask Mandate and in order to complete the Medical Certification. She was told that the first available appointment was October 24, 2021, meaning that her children would be forced to attend school while masked for more than a month and a half following the Mask Mandate's planned implementation on September 7, 2021. Ms. Petty has notified DCPS about these harms. DCPS has refused to take any remedial action.

10.     HEATHER WALLACE resides in Duval County and is the parent and guardian of JANE DOE 7 and JANE DOE 8, who both attend public school in Duval County (11th and 3rd grades). Ms. Wallace and her two daughters have been harmed by the Mask Mandate.  JANE DOE 7 suffered from persistent migraine headaches during the 2020-21 school year when masks were compelled. Outside of the 2020-21 academic year, and throughout the beginning of the 2021-22 school year, JANE DOE 7 has never suffered from persistent migraine headaches. JANE DOE 8 became physically ill on the playground and vomited while being compelled to wear her mask in the Florida heat. Other than while being forced to wear a mask, JANE DOE 8 has never suffered from heat exhaustion to the point of vomiting. Ms. Wallace does not currently have a family practitioner for her daughters and due to the recently enacted Mask Mandate has attempted to

find one familiar with the Medical Certification with availability ahead of the Mask Mandate taking effect on September 7, 2021. She has been unable to find a licensed health care provider to review the Medical Certification in order to comply with the Mask Mandate. Ms. Wallace has notified DCPS about these harms. DCPS has refused to take any remedial action.

11.    GREGORY and KRYSTAL ADAME are residents of Duval County, whose child JANE DOE 9 attends second grade in a public school in Duval County. The Adames and their daughter have been harmed by the Mask Mandate. During the previous school year while masking was compelled, JANE DOE 9 attended a public school that enforced the Mask Mandate. While she was playing outside during the school day and had removed her mask, a Duval County Public Schools teacher told JANE DOE 9 that she needed to put her mask back on or she would contract Covid-19. JANE DOE 9 complied and subsequently overheated while on the playground. After being taken inside, JANE DOE 9 vomited from heat exhaustion and was taken to the Emergency Room. At no other point in her life has JANE DOE 9 suffered from heat exhaustion or vomited due to exertion. The Adames have notified DCPS about these harms. DCPS has refused to take any remedial action.

12. JEFF and CARRIE SELLERS reside in Duval County. They are the parents and guardians of JANE DOE 10, JOHN DOE 2, and JANE DOE 11, who all attend public school in Duval County (6th, 3rd and 1st grades). The Sellers and their three children have been harmed by the Mask Mandate. JANE DOE 10 became depressed, withdrawn, and regressed socially and suffered emotionally during DCPS' enforcement of its compelled masking policy during the 2020-21 school year. Additionally, JANE DOE 11 was prescribed an inhaler during the 2020-21 school year due to breathing difficulties - breathing difficulties that she never experienced at any time in her life, both before and after being forced to wear a mask for extended periods of time while at her public school. The Sellers opted out of the DCPS mask policy at the beginning of the 2021-22 school year and their daughter JANE DOE 11 has flourished and returned to her normal, social self while not being forced to wear a mask. JOHN DOE 2 also suffered with depression, anxiety, vision disturbances, and persistent headaches while masked during the 2020-21 school year, behaviors and conditions that he has never exhibited at any other time in his life. Similar to JANE DOE 11, JOHN DOE 2 has returned to normal without any symptoms of anxiety, depression, vision disturbances, or headaches during the 2021-22 school year while unmasked. The Sellers' religious beliefs inform their rightful desire to not force their children to

wear masks as DCPS seeks to compel, and the Mask Mandate interferes with the Sellers' God-given rights. The Sellers have a family practitioner for their children, and they were notified on September 1, 2021, that their family practitioner will not sign the Medical Certification necessary to comply with the Mask Mandate "unless their kids' ears are falling off." The Sellers will be unable to locate a suitable licensed health care provider in order to complete the Medical Certification ahead of the September 7, 2021, implementation of the Mask Mandate. The Sellers have notified DCPS about these harms. DCPS has refused to take any remedial action.

13.     SEAN and CAROLINA COLLINS reside in Duval County and are the parents and guardians of JOHN DOE 3. JOHN DOE 3 attends public school in Duval County and is currently in kindergarten. The Collins and their son have been harmed by the Mask Mandate. Mr. and Mrs. Collins opted their son out of the mask requirement instituted by DCPS at the beginning of the 2021-22 school year. Despite having complied with DCPS' policy, DCPS teachers and administrators at JOHN DOE 3's school have repeatedly placed a mask on JOHN DOE 3 despite the clear intent of Mr. and Mrs. Collins as evidenced by their opt-out form submitted to DCPS. Mr. Collins has reminded the school on several occasions that his son is not to be masked, and his requests have been ignored. The Collins are recent transplants from Texas and do not have a family practitioner for

their son, and they are in the process of seeking out a health care provider to complete the Medical Certification ahead of the September 7, 2021, implementation of the Mask Mandate. The Collins have notified DCPS about these harms. DCPS has refused to take any remedial action.

14.     ROBBY and TAMSYN BELL reside in Duval County and are the parents and guardians of JANE DOE 12, JANE DOE 13, and JANE DOE 14, who all attend public school in Duval County (12th and 11th grades). The Bells and their three daughters have been harmed by the Mask Mandate. All of the Bell's daughters suffered from exhaustion, fatigue, and persistent headaches during the 2020-21 school year in which they were forced to wear masks while at school. On repeated occasions, teachers at the Bell daughters' school intimidated and threatened the Bell girls when they momentarily removed their masks. The Bell daughters have always been enthusiastic about attending school, but now are fearful and reluctant to attend school. The Bells' family practitioner refused to sign the Medical Certification without further evaluation of the medical, physical, psychological, or other health harms being inflicted on the Bell daughters. The Bells have been unable to find a licensed health care provider to review the Medical Certification in order to comply with the Mask Mandate and will be unable to do so before the Mask Mandate takes effect on September 7, 2021. For

this reason, the Bell daughters will face disciplinary action and further intimidation at school when they fail to comply with the Mask Mandate due to their legitimate physical, medical, psychological, and other health concerns. The Bells have notified DCPS about these harms. DCPS has refused to take any remedial action.

15.     STAN and KATIE LEWANDOSKI reside in Duval County and are the parents and guardians of JANE DOE 15 and JOHN DOE 4, who both attend public school in Duval County (5th and 3rd grades). The Lewandoskis and their children have been harmed by the Mask Mandate.  JANE DOE 15 suffers from seasonal and food allergies and has difficulty breathing *without* a mask. JANE DOE 15's allergies were exacerbated while being forced to wear a mask during the 2020-21 school year. JANE DOE 15 suffered from social anxiety due to the necessity of removing her mask periodically due to her breathing difficulties. JANE DOE 15 has expressed that she will comply with the Mask Mandate despite her medical conditions due to her fear that she will be bullied and ostracized if she does not comply. JOHN DOE 4 is active in youth sports where he does not have to wear a mask and is justifiably confused by the requirement that he wear a mask while at school beginning September 7, 2021. The Lewandoskis do not currently have a family practitioner for their children and due to the recently enacted Mask

Mandate have attempted to find one familiar with the Medical Certification with availability ahead of the Mask Mandate taking effect on September 7, 2021. Mrs. Lewandoski was informed by the pediatrician she contacted in an effort to complete the Medical Certification that there is no possibility of obtaining an appointment ahead of September 7, 2021. She has been unable to find a licensed health care provider to review the Medical Certification in an attempt to comply with the Mask Mandate. Moreover, the Lewandoskis are not comfortable sharing sensitive health information with DCPS in order to comply with the Mask Mandate. The Lewandoskis' intend to comply with the Mask Mandate when it is implemented on September 7, 2021, due in part to their legitimate fear and past experience confirming that their children will be socially excluded, intimidated, and threatened if they attend school without a mask. The Lewandoskis do not want to remove their children from their school despite the Mask Mandate because of the social and emotional upheaval that a sudden change will cause. The Lewandoskis' children's school did not take any measures over the summer of 2021 to improve the air quality in the school. The Lewandoskis have notified DCPS about these harms. DCPS has refused to take any remedial action.

16.    MARLEATIA BESS and ROBIN FREEL are residents of Duval County and are parents and legal guardians of JANE DOE 16 and JOHN DOE 5. JANE

DOE 16 and JOHN DOE 5 attend public schools in Duval County. Ms. Bess and Ms. Freel and their daughters have been harmed by the Mask Mandate. JANE DOE 16 is asthmatic and suffered from persistent headaches during the 2020-21 school year. Despite JANE DOE 16's medical condition, she was not given the option to not wear a mask at school. DCPS compelled Ms. Bess to enroll JOHN DOE 5 for in-person schooling during the 2020-21 school year, and for JOHN DOE 5 to wear a mask, despite Duval County Public School's awareness and actual knowledge that JOHN DOE 5 has hearing and speech disabilities and is autistic. For these reasons, JOHN DOE 5 has an Individualized Education Plan (IEP) approved by DCPS. Due to JOHN DOE 5's significant physical and medical impairments and the lack of accommodation from DCPS, Ms. Bess had no choice but to withdraw her son from school during the 2020-21 school year. Ms. Bess and Ms. Freel were informed by their children's physicians that they would not sign the Medical Certification for JANE DOE 16 and JOHN DOE 5's physical and medical conditions, and for this reason have been trying to locate an alternative health care provider. As such, Ms. Bess and Ms. Freel will be unable to obtain the requisite Medical Certifications for their children in time to comply with the Mask Mandate implementation on September 7, 2021. Ms. Bess and Ms. Freel have notified DCPS about these harms. DCPS has refused to take any remedial action.

**Defendant, Duval County Public Schools**

17.     Duval County Public Schools is a political subdivision of the State of Florida managed by its Superintendent, Diana Greene, who acts as Duval County Public Schools' chief executive, and a School Board comprised of seven members representing seven districts within Duval County (the "Board").

18.     Duval County Public Schools is an agency within the meaning of that term under Chapter 120, Florida Statutes, and its rulemaking authority is provided by that Chapter.

19.     Elizabeth Andersen is the Chair of the Board (the "Chair"). Duval County Public Schools may be served via service on the Chair, or on the Superintendent if the Chair is unavailable.

**Mask Science**

20.     On March 31, 2020, the U.S. Surgeon General said that the data does not support wearing masks, which are ineffective in preventing respiratory diseases and actually increase the risk of getting Covid-19. ("On an individual level, there was a study in 2015 looking at medical students and medical students wearing surgical masks touch their face on average 23 times...We know a major way that you can get respiratory diseases like coronavirus is by touching a surface

and then touching your face so **wearing a mask improperly can actually increase your risk of getting disease. It can also give you a false sense of security.**")

21.     Masks do not protect wearers from airborne transmissible infectious agents. The Occupational Safety and Health Administration's ("OSHA") website plainly states that cloth face masks "**will not protect the wearer against airborne transmissible infectious agents due to loose fit and lack of seal or inadequate filtration.**"

22.     On June 8, 2020, the World Health Organization announced that "[f]rom the data we have, it still seems to be rare that an asymptomatic person actually transmits onward to a secondary individual," casting serious doubt on the rationality and effectiveness of wearing masks to prevent Covid-19.

23.     In May 2021 — months behind its peer agencies and the scientific community —the CDC substantially revised its prior guidance, admitting that Covid-19 is *not* spread primarily through respiratory droplets but rather is primarily spread through very fine airborne transmissible infectious agents. This fact casts serious doubt about the rationality and effectiveness of wearing masks to prevent Covid-19.

24.     While the CDC is a helpful resource for policy makers, it is irrational to rely solely on that public-health agency, which is not located in Florida, does

not analyze Florida-specific issues, and is not familiar with the local climate, culture, and community. The problems of the CDC's well-known tardiness in updating its scientific guidance, and its constantly shifting advice on the tardy guidance it has issued, are a matter of public record.

25.     As recently as mid-May 2021, U.S. media were roundly criticizing the CDC for its sluggardly performance during the entire pandemic. For example:

[T]hroughout the health crisis, the CDC has been so slow to issue guidance in line with the research consensus on COVID-19 that it's brought new meaning to the concept of 'follow the science.' The CDC was several months late to the idea that surface transmission of the coronavirus is largely mythical. It was months late to the notion that the disease rarely spreads outdoors. Until this week, it continued to issue byzantine advice for vaccinated individuals even as evidence piled up that inoculated people are at extremely low risk of serious disease or transmission. **On vaccines and masks, the agency has been all over the place.**

The CDC's Big Mask Surprise Came Out of Nowhere, The Atlantic, May 15, 2021, *available online* at https://www.msn.com/en-us/news/opinion/the-cdc-e2-80-99s-big-mask-surprise-came-out-of-nowhere/ar-BB1gJTY8 (emphasis added).

26.     Despite this public lashing, the CDC is one of only two purported agency authorities relied upon by the School Board in adopting its Mask Mandate.

**The DCPS Mask Mandate**

27.     Roughly two months ago, DCPS adopted its Mask Mandate in the form of the "Emergency Rule of the School Board of Duval County" at an

"emergency" meeting held on August 23rd. A copy of the Mask Mandate is attached hereto as **Exhibit A**.[2]

28.    The controversial Mask Mandate was implemented pursuant to §120.54(4), Florida Statutes. By using this emergency statute, DCPS was able to avoid many ordinary requirements for public notice of the intended policy, public comment, and public participation.

29.    The Mask Mandate has caused great public consternation and unhappiness. It has divided neighbor from neighbor. It has created a treasured "right" for parents who want their children to be masked, and it has created a terrifying daily burden for parents who do not want their children to be masked. The Mask Mandate has caused upheaval and financial hardship to families who believed they were settled in their chosen public school for the 2021-22 school year. And it has caused anxiety and trepidation among children who lived through the masked dark ages of the 2020-21 school year.

30.    The Mask Mandate provides that "all students must wear a face covering that covers the nose and the mouth at all times while inside a school or any administrative facility, inside a building for purposes of a school-related or

---

[2] Exhibits to the Amended Complaint are identical to those filed with the original Complaint, and are incorporated herein by reference. The exception is FDOH's Emergency Rule 64DER21-15, which is attached hereto as a new Exhibit.

school-sponsored event (except as provided in administrative guidance for District athletics and performing arts, which will be conspicuously posted at District athletics and performing arts events), or on District-approved transportation." Mask Mandate, p. 4.

31.     The Board requires Duval County students in kindergarten through twelfth grades, including Plaintiffs' children, to wear a face mask.

32.     Prior to enacting the Mask Mandate, the Board never studied potential harms to students and staff.

33.     After enacting the Mask Mandate, the Board has never studied actual harms to students and staff.

34.     Neither the Board nor DCPS has *ever* performed any "balancing of harms" analysis regarding the Mask Mandate.

35.     The Mask Mandate provides for an undefined process that will "provide for a parent to opt out their student from this policy due to a medical, physical, or psychological condition evidenced by a medical certification." Mask Mandate, p. 4. The Mask Mandate continues: "A face covering will not be required when it would cause an impairment due to an existing health condition as evidenced by a medical certification." Mask Mandate, p. 4.  The Mask Mandate

does not set out the process nor define what constitutes an impairment in the eyes of DCPS.

36.     The Mask Mandate makes no mention of efforts to be undertaken by DCPS to reduce any social stigma for a student who, for medical, physical, psychological, or other health reasons, cannot or should not where a mask. Other school districts in the State that have attempted to impose mask mandates have *at least* recognized the potential psychological and emotional harm caused by being singled out and ostracized, especially at a young age.

37.     DCPS has not set forth any training or procedures for teachers, administrators, and staff in methods for reducing social stigma and minimizing psychological trauma for students who obtain exemptions to the Mask Mandate. DCPS has not even attempted to prevent its own teachers and staff from participating in creating and perpetuating "mask stigma" towards students. Some DCPS teachers themselves participate in stigmatizing unmasked students and have perpetrated this harm during the unconditional opt-out period in effect at the beginning of the 2021-22 school year.

38.     The Mask Mandate in Duval County, in fact, aims to stigmatize and intimidate. DCPS has stated that students who do not follow the guidelines may be charged with a Code of Student Conduct infraction and be subject to the

appropriate consequences. Subsequent to the School Board's adoption of the Mask Mandate, DCPS published disciplinary consequences to be imposed upon students who fail to comply via its website.

39.    As a result, the social stigmatization of children who do not wear masks at school will not be abated by DCPS under the Mask Mandate. Rather, DCPS has opted for a punitive approach to enforce the social stigmatization of children who do not wear face masks.

40.    The uncontrolled social stigma rampant in DCPS's schools is causing direct, immediate, and substantial psychological harm to the Plaintiffs' children.

41.    DCPS irrationally, arbitrarily, and capriciously instituted an Emergency Rule that created more questions than it answered, having left the entire process for obtaining a medical certification undefined.

42.    The Mask Mandate does not itself provide for any form to be used to request an exemption.

43.    On Thursday, August 26th, DCPS released its Covid-19 Face Covering Certification Form (the "Medical Certification") attached hereto as **Exhibit B**.

44.    The Medical Certification, as a supplement to the Mask Mandate, is facially void due to its ambiguity and vagueness. The Mask Mandate, as adopted

and subsequently amended by the Medical Certification, does not inform parents which medical, physical, psychological, or other health conditions will be deemed sufficient by DCPS to justify opting out. Further, the Medical Certification only directs parents to: "Complete, sign, and return this form to your child's school." Nothing in the Mask Mandate sets forth who at the school will review the sufficiency of the Medical Certifications returned, how the sensitive health information will be protected, or even attempts to outline the process for appealing a rejection by a DCPS school employee.

45.     The form completely disregards the constitutional Right of Privacy belonging to the students and parents returning these Medical Certifications. In being compelled to return these Medical Certifications to the school, the Plaintiffs are forced to disclose private health information to unidentified DCPS agents without limitation.

46.     The school administrators, teachers, and staff have and continue to share the sensitive information contained on signed Medical Certifications, and otherwise indiscriminately mishandle the sensitive health information now in their possession.

47.     Having failed to set out any coherent process for handling and reviewing Medical Certifications, DCPS has arbitrarily amended its rule to narrow

the types of licensed health care providers that can provide medical opinions that masks are contraindicated and has notified parents that their children's Medical Certifications are insufficient and will be disregarded. At least twice, DCPS has broadened or narrowed its own definition of who it deems to be a licensed health care provider. Never has DCPS provided any visibility into who is making these decisions or how the sufficiency of submitted medical certifications is being reviewed, nor has DCPS provided any basis for disregarding the opinions of licensed health care providers. Parents have been left holding the bag for expenses to obtain medical certifications that DCPS has deemed invalid and scrambling to understand DCPS' current stance and acceptance policy on medical certifications.

48.     The failure of the School Board and DCPS to set out a rational, coherent policy and adjudicative process with respect to its Mask Mandate is causing emotional turmoil, financial hardship, and family upheaval within the County as families scramble to understand the Mask Mandate, attempt to comply, arrange for appointments with their licensed health care providers, and consider their options to avoid allowing the School Board and DCPS to harm their kids indiscriminately.

49.     The aftershocks of the Mask Mandate's adoption on August 23rd are reverberating throughout Duval County and are causing direct, immediate, and

substantial financial, emotional, and psychological harm to the Plaintiffs' and their children.

50.     DCPS has completely failed to provide any expectations or guidance to the local healthcare community to provide certainty and predictability to the "process". As a result, local healthcare providers have preemptively denied families requests for medical certifications by sending out notifications to their patients that they will only sign a Medical Certification for certain, specified conditions. DCPS's insufficient guidance has created a community where parents of children with valid medical, physical, and psychological, and other health conditions *cannot* opt-out as the Mask Mandate purports to allow them to do.

51.     The procedure for first, obtaining an exemption from the Mask Mandate, and second, surviving whatever review process DCPS has implemented behind closed doors to review the sufficiency of medical certifications, could not be more opaque and unavailable if DCPS had deliberately conspired to obstruct parents' access to such a procedure. In other words, the School Board and DCPS officials conspired to prevent parents from knowing whether their children would be able to opt-out of the Mask Mandate ahead of the mandate taking effect on September 7th, and they have continued to conspire to change the criteria on a rolling basis, without notice or consideration of the Plaintiffs' fundamental rights.

**Plaintiffs' Children**

52.     Except where otherwise noted, the Plaintiffs' children attend public schools within Duval County and are subject to, and are being harmed by, the Mask Mandate.

53.     The Plaintiffs' children have not been allowed any exemption from the Mask Mandate or have been unlawfully required to "prove" harms caused by the Mask Mandate, without DCPS's consideration of known medical, physical, psychological, or other health considerations making masks contraindicated and detrimental for these children, and without regard for prior harms caused to them by forced masking.

54.     The Plaintiffs' children have been treated as second-class citizens with diminished Constitutional rights

55.     The Plaintiffs' children, in many cases, have been preemptively denied exemptions from the Mask Mandate due to the ill-defined and ill-considered Emergency Rule and associated medical certification process.

56.     The Plaintiffs' children have been harmed, and are continuously being harmed, as a direct result of the proper and improper application of the DCPS Mask Mandate.

57.     Plaintiffs' children do not have Covid-19 – or if they are infected, recover quickly and have certainly not had Covid-19 for the nearly two months that the Mask Mandate has been in effect. Plaintiffs' children cannot and do not pose a transmission risk for a disease they do not have.

58.     It is an undisputed fact that school children like the Plaintiffs' children are not the primary drivers of community spread of Covid-19.

59.     It is an undisputed fact that all Duval County teachers and staff have had a full and fair opportunity to be vaccinated against Covid-19 with vaccines, which reportedly reduces the risk of suffering severe health consequences.

60.     It is an undisputed fact that many, if not most, Duval County teachers and staff have been vaccinated against Covid-19.

61.     In short, those that are at serious risk of health complications from Covid-19 have had adequate opportunity to protect themselves from the risk without requiring forced masking of children at school.

62.     Some of the Plaintiffs' children have already had Covid-19 and are now effectively shielded by antibodies, greatly reducing the chance of becoming a transmission risk for Covid-19 in the future and greatly reducing the potential health consequences of being re-infected with Covid-19.

63.    It is also an undisputed fact that school children like Plaintiffs' children, and their peers, are at an exceptionally low risk from suffering serious health effects from a Covid-19.

64.    It is an undisputed fact that students — including the Plaintiffs' children —have less risk of dying from Covid-19 than from influenza even when unmasked.

65.    Implicitly recognizing these undisputed facts, the School Board focused only on the prevalence of Covid-19 in Duval County Public Schools (absolute numbers) in the preamble to their Emergency Rule adopting the Mask Mandate and did not make any findings or hear any evidence concerning the severity of cases affecting school-age children in Duval County.

66.    Children like the Plaintiffs' children normally acquire lifelong immunities through ordinary exposure to a wide variety of common diseases at school, including respiratory viruses like Covid-19.

67.    Natural immunity to Covid-19 from previous infection is more protective and provides greater benefit than vaccination.

68.    For these reasons, some Plaintiffs have made the reasoned judgment that the risk posed by natural infection or re-infection from Covid-19 and the follow-on health consequences are far outweighed by the harms caused to their

children by forced masking, including anxiety, depression, difficulty breathing, chronic headaches, exacerbation of sensory issues and learning disabilities, developmental deficits, and reduced enjoyment of school. and not be deprived of, their singular opportunity to encounter Covid-19 naturally at school and develop lifelong natural immunity to the virus and its variants.

### DCPS Enforces the Mask Mandate
### in an Arbitrary and Capricious Manner

69.     DCPS has intentionally or negligently failed to educate its teachers and staff how to consistently, rationally, and non-arbitrarily enforce the Mask Mandate.

70.     When questioned by Plaintiffs, DCPS administrators, teachers and staff are completely unprepared to address which medical, physical, psychological, or other health conditions will satisfy the wizard behind the curtain at DCPS who decides on the sufficiency of any Medical Certification completed by the parents and signed by a licensed health care provider as required.

71.     Similarly, DCPS administrators, teachers and staff are unequipped to answer how the sensitive health information on the medical certifications will be protected and disseminated within the DCPS system.

72.     The lack of uniform guidance and procedure has led to conflicting answers from DCPS administrators, teachers, and staff, and predictably, confusion and anxiety among parents and children in the Duval County public school system.

73.     Under previous iterations of the mask mandate, DCPS's teachers and staff have forced students to wear face masks *outdoors* under strenuous conditions at high temperatures.

74.     Plaintiffs have not been able to obtain consistent or reliable answers concerning how their child's school will ensure that their child knows that they can and is reminded to remove their mask when playing or running outdoors in the Florida heat, leading to predictable harm to Plaintiffs' children.

75.     Many students including Plaintiffs' children have been subject to discipline and ridicule for violations of previous iterations of the mask mandate, and under the newly-adopted Mask Mandate, such discipline will continue to be inconsistently applied between similarly-situated students in an irrational, arbitrary, and capricious manner that varies widely from school to school, class to class, teacher to teacher, from indoors to outdoors, and even varies by time of day.

76.     As evidence of this likely harm, DCPS did not provide any guidance in the Emergency Rule regarding the constraints of potential disciplinary action

and instead began its coercion campaign by issuing stern warnings through the press and otherwise about vague punishments to be doled out according to the Student Code of Conduct.

77.     DCPS later published disciplinary measures to be taken on its website, but such measures have been applied inconsistently and enforcement is haphazard, at best.

### The Department of Education's Data — DCPS's Mask Mandate Does <u>Not</u> Work

78.     DCPS's Mask Mandate does not slow the spread of Covid-19.

79.     On April 14, 2021, the Florida Department of Education ("FDOE") sent official notice to the Superintendent of DCPS, as its chief executive officer, stating unequivocally and without qualification that "**<u>the data shows us that district's face covering policies do not impact the spread of the virus</u>**" (bold-face and underlined emphasis in the original). A copy of the FDOE's April 14, 2021, letter (the "FDOE's Covid Guidance") is attached hereto as **Exhibit C**.

80.     The FDOE compared the Covid-19 performance in 27 county school districts having optional masking policies to the Covid-19 performance in 40 county school districts having mandatory masking policies.

81.     After reviewing the actual data, the FDOE's Chancellor concluded that "[t]he review of this data showed **no link** between face mask policies and counties' positivity rates" (emphasis added).

82.     The FDOE, in conjunction with a report on Florida's reopening from the CDC, concluded that "the health data on school campuses has increasingly bested the health data in communities at large, clearly other factors – **NOT face covering policies** – are driving healthy results for Florida's schools" (emphasis added).

83.     The FDOE's Chancellor of Public Schools' email dated Thursday, May 13, 2021, containing the FDOE's conclusions represented above, is attached hereto as **Exhibit D**.

84.     After DCPS implemented its Mask Mandate, the State Surgeon General and FDOE released similar comparative data for the 2021-22 school year demonstrating that there has been a precipitous drop in Covid-19 cases since the Mask Mandate was implemented, and the drop has been uniform across Florida's sixty-seven counties regardless of mask policies.

85.     It is irrational, arbitrary, and capricious for DCPS to adopt, implement and continue to enforce the Mask Mandate when the undisputed facts show that

the Mask Mandate does not impact the case counts in any given Florida county's school district.

86.    In other words, DCPS's Mask Mandate policy is not scientifically supported and therefore there can be no compelling government interest in forcing masks on children to attempt to achieve its stated objective of reducing Covid-19 cases in DCPS schools.

87.    Masks serve **no remaining good at this point in Duval County schools**.

88.    The DOE's Covid Guidance notified DCPS that "broad sweeping mandatory face covering policies **serve no remaining good at this point in our schools**" (bold-face and underlined emphasis in the original).

89.    It is irrational, arbitrary, and capricious for DCPS to maintain the Mask Mandate when it serves no remaining good at this point in our schools.

90.    DCPS disputes these facts only indirectly in its Emergency Rule, by making vague references to remote political agencies (FDA, CDC) unconnected and detached from Florida's government, geography, culture, climate, and community — and not through any rationally-based local analysis or science.

91.    DCPS did not introduce, nor refer to in its Emergency Rule, any data contradicting FDOE's Florida study regarding the effectiveness of masks to control

case numbers across Florida, nor did it hear from anyone at the August 23rd "emergency" meeting suggesting that they were in possession of such contrary data.

92.     Neither the CDC nor the FDA has undertaken any analysis of the relevant data in Florida on a county-by-county basis to determine the effectiveness of mandatory masking of students in this State.

93.     DCPS's Mask Mandate is not based on science or reason, but instead some combination of the political leanings, emotions, irrational fears and psychological anxieties of its Superintendent and School Board Members.

94.     Masks generally harm students by:

a)      inhibiting peer-to-peer learning in our classrooms;

b)      creating a barrier for students and families who would otherwise choose in-person instruction if the Mask Mandate were not in place; and

c)      impeding face-to-face instruction.

(the "General Harms").

95.     DCPS received actual notice of the General Harms when it received the FDOE's Covid Guidance.

96. Although DCPS received actual notice of the General Harms, DCPS irrationally, arbitrarily, and capriciously failed to take any remedial action and continues to enforce its Mask Mandate.

97. To be clear, since receiving notice, DCPS has not taken a single step to mitigate, reduce, or address in any way the General Harms, and has instead maintained its policy requiring indoor masking at all times, for all ages, regardless of activity or learning environment.

98. It is irrational, arbitrary, and capricious for DCPS to ignore the General Harms to children identified by the FDOE.

99. DCPS schools are located in a state — Florida — that has never required mandatory masking.

100. DCPS schools are located in a county — Duval County — that has never required mandatory masking.

101. Notwithstanding that its schools are situated within the state *and* the county, both of which do not require masking indoors, DCPS has irrationally, arbitrarily, and capriciously required higher levels of personal protective equipment be used by its students than what are required by similarly-situated adults and children who do not attend public schools in Duval County.

102.   DCPS has irrationally, arbitrarily, and capriciously ignored the fact that its students are regularly unmasked while in the community at large, as are the parents and teachers outside of the DCPS schools.

103.   Finally, the FDOE notified DCPS that, "**we ask that districts, which are currently implementing a mandated face covering policy, revise their policy to be voluntary for the 2021-2022 school year**" (emphasis is original).

104.   Rather than receive this guidance backed by scientific data, DCPS went the other direction, and is obstinately, irrationally, arbitrarily, and capriciously ignoring the FDOE's official request that, if it implements any mask mandate, such mandate should be unconditionally voluntary for the 2021-22 school year.

### The Department of Health's Unmasking Order

105.   DCPS has recently made a habit of ignoring the guidance of the Florida Department of Health and has acted defiantly in crafting, adopting, and implementing the Mask Mandate.

106.   On April 29, 2021, the Florida Department of Health ("FDOH") categorically rescinded all of its guidance related to masking such that the FDOH no longer even *recommends* face masking. Not even for adults, much less for children. A copy of the FDOH's order rescinding all its previous masking

recommendations is attached hereto as **Exhibit E** (the "FDOH Unmasking Order").

107.    After FDOH rescinded its masking recommendation, DCPS, without any explanation, *stopped* following the guidance of the Florida Department of Health.

108.    DCPS is picking and choosing the source of authority that will support the Mask Mandate that it wishes to impose on students. Selecting vague guidance from the CDC or FDA not based on State data is not a rational approach drawn from science or reason. Without scientific support, DCPS cannot demonstrate a compelling governmental interest.

109.    DCPS has irrationally, arbitrarily, and capriciously ignored the effect of the FDOH Unmasking Order, which removes even a voluntary masking suggestion throughout the State of Florida.  DCPS crafted, adopted, implemented, and continues to enforce the Mask Mandate *after* the FDOH unmasked Florida and *after* the state of Florida continues to outperform nearly all other states in the nation in terms of Covid-19 cases.

**The Governor's Emergency Orders and the New Law**

110.   On May 3, 2021, the Governor of the State of Florida signed two emergency orders and a new law.[3]

111.   Demonstrating the express will of both the Executive and Legislative branches of the State's government, the two emergency orders and the new law suspended and/or cancelled all standing Covid-19 emergency orders at all county and municipal levels in Florida.

112.   In other words, DCPS's students are not required to wear masks anywhere *except* at school.

113.   DCPS's Mask Mandate is now irrationally, arbitrarily, and capriciously premised on the magical belief that the Covid-19 virus can only spread on school property. If students do not wear masks when moving through the community at large, in their churches, at stores, when they get together in each other's homes, at birthday parties, in restaurants, and so forth, and even in their own homes with parents who are not required to wear masks anywhere, school masking accomplishes nothing.

---

[3] Following scientific evidence and data to a rational conclusion, the Governor signed Emergency Executive Orders 2021-101 and 2021-102, and signed SB 2006 into law.

114.    DCPS is irrationally, arbitrarily, and capriciously taking a position opposed by the Governor, the Legislature, the Florida Department of Health, the Florida Department of Education, and common sense.

115.    As further evidence of these facts, DCPS ignored the Florida Department of Health's Emergency Rule (Rule No. 64DER21-12 titled Protocols for Controlling COVID-19 in School Settings) attached hereto as **Exhibit F**.

116.    DCPS further ignores the Florida Department of Health's superseding Emergency Rule (Rule No. 65DER21-15 similarly titled) attached as **Exhibit G.** The current FDOH Emergency Rule requires DCPS to provide an opt-out to all parents from the Mask Mandate at the parent's sole discretion.

### DCPS's Inexcusable Failure to Mitigate Aerosols

117.    As the CDC has acknowledged as established fact, Covid-19 is *not* primarily spread through large respiratory droplets as initially believed, but rather is spread through sub-micron-sized fine aerosolized particles.

118.    DCPS had actual knowledge of this fact as early as September 2020.

119.    The utility of masks, or "face coverings" as DCPS euphemistically refers to them, was always premised on the false belief that Covid-19 was primarily spread through large respiratory water droplets that are captured in the mask's fibers.

120.    With consensus that Covid-19 is spread through fine sub-micron-sized aerosols masks have no effect. The very fine particles simply travel with airflow as it exits the sides, bottom, and top of a student's or teacher's mask. With every inhalation and exhalation, these minuscule particles travel around the mask and even through the mask unimpeded.

121.    Covid-19 aerosols can remain suspended in midair in indoor rooms for up to 60 days if the air remains still.

122.    Therefore, the beneficial effects of masks — if there are any beneficial effects at all — are much less significant than other available mitigations. Mask benefits are outweighed by the harms and risks of harms attendant with involuntary masking.

123.    Specialists in airborne pathogens recommend improving indoor air quality as the first step in a "hierarchy of controls" for mitigating an indoor aerosol.

124.    Even if filters and ultraviolet lamps cannot quickly be installed in air systems, there are other quick, easy, and inexpensive steps that can be *immediately* taken to remove aerosols and vastly reduce the risk of spreading a virus.

125.    For example, until other mitigations become available, you could simply keep doors and windows open and allow fresh air to circulate the indoor

air. Add some ordinary inexpensive fans and most aerosols can be removed from an indoor area in minutes. Moving and circulating air is inexpensive and does not harm anyone.

126.    In fact, the scientific consensus is that Covid-19 does not spread outdoors, because of the constant air flow and ultraviolet radiation (sunlight). Therefore, making the indoor environment as much like the outdoors is a primary objective if reducing transmission and case counts is the goal.

127.    Despite having actual notice that Covid-19 is an airborne pathogen and having actual notice that interior air quality is the *primary* way to mitigate an airborne pathogen, DCPS de-prioritized and has not pursued these easy, simple, and inexpensive ways of slowing the spread of Covid-19.

128.    DCPS has ignored the management of interior air quality as the easy fix, ignoring it altogether and failing to issue guidance to its schools as to how to maximize indoor air quality through air circulation and filtration systems.

129.    It is irrational and overly restrictive that DCPS ignored indoor air quality while pushing its Mask Mandate, which is fantastically more expensive, difficult to manage, and harmful than more effective available mitigations.

130.    The School Board is compelled to implement the least restrictive means necessary, and it has failed to do so.

131. In its Emergency Rule, DCPS does not (because it cannot) explain why it failed — and continues to fail — to implement the most simple, basic, and inexpensive steps for effectively mitigating an airborne pathogen.

132. DCPS's tunnel vision leading it to the Mask Mandate at the exclusion of *every other mitigation tool* is irrational *at best* and is tragically harmful and destructive at worst.

### Specific Harms Caused by the Mask Mandate

133. The Mask Mandate hurts the very students it is intended to protect.

134. There may be many students who are unaffected by the Mask Mandate and are well adjusted to wearing a mask for the entire school day. Admittedly, the Mask Mandate likely does some psychological and emotional good for certain students who fear Covid-19. These students should be allowed to continue wearing face masks for as long as they see fit.

135. But other students are **harmed by face masks** in a variety of specific ways.

136. Some students are harmed because the masks are uncomfortable and an ongoing distraction, and the Mask Mandate degrades their academic performance.

137.   Some students suffer from persistent headaches while wearing the masks at school - even kids who have never experienced such headaches in the past.

138.   Some students experience exacerbation of existing sensory issues or deficits, and the masks lead to disciplinary problems for them due to their good-natured preference to sacrifice their mask compliance in an effort to learn.

139.   Some students have developed dermatological conditions or eye infections arising from the wearing of masks.

140.   Some students have difficulty hearing teachers when teachers are masked, or they have difficulty seeing through their fogged glasses, and these students' academic performance suffers.

141.   Some students have difficulty learning ordinary language and social skills when they and their peers are masked, and their social development suffers as a result.

142.   Some students experience anxiety when wearing a mask, or at the thought of having to wear a mask for an extended period of time.

143.   Some students have difficulty breathing when wearing a mask, especially when engaged in physical activity, and many of these students do not have pre-existing respiratory disorders.

144. In May 2021, Dr. Michael Lauzardo, the University of Florida's Emerging Pathogens Institute's Covid-19 expert, testified under oath that there was no public health justification to compel a child to wear a mask if the child is experiencing *any* negative effects.

145. In pursuit of its own objectives at the expense of certain students, DCPS's Mask Mandate compels children to wear face masks despite these recognized, sub-clinical harms to a sizable portion of the county's students.

146. The Mask Mandate is irrational and overly restrictive in that it prioritizes one *potential* harm - Covid-19 - over the specific *actual* harms inflicted upon Plaintiffs' children by forced masking.

## The Exceptions to the Mask Mandate
## Are Insufficient and Violative of Fundamental Rights

147. The text of the Mask Mandate provides for exceptions for students who have medical, physical, psychological or other health conditions.

148. However, DCPS provides no published procedure for parents to obtain an exemption, instead throwing a medical certification form at these parents and expecting them to figure it out.

149.    DCPS has not trained its staff or teachers or administrators in how to determine the sufficiency of an exemption in the form of a completed Medical Certification.

150.    Instead, when Plaintiffs who believe their children qualify for an exemption based on clinical or sub-clinical conditions seek guidance from their "child's school", they receive inconsistent and haphazard responses from DCPS officials and employees with absolutely no qualifications or training to opine on something as sensitive as a child's medical, physical, psychological, and other health conditions.

151.    Parents who follow this up by suggesting that they must send their children to school without a mask despite the school's determination regarding the sufficiency of the Medical Certification, are threatened that their child will be turned away and denied access to the school, or the school will discipline the child.

152.    When parents have submitted completed Medical Certifications on behalf of their children, some are met with silence and indecision, receiving no formal response and being left to wonder if their child will be able to continue attending school without being harmed by the Mask Mandate. Other parents are notified out of the blue that the signed Medical Certification they submitted has

been deemed insufficient and that their children will be re-masked against their will.

153.   Other parents have been unequivocally told that their child does not qualify for an automatic exemption despite known medical, physical, psychological, and other health issues that DCPS previously accommodated, and no process to appeal the decision can be explained by DCPS or its teachers or administrators.

154.   In any case, the review process is undefined and the qualifications of those DCPS agents making sufficiency determinations are unknown. But, based on information and belief, someone is reviewing the medical certifications and applying some sort of nebulous criteria in determining the adequacy of the submitted exemptions.

155.   DCPS has never disseminated guidance or information to DCPS parents in a broadly distributed and uniform manner to educate them on the sufficiency review and appeals process, nor has DCPS informed DCPS parents who within the bureaucracy is making these determinations.

156.   In other words, whatever the process behind the DCPS curtain, the School Board and the Superintendent have illegally imposed unauthorized

amendments to the Mask Mandate that were never noticed, set for public hearing, or even voted upon.

157.   The illegally imposed unauthorized amendments to the Mask Mandate occurred outside the Sunshine Laws, violating civil and criminal statutes.

158.   Egregiously, DCPS has not provided any procedure for withholding a signed Medical Certification for a particular student and bearing the personal information of a licensed health care provider from public records and keeping it confidential, or otherwise provided any guarantees to health care professionals, parents and students that their identities and sensitive personal information will be kept confidential and undisclosed.

159.   Some parents have discovered that, in this age of cancel culture, their health care providers are unsurprisingly reluctant to wade into fierce social and political controversies like the Mask Mandate by putting their names on medical certifications that will (potentially) immediately be published after being put into public records. Some are just as fearful that with no controls in place to guard against the unauthorized sharing of this sensitive information within DCPS, their names will be leaked, their professional reputations attacked, and their children will suffer retaliation.

160.   Furthermore, many kinds of harms - poor academic performance, delayed language development, persistent, unexplained headaches, depressed social development, and developing anxiety disorders - are not harms which family practice physicians would normally "certify" or hold any qualifications to certify.

161.   Plaintiffs and other similarly situated families are left to seek out the appropriate specialists to address and properly "certify" these harms, incurring a significant financial burden, emotional toll, and additional stress in getting their child exempted, only so they can immediately turn around and share this most private information with their "child's school", and within it, who knows.

162.   For all intents and purposes, there is no consistently effective exception to the Mask Mandate, and DCPS has not articulated one. Rather, DCPS has made things more difficult for parents by repeatedly altering its cloaked definition of who qualifies as a licensed health care provider, and thereby deeming previously submitted medical certifications invalid.

**The Florida Constitution's Rights to Due Process and Privacy**

163.   The Florida Constitution guarantees that citizens — including students — shall not "be deprived of life, liberty or property without due process

of law." Citizens also have the constitutional "right to be let alone and free from governmental intrusion into the person's private life[.]"

164. Students and "[m]inors are natural persons in the eyes of the law and "[c]onstitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, . . . possess constitutional rights." *In re T.W.*, 1989 Fla. LEXIS 1226 *21 (Fla. 1989) (internal citations omitted)

165. Florida's Constitution also guarantees that similarly situated citizens be treated the same, and not in any irrational, arbitrary or capricious manner.

166. On June 19, 2020, Florida Governor Ron DeSantis rightly stated that wearing masks must be voluntary because "the Constitution is not suspended just because there is a virus."

167. The Florida Constitution's privacy right is very broad. It "embraces more privacy interests and extends more protection to the individual in those interests, than does the federal Constitution." *In re T.W.*, 551 So.2d 1186, 1193 (Fla. 1989).

168. The Florida Constitution also guarantees that "No person shall be deprived of life, liberty or property without due process of law." Article I, § 9, Fla. Const.

169. In order to invade a citizen's fundamental right of privacy, DCPS must meet a "strict scrutiny" standard. *N. Fla. Women's Health & Counseling Servs., Inc. v. State*, 866 So.2d 612, 635 (Fla.2003) ("Florida courts consistently have applied the 'strict' scrutiny standard whenever the Right of Privacy Clause was implicated, regardless of the nature of the activity"). "As defined by the supreme court, article I, section 23's guarantee of bodily and personal inviolability—which we are asked to follow—must include the inviolability of something so intimate as one's own face. A person then reasonably can expect to be free from governmental coercion regarding what he puts on it." *Id.*

170. To withstand strict scrutiny, a law must be necessary to promote a compelling governmental interest and must be *narrowly tailored* to advance that interest. *J.P.*, 907 So. 2d at 1110.

171. Strict scrutiny requires DCPS to show that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the *least restrictive* means. *See Winfield v. Div. of Pari–Mutuel Wagering*, 477 So.2d 544 (Fla. 1985) (explaining that where a law intrudes on the fundamental right to privacy guaranteed in Florida's Constitution, the State must demonstrate that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means).

172.   Where strict scrutiny is required, the offending legislation is **presumed to be unconstitutional** and **DCPS has the burden** of proving that the law passes muster. *N. Fla. Women's Health & Counseling Servs., Inc.,* 866 So.2d at 625 n.16 ("The legislation is presumptively unconstitutional … the State must prove that the legislation furthers a compelling State interest through the least intrusive means").

## The Mask Mandate Does Not Satisfy Strict Scrutiny

173.   The School Board did not articulate a compelling interest in its Emergency Rule.

174.   Based upon reasonable inferences, DCPS's compelling interest is to "achieve a uniform, efficient, and safe school system" and reduce the number of Covid-19 cases reported in the DCPS system.

175.   The Mask Mandate fails in its intended purpose, resulting in non-uniform application of a vague and ill-defined Rule, exemptions to some with clinical and sub-clinical harms but not others, making the DCPS system more inefficient with parents' and teachers' and administrators' attention directed towards enforcement of the Mask Mandate and challenges over hopelessly invasive medical certifications. Further, the Mask Mandate provably does nothing for safety and has no effect on Covid-19 case counts as borne out in the Florida

data comparing masked and unmasked populations over the last two school years, all while harming certain children in the process.

176.   To recap, the Mask Mandate is non-uniform, inefficient, and unsafe.

177.   The DCPS Mask Mandate is not scientifically supported, and thus cannot serve a compelling governmental interest purportedly to reduce the number of Covid-19 cases within the DCPS system. Nor is the Mask Mandate the least restrictive means.

178.   With the absence of masking in the broader community, compelling kids to wear masks seven or eight hours per day does not affect the exposure of the student and teacher population, who will be exposed outside of school, and cases have proceeded and will proceed as if no Mask Mandate was ever implemented by DCPS. The precipitous drop over the last two months statewide, and in the vast majority of Florida county school districts that did not adopt forced masking policies, bears this out.

179.   On May 4, 2020, the State of Florida's Covid-19 Task Force published a Report[4] called "Plan for Florida's Recovery"(the "Plan") that describes various

---

[4] *Available online* at https://www.flgov.com/wp-content/uploads/covid19/Taskforce%20Report.pdf.

scenarios under which citizens should "consider" using masks. Nothing in the Plan suggests that masks should be mandatory.

180.   The Plan identifies seven "Guiding Principles."

181.   The Plan's fifth Guiding Principle is "Protecting Civil Rights:"

Measures taken by the government must not impair the fundamental rights of Floridians, and when **restrictive measures** are imposed, they should be **the least restrictive measures feasible** to accomplish a **specific <u>medically necessary</u> objective**.

Florida's Re-Opening Task Force Report, p. 7 (emphasis added).

182.   DCPS's Mask Mandate impairs the fundamental rights of the Plaintiffs.

183.   The mandatory masking of all DCPS students does not accomplish any specific medically necessary objective and ignores every other specific medically necessary consideration.

184.   DCPS's Mask Mandate does not use the least restrictive measures feasible to accomplish any specific medically necessary objective.

185.   The Mask Mandate fails to satisfy strict scrutiny and must be declared unconstitutional.

### Summary / Conclusion

186.   The Mask Mandate imposes a restrictive measure.

187.   The Mask Mandate is not medically necessary to a specific objective.

188.    The Mask Mandate is not the least restrictive feasible measure.

189.    There is a significant likelihood of irreparable harm to the Plaintiffs due to the deprivation of fundamental rights.

190.    Plaintiffs lack an adequate remedy at law.

191.    The ongoing harms to Plaintiffs and their children, and the deprivation of the Plaintiffs' Constitutional Rights, cannot be remedied by money or any judgment other than an injunction.

192.    The Plaintiffs and their children are not being let alone and free from government interference.

193.    DCPS's Mask Mandate is facially and presumptively invalid since it implicates and infringes the Plaintiffs' fundamental Constitutional Rights.

194.    A permanent injunction of DCPS's Mask Mandate will serve the public interest. All school children, parents, teachers, and staff are unduly burdened by the DCPS's irrational, arbitrary, and capricious over-reach in a fashion never seen before in the history of Florida. Not only is it irrational, but the mask requirement violates the Plaintiffs' fundamental Florida Constitutional Rights. The Right of Privacy is destroyed by forced masking, and the medical certification "process". The public has a strong interest in protecting their rights,

keeping children from harm, and allowing students and their parents to make informed decisions and exercise liberty and medical autonomy.

195.   Plaintiffs have been injured and will continue to be injured as a result of the Mask Mandate.

196.   The Plaintiffs have been forced to incur attorney's fees and expend costs in order to prosecute this action.

## COUNT I
### Declaratory Judgment — Right to Privacy

197.   Paragraphs 1 - 196 are incorporated by reference.

198.   Article I, § 23 of the Florida Constitution provides that "[e]very natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein."

199.   Plaintiff students and their parents are natural persons residing in Florida.

200.   A rule requiring a child to covering his or her face is intrusive — and is a clear invasion of the child's bodily autonomy, i.e., privacy.

201.   A rule requiring a child to involuntarily use face coverings or masks that implicate personal medical decisions is a clear invasion of the child's bodily autonomy, i.e., privacy.

202.   A rule requiring a child to disclose the existence of medical conditions unrelated to the specific disease that the governmental agency is trying to mitigate is a clear and absolute violation of the child's privacy.

203.   A rule requiring a parent to disclose the existence of medical, physical, psychological, or other health conditions affecting their child and unrelated to the specific disease to be mitigated is a clear and absolute violation of the family's privacy.

204.   A rule requiring parents and children to disclose the existence of medical, physical, psychological, or other health conditions of which the governmental agency would otherwise remain unaware were it not for the compulsory disclosure is an egregious violation of both the parent's and the child's right to privacy.

205.   The Mask Mandate also requires healthy, previously infected and/or vaccinated students to comply notwithstanding such compliance serves no purpose and only causes them harm in other ways - prioritizing prevention of a low probability potential harm (Covid-19) over actual harm and disregarding the independent judgment of these Florida citizens and children who desire to remain mask free.

206.    Even if DCPS is able to articulate a compelling governmental interest, which they have not yet done, the Mask Mandate is not the least restrictive means.

207.    The Defendant implicitly admits that the Mask Mandate can do some children harm by providing for exemptions based upon certain medical, physical, psychological, or other health conditions, and in doing so has not adopted the least restrictive means.

208.    The least restrictive means of achieving the alleged governmental interest would require that exemptions be provided to all of those students with similar medical, physical, psychological, or other health conditions subjecting them to similar risk of harm, regardless of their ability to obtain the signature of a licensed health care provider, and would certainly exempt those students for which the Defendant and its employees and agents have prior knowledge of contraindicated medical, physical, psychological, or other health conditions.

209.    The least restrictive means of achieving the alleged governmental interest would require the Defendant to implement all measures more effective in controlling Covid transmission in all schools prior to forcing masking on all students. These measures would include improvements to air ventilation and purification and all other measures recommended by industrial hygienists prior to subjecting students to clinical and sub-clinical harms.

210.    DCPS's unconstitutional Mask Mandate is a radical infringement on the well-settled constitutional and human right to privacy shared by all Floridians, which includes our rights to self-determination, bodily autonomy, medical freedom, and liberty. *J.P.*, 907 So. 2d at 1115. "As defined by the supreme court, article I, section 23's guarantee of bodily and personal inviolability — which we are asked to follow — must include the inviolability of something so intimate as one's own face. A person then reasonably can expect to be free from governmental coercion regarding what he puts on it." *Green v. Alachua County*, 2021 Fla. App. LEXIS 8634 *13 (Fla. App. Ct. 2021).

211.    There is a present bona fide dispute regarding the Plaintiffs' rights and obligations under the Mask Mandate.

WHEREFORE Plaintiffs request the Court to declare that the Mask Mandate be found to be an unconstitutional violation of Plaintiffs' and their children's Right to Privacy, and therefore void, and award Plaintiffs their attorney's fees and costs.

## COUNT II
### Declaratory Judgment – Violation of the Parents Bill of Rights – Fla. Stat. § 1014.01 et seq.

212.    Paragraphs 1 - 196 are incorporated by reference.

213.    The Mask Mandate is a violation of the Parents' Bill of Rights, pursuant to Fla. Stat. § 1014.01 et seq.

214. "[I]t is a fundamental right of parents to direct the upbringing, education, and care of their minor children." Fla. Stat. § 1014.02.

215. The Mask Mandate violates the statutory right of the Plaintiffs to direct the upbringing, education, and care of their children.

216. In direct violation of the Parents' Bill of Rights, DCPS's Mask Mandate usurps the rights of these Plaintiffs and compels the parents to allow for education and care of their children in violation of the Plaintiffs' personal beliefs.

217. DCPS is required to, and cannot, demonstrate that it is infringing on the fundamental rights of the Plaintiffs using reasonable and necessary action to achieve a compelling state interest, and that DCPS's Mask Mandate is narrowly tailored and is not otherwise served by a less restrictive means.

218. DCPS is a political subdivision and governmental entity of the State and cannot enforce the Mask Mandate absent this requisite showing. The Emergency Rule and the "emergency" meeting, nor any of the follow-on guidance from DCPS, have failed to discuss or demonstrate how the Mask Mandate is narrowly tailored or why DCPS's ends are not served by a less restrictive means.

219. Plaintiffs will show that there are feasible, less restrictive means available to DCPS that could achieve DCPS's desired outcomes (assuming that

outcome is something besides forcing every kid in DCPS schools to wear a mask for political sport).

220.   "All parental rights are reserved to the parent of a minor of this state without obstruction or interference from the state, any of its political subdivisions, any other governmental entity, or any other state institution" [.] Fla. Stat. § 1014.04.

221.   Further, the "rights of a parent of a minor child in this state" expressly include:

a)      The right to direct the education and care of his or her minor child.

b)      The right to direct the upbringing and the moral or religious training of his or her minor child.

c)      [omitted intentionally]

d)      The right . . . to access and review all school records relating to his or her minor child.

e)      The right to make health care decisions for his or her minor child, unless otherwise prohibited by law.

f)      The right to access and review all medical records of his or her minor child . . . .

222.   DCPS's Mask Mandates violates the provisions above in reinforcing moral training not desired by the parent Plaintiffs, failing to provide an adequate

process and assurances that the Plaintiffs will receive the medical records created by DCPS in processing the Medical Certifications submitted, and deciding *for the* Plaintiff parents which health, medical and psychological conditions the Plaintiffs shall prioritize.

223.    The rights of parents to make health care decisions for their minor children, as enshrined in (e) above, is not otherwise prohibited by law, and in fact has been fortified by FDOH's Emergency Rule 64DER21-15 requiring that parents have sole discretion to direct masking of their children.

224.    Further, "a parent of a minor child in this state has inalienable rights that are more comprehensive than those listed in this section, unless such rights have been legally waived or terminated." Fla. Stat. § 1014.04(4).

225.    The Plaintiffs have not waived their fundamental, inalienable legal rights.

226.    DCPS lacks the power or authority to terminate the Plaintiffs fundamental, inalienable legal rights.

227.    DCPS, and the School Board, must develop and implement policies allowing for a parent to object to instructional materials and other materials used in the classroom, and parents are expressly given the ability to object based upon

moral and religious beliefs or simply upon the belief that such materials are harmful. *See,* Fla. Stat. § 1014.05(1)(c).

228.  The Mask Mandate compels the usage of masks, which are indisputably materials used in the classroom.

229.  Plaintiffs are allowed to object to these materials based upon their moral and religious beliefs or based upon their belief that the materials used are harmful, and DCPS has not provided a policy to allow the Plaintiff parents to object on moral, religious, or harm grounds – instead providing only a medical opt-out policy through the Medical Certification.

230.  DCPS must provide procedures for a parent to learn about parental rights and responsibilities under general law, including: (6) the right of a parent to inspect district instructional materials; and (11) the right of a parent to opt out of any district-level data collection relating to his or her minor child not required by law. *See*, Fla. Stat. 1014.05(1)(f).

231.  The Plaintiffs and other similarly-situated parents have requested and been denied the procedures and instructional materials provided by DCPS to its staff and employees regarding the Mask Mandate.

232.  Similarly, DCPS has not provided and has refused to provide specificity regarding the data collection underway through collection of the

Medical Certification forms and how a parent can opt out of the requirement due to concerns over unauthorized data collection.

233.   The Plaintiffs and other similarly-situated parents have requested the information required under Fla. Stat. § 1014.05 and the Superintendent has vailed to provide such information within the requisite 10-day period.

WHEREFORE Plaintiffs request the Court to declare that the Mask Mandate be found to be an illegal violation of the Parents' Bill of Rights, and as such an unconstitutional violation of Plaintiffs' fundamental, inalienable rights, and therefore void, to temporarily or permanently enjoin DCPS from implementing the Mask Mandate, and award Plaintiffs their attorney's fees and costs.

## COUNT III
## Declaratory Judgment – Equal Protection

234.   Paragraphs 1 – 196 are incorporated by reference.

235.   The Florida Constitution's Declaration of Rights, section 1, which reads "all men are equal before the law . . . ," is the source of Florida's equal protection inhibition. *Ga. So. & Fla Ry. v. Seven-up Bottling Co.*, 175 So.2d 39, 40 (Fla. 1965), *quoting from Davis v. Fla. Power Co.*, 64 Fla. 246, 60 So. 759 (1913).

236.   There must, under our Florida Charter, be "some just relation to, or reasonable basis in, essential difference of conditions and circumstances with

reference to the subject regulated, and [the statute] should not merely be arbitrary … ." *Eslin v. Collins*, 108 So.2d 889, 891.

237.   In addition, a class should include all those similarly situated, unless there are practical differences sufficient to warrant a special classification. *See Ga. So., supra* note 1.

238.   Plaintiffs are free to enter grocery stores, attend birthday parties, and enter public, governmental buildings throughout Duval County without being required to wear face coverings or face masks under threats of disciplinary action or criminal prosecution.

239.   The Mask Mandate unconstitutionally makes children in schools second-class citizens before the law by arbitrarily imposing the masking requirement in school without any essential difference in conditions in school versus outside of school.

240.   The Mask Mandate provides an exemption process for those who are able to obtain a medical certification from a licensed health care provider, but does not allow for exemptions and opting-out for those unable to secure a medical certification from a licensed health care provider despite a legitimate and actual medical, physical, psychological, or other health condition making masks contraindicated.

241.   The Mask Mandate discriminates against those without access to a licensed health care provider and those with sub-clinical harms from masks that do not qualify as sufficient medical, physical, psychological or other health conditions under the Board's interpretation.

242.   The Mask Mandate does not exempt those who have documented medical, physical, psychological or other health conditions known to the student's school through prior documentation, including but not limited to the accommodations required through an IEP or 504 Plan, but are otherwise unable to obtain a signed Medical Certification.

243.   Furthermore, the Mask Mandate, as applied, arbitrarily exempts, or co-opts children based on a non-uniform sufficiency review process once medical certifications are submitted, the Defendant having notified certain parents and students that their medical certifications were deemed insufficient despite full compliance with the Defendant's Emergency Rule, providing disparate treatment within a class.

244.   There is no rational basis for not exempting those who can demonstrate sub-clinical harms or those with documented conditions of which the Defendant has prior knowledge.

245.    There is no rational basis for not exempting those who provide medical certifications from licensed health care providers in all instances, since the Emergency Rule was implemented and Plaintiffs and other similarly-situated parents and students reasonably relied upon the express language of the Mask Mandate.

246.    Defendant's Mask Mandate, encapsulating its deficiencies in treating equally-situated students as equal before the law, bears no rational relationship to a legitimate government interest and violates the Florida Constitution's Equal Protection Claus. *N. Broward Hosp. Dist. v. Kalitan*, 219 So. 3d 49, 55 (2017).

247.    The Mask Mandate violates the Equal Protection clause of the Florida Constitution and is void.

248.    There is a present bona fide dispute regarding citizen's rights and duties under the Mask Mandate.

WHEREFORE, Plaintiff requests that the Court declare that the Defendant's Emergency Rule compelling students to wear face coverings is an unconstitutional violation of the Equal Protection Clause under the Florida Constitution, and therefore void, and award Plaintiffs their attorney's fees and costs

## COUNT IV
## Declaratory Judgment – Violation of Due Process

249.   Paragraphs 1 - 196 are incorporated by reference.

250.   Article I, § 2 of the Florida Constitution guarantees that the state may not deprive any person of life, liberty, or property without due process of law.

251.   The Mask Mandate is unconstitutional. It violates the Due Process Clause of Article 1 §9 of the Florida Constitution because it deprives Plaintiffs and their children of life, liberty or property without due process of law.

252.   DCPS's failure to provide a clear, transparent, and consistent process for submission of exemptions through medical certifications, and the arbitrary denial of submitted medical certifications, is a deprivation of life, liberty, or property without due process of law.

253.   DCPS has further failed or refused to allow for an adjudicative process to challenge denials of medical certifications, with such denials being made by an unidentified DCPS official or officials.

254.   Defendant's unlawful Mask Mandate and its associated procedures and processes are an arbitrary and unreasonable exercise of governmental power. Noel v. State, 191 So. 3d 370, 373 (Fla. 2016).

255.   DCPS has further failed or refused to allow for an adjudicative process to challenge denials of medical certifications, with such denials being made by an unidentified DCPS official or officials.

256.   Defendant's unlawful Mask Mandate and its associated procedures and processes are an arbitrary and unreasonable exercise of governmental power. *Noel v. State*, 191 So. 3d 370, 373 (Fla. 2016).

257. The Superintendent and DCPS purport or threaten to impose disciplinary measures upon Plaintiffs' children should Plaintiffs follow the FDOH's Emergency Rule, which preserves the ability for Plaintiffs and similarly-situated parents to opt their children out of mask wearing at their sole discretion.

258.   The disconnect between the FDOH's Emergency Rule, the Parents' Bill of Rights, and DCPS's Mask Mandate leaves the Plaintiffs as Florida citizens unclear as to whether they may nonetheless be wrongfully prosecuted or disciplined, or indeed, exactly what conduct is proscribed, and DCPS's enforcement in this context is an unconstitutional deprivation of Plaintiffs' life, liberty, or property.

259.    There is a present bona fide dispute regarding citizen's duties under the Emergency Rule.

WHEREFORE Plaintiff requests that the Court enjoin the DCPS's Emergency Rule, declare that the Mask Mandate implemented via the Emergency Rule be found to be an unconstitutional violation of Article I, §2 of the Florida Constitution,  and therefore void, and award Plaintiff his damages and attorney's fees and costs.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

## REQUEST FOR EXPEDITED CONSIDERATION

Plaintiffs respectfully request that this Court expedite consideration of this action pursuant to §86.111, Fla. Stat., which authorizes the Court to "order a speedy hearing of an action for a declaratory judgment" and "advance it on the calendar."

**DATED** this 26th day of October, 2021.

ANDERSONGLENN LLP

*/s/ Nicholas P. Whitney*
**Gregory A. Anderson, Esquire**
Florida Bar Number: 398853
gaanderson@asglaw.com
**Nicholas P. Whitney, Esquire**
Florida Bar Number: 119450

nwhitney@asglaw.com
10751 Deerwood Park Boulevard, #105
Jacksonville, Florida 32256
Telephone: (904) 273-4734
Facsimile:  (904) 273-4712
*Attorneys for Plaintiff*

*/s/ Cord Byrd* _
**Cord Byrd, Esquire**
Florida Bar No. 134406
cord@cordbyrdlaw.com
esther@cordbyrdlaw.com
1015 Atlantic Boulevard, #281
Atlantic Beach, FL 32233
Telephone:  (904) 246-2404
*Co-Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2021, I electronically served this Notice of Related Action to all counsel and parties of record which appear below:

**Counsel for Defendant**
Laura J. Boeckman, Esquire
Craig D. Feiser, Esquire
Kelly H. Papa, Esquire
James E. Millard, Esquire
Office of General Counsel
117 West Duval Street, Suite 480
Jacksonville, FL  32202
(904) 255-5069 - phone
(904) 255-5120 - Facsimile
lboeckman@coj.net; sstevison@coj.net
cfeiser@coj.net; bosburn@coj.net
kpapa@coj.net; jmurad@coj.net
jemillard@coj.net; kgay@coj.net

**ANDERSONGLENN LLP**

*/s/ Nicholas P. Whitney*
**Gregory A. Anderson, Esquire**
**Trial Counsel**
Florida Bar Number: 398853
gaanderson@asglaw.com
**Nicholas P. Whitney, Esquire**
Florida Bar Number: 119450
nwhitney@asglaw.com
10751 Deerwood Park Blvd., #105
Jacksonville, Florida 32256
Telephone: (904) 273-4734
Facsimile:  (904) 273-4712
*Attorneys for Plaintiffs*

*/s/ Cord Byrd*
**Cord Byrd, Esquire**
Florida Bar No. 134406
cord@cordbyrdlaw.com
esther@cordbyrdlaw.com
1015 Atlantic Boulevard, #281
 Atlantic Beach, FL 32233
Telephone:  (904) 246-2404
*Co-Counsel for Plaintiffs*