## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**KYLE AND TARAN HELM, et al.,**

     **Plaintiffs,**

**v.**                                                 **Case No.:  3:21-cv-900-TJC-LLL**

**DUVAL COUNTY SCHOOL BOARD,**

     **Defendant.**

_____/

## MOTION FOR JUDGMENT ON THE PLEADINGS AND SUPPORTING MEMORANDUM OF LAW

Defendant, Duval County School Board ("DCSB" or "Board"), pursuant to Federal Rule of Civil Procedure 12(c), files this Motion for Judgment on the Pleadings and Supporting Memorandum of Law.  None of Plaintiffs' claims are viable.  Therefore, judgment should be entered in favor of the DCSB.

### I.    Background

A brief discussion of both the procedural history and the factual allegations in this case are in order.

#### A. Procedural History

Plaintiffs are currently operating under their Second Amended Complaint. (Doc. 44).  Plaintiffs initially filed this action and a motion for preliminary injunction in state court on September 2, 2021, and Defendant removed it to

federal court on September 8, 2021 (Doc. 1).  The original complaint contained ten purported causes of action that attempted to plead both state and federal law claims.  Plaintiffs sought injunctive relief and attorney's fees, and asked for an injunction against Defendant from implementing a mask policy in response to the COVID-19 pandemic; the mask policy required — with some exceptions — all students and staff to wear face masks while indoors on school property and was scheduled to go into effect on September 7, 2021.  This Court scheduled a preliminary injunction hearing for October 15, 2021 (Doc. 11).  At a status conference on October 14, 2021, the Court granted Plaintiffs' *ore tenus* motion to amend their complaint and cancelled the October 15, 2021, hearing.

When Plaintiffs filed their Amended Complaint, they brought what appeared to be only state law claims (Doc. 31) and filed a Motion to Remand the matter back to state court.  (Doc. 32).  Prior to a ruling on the Motion to Remand, Plaintiffs filed a Motion to Amend the Operative Complaint (Doc. 40) and a Motion for Class Action Certification (Doc. 39) on March 23, 2022.  Defendant did not object to the Motion to Amend; the Court granted the Motion on April 12, 2022.  (Doc. 43).

On April 18, 2022, Plaintiffs filed their Second Amended Complaint for Class Action Relief and Damages; it contained four counts — all brought pursuant to 42 U.S.C. § 1983 for violations of state law and the Florida constitution.  (Doc. 44).  On October 3, 2022, this Court denied Plaintiffs'

Motion for Class Action Certification.  (Doc. 55).  In the Second Amended Complaint (the "Complaint"), Plaintiffs seek redress for damages in excess of $30,000.[1]

After filing this federal court action, Plaintiffs also filed a petition for a writ of mandamus with the Florida First District Court of Appeal seeking to prohibit the Board from enforcing its mask policy.  The First DCA sent the petition to the Fourth Judicial Circuit, and Judge Foster granted the petition. However, by the time Judge Foster entered his order, the DCSB had already discontinued its mandatory mask policy.[2]

### B. Factual Allegations

At its core, Plaintiffs' lawsuit is an effort to obtain attorney's fees and monetary damages for Defendant's decision to enact an emergency rule which required most students in Duval County schools to wear a mask or face covering from September 7, 2021, to November 1, 2021.  *See generally* Doc. 44, ¶¶ 25-33.  Students who had a medical opt-out form signed by a licensed health care provider were exempt from wearing a mask while at school.    *Id*. Defendant created this emergency rule in response to the significant increase

---

[1] Because Plaintiffs' Motion for Class Certification has been denied, Defendant addresses the allegations in the Second Amended Complaint as to Plaintiffs individually and not as a class.

[2] https://www.teamduval.org/2021/10/29/face-mask-protocol-to-change-due-to-decrease-in-covid-19-transmission-rates/

in COVID-19 cases in Duval County during the late summer and early fall of 2021. *Id*.

The Complaint seems to identify two broad classes of grievances against the Board. The first is the DCSB's decision to enact a mask policy pursuant to its emergency powers, and the second is how the DCSB processed medical opt-outs from the mask policy. There are multiple allegations in the Complaint about alleged harms to the Plaintiffs that occurred *before* the mask policy went into effect on September 7, 2021. See Doc. 44, ¶¶ 6-14. These allegations are irrelevant.

The overarching theme of the Complaint is that masks are not effective at stopping the spread of COVID-19, and therefore, school children should not be compelled to wear them. Plaintiffs argue both that their children were harmed when they were compelled to wear a mask (if they indeed were and did not have a recognized opt-out) and harmed when they did not wear a mask but were "stigmatized" by their school community. Doc. 44 ¶¶ 34-38. The Complaint contains a plethora of buzzwords and legal conclusions, such as the DCSB acted "irrationally, arbitrarily, and capriciously" and makes vague references to "strict scrutiny," "fundamental rights," and "rational basis." Doc 44, ¶¶ 39, 69, 85, 89, 96, 98, 102, 104, 109, 113, 114, 205. However, the Complaint does not articulate what fundamental right is implicated in this

matter (beyond a general implication of "life, liberty, and property") or what, if any, of their claims are subject to a rational basis or strict scrutiny analysis.

While Plaintiffs purport to bring claims under theories of due process and equal protection, the majority of their allegations are irrelevant to these two legal theories.  Instead, the Complaint is full of hyperbole and sarcasm but fails to provide any legal or factual support for their legal claims or their alleged damages.  Plaintiffs allege they suffered a myriad of damages ranging from economic damages from having to find a licensed health care provider who was willing to sign the medical opt-out form to emotional damages from having to wear a mask.  Paragraphs five through fourteen of the Complaint chronicle the various alleged damages suffered by the Plaintiffs regardless of whether they were actually attending a Duval County Public School, and whether they were actually wearing a mask while at school.  As demonstrated below, all four of Plaintiffs' claims fail as a matter of federal law.

## MEMORANDUM OF LAW

## II.    Standard for a Motion for Judgment on the Pleadings.

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  The pleadings are closed when a complaint and answer have been filed.  Fed.R.Civ.Pro. 7(a); *Lillian B. ex rel. Brown v. Gwinnett Cnty. Sch. Dist.*, 631 F. App'x 851, 853 (11th Cir. 2015).  "Judgment

on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Interline Brands, Inc. v. Chartis Specialty Ins.Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (quotation marks and citation omitted).

In ruling on a Rule 12(c) motion, "[a]ll facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *U.S. v. Lopez,* 2021 WL 3552347, at *4, (S.D. Fla. August 5, 2021), *citing Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005) (citation omitted). However, the Court is not required to accept conclusory allegations as true. *See Purvis v. City of Orlando*, 273 F. Supp. 2d 1321, 1324 (M.D. Fla. 2003) ("A court may not . . . accept conclusory allegations and unwarranted factual deductions as true. . . Nor is the Court bound to accept as true a legal conclusion couched as a factual allegation.").

### III.   Plaintiffs have failed to plead a cognizable claim under 42 U.S.C. § 1983.

While Plaintiffs claim to bring all four of their claims under 42 U.S.C. § 1983, they allege no violations of any federal constitutional right.  To sustain a viable claim under Section 1983, Plaintiffs must allege they were deprived of a right secured by the Constitution or laws of the United States. *American Mfr. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  "To succeed, a

6

section 1983 plaintiff must show that the laws or constitution of the *United States* were violated by state action." *Conlogue v. Shinbaum*, 949 F.2d 378, 381 n. 5 (11th Cir. 1991).   A plaintiff cannot even recover under section 1983 for a violation of a federal *statute*; section 1983 only provides redress for a violation of a federal *right*.  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Leake v. Drinkard*, 14 F.4th 1242, 1247 (11th Cir. 2021); *Burban v. City of Neptune Beach, Fla.*, 920 F.3d 1274, 1278 (M.D. Fla. 2019).

Here, Plaintiffs only allege violations of a Florida statute and the Florida Constitution and do not allege violations of a federal right.  Their passing references to the United States Constitution are insufficient to sustain viable claims under Section 1983, and therefore, judgment should be entered in favor of Defendant.  Each count is discussed below.

### A. Right to Privacy

Count I alleges a violation of Plaintiffs' right to privacy under the Florida Constitution.  (See Doc. 44 ¶¶ 210, 212, 213, and 222).  Claims brought under the Florida Constitution are not cognizable under Section 1983, which protects only federal rights.  *Smith v. Avino*, 866 F.Supp. 1399, 1401 n. 4 (S.D. Fla. 1994).  Therefore, Count I fails as a matter of law.

Even if Plaintiffs were able to maintain a cause of action under Section 1983 for a state constitutional claim, they would still be unable to sustain such a claim in federal court.  "The laws and regulations of Florida do not inform a

judicial determination as to Plaintiffs' rights under the U.S. Constitution." *Lloyd v. School Board of Palm Beach County,* 570 F. Supp.3d 1165, 1179 (S.D. Fla. 2021). Plaintiffs rely solely in Count I on Florida law, which "has no bearing on Plaintiffs' rights under the U.S. Constitution." *Id*. To the extent Plaintiffs are attempting to bring a state law cause of action under the Florida Constitution, there is no cognizable claim for money damages under the State's Constitution. It has long been held that Florida constitutional claims do not support claims for damages absent a separate enabling statute. *See Holcy v. Flagler Cnty. Sheriff,* 2007 WL 2669219, *6 (M.D. Fla. 2007), *citing Garcia v. Reyes,* 697 So. 2d 549 (Fla. Ct. App. 1997); *Pinto v. Collier City*, 2020 WL 2219185, at *7 (M.D. Fla. 2020) (finding it is well settled that a claim seeking monetary damages cannot be maintained for alleged violations of the Florida Constitution); *Gundy v. City of Jacksonville*, 3:19-cv-795-BJD-MCR, Doc. 36, p. 19-20 (M.D. Fla.. November 4, 2020); *see also Youngblood v. Fla. Dep't of Health,* 224 Fed. Appx. 909, 913 (11th Cir.2007). Therefore, judgment should be entered in favor of Defendant on Count I.

### B. Parents Bill of Rights

Count II alleges a violation of Florida's Parents Bill of Rights, Florida Statutes, section 1014.01, *et seq*. (See Doc. 44 ¶¶ 226, 227, 228, 233, 237, 240, 243, 246). Again, Plaintiffs do not seek relief for a violation of any *federal* right. "Section 1983 protects plaintiffs from constitutional violations, not violations

of state statutes…" *Mercado v. City of Orlando*, 323 F.Supp.2d 1266, 1275 (M.D. Fla. 2004), *citing Davis v. Scherer*, 468 U.S. 183, 194 (1984); *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Leake v. Drinkard*, 14 F.4th 1242, 1247 (11th Cir. 2021); *Burban v. City of Neptune Beach, Fla.*, 920 F.3d 1274, 1278 (M.D. Fla. 2019).

To the extent Plaintiffs are attempting to bring a state law claim under section 1014.04, their claim still fails because there is no private right of action under the Parents Bill of Rights. "[A] statutory violation does not give rise to a private cause of action absent a *clear* legislative intent to do so." *Wolicky-Gables v. Doctors Same Day Surgery Ctr., Ltd.*, 216 So. 3d 665, 673 (Fla. Ct. App. 2017) (emphasis added; citation omitted). "When the legislature creates a regulatory statute that does not expressly create a private right of action against the private individuals who are regulated by the statute, the courts have been cautious about concluding that the statute creates a private right of action against them." *Dep't of Children & Families v. Feliciano*, 259 So. 3d 957, 969 (Fla. Ct. App. 2018) (internal quotes and citations omitted).

Moreover, in Florida "courts must presume that the Legislature passes statutes with the knowledge of prior existing statutes…." *Knowles v. Beverly Enterprises-Florida, Inc.*, 898 So. 2d 1, 9 (Fla. 2004) (citation omitted). The Legislature knows how to create a private cause of action for the violations of

bills of rights.[3]  The Legislature did not do so in Section 1014 or its surrounding sections.  Therefore, Count II also fails as a matter of law.

### C. Equal Protection

Count III alleges Defendant violated the Equal Protection Clause of the Florida Constitution, Article 1, Section 2.[4]  (See Doc. 44, ¶¶ 249 and 261).  Again, this is a purely state law claim that must fail under Section 1983.  To the extent Plaintiffs are attempting to bring a federal Equal Protection claim, their claim still fails.  Count III is replete with references to the Florida Constitution and seems clear it was Plaintiffs' intent to bring their Section 1983 claim solely under the state constitution.  However, there is a passing reference in the request for relief that the Court declare "Defendant's Emergency Rule as an unconstitutional violation of the Equal Protection Clause under the Florida and U.S. Constitutions…"  Plaintiffs' inartful pleading makes it difficult to discern whether the reference to the federal

---

[3] *See, e.g.*, Fla. Stat. § 393.13(5) (creating a private cause of action for violations of The Bill of Rights of Persons with Developmental Disabilities); Fla. Stat. § 112.83 (creating a private cause of action to enjoin violations of the Firefighters' Bill of Rights); Fla. Stat. § 1004.097(4) (creating a private right of action against a "public institution of higher education" that violates free speech rights) ); Section 790.33(3)(f), which provides that an aggrieved person adversely affected by a local government regulation "may file suit against any [entity] violating state firearm law preemption.

[4] Plaintiffs also reference the Florida Constitution, Article 1, Section 1, and quote language purportedly from *Ga. S. & Fla. Ry. V. Seven-Up Bottling Co. of Southeast Ga,* 175 So.2d 39 (Fla. 1965). The language referenced in the complaint does not exist in the case cited. Defendant will refer to the closest language in the Florida Constitution, which is Article 1, Section 2.

Constitution was inadvertent or mere surplusage, or whether Plaintiffs actually intended to bring a claim under the United States Constitution. In either event, their claim fails.

As noted previously, it is well established that Plaintiffs cannot bring a claim for a violation of state law under Section 1983. Even if Plaintiffs were attempting to bring an Equal Protection claim under the federal Constitution, they have failed to plead that they are members of a suspect class or any facts showing the DCSB does not have a rational basis for its mask policy. "When a law does not infringe on a fundamental right or discriminate on account of a suspect classification…we review it only for a rational basis." *Oakes v. Collier Cnty.*, 515 F. Supp. 3d 1202, 1208 (M.D. Fla. 2021), *citing Ga. Elec. Life Safety & Sys. Ass'n v. City of Sandy Spring, Ga.*, 965 F.3d 1270, 1275 (11th Cir. 2020).

Rational basis is not a high hurdle for the government to meet. "Under rational basis review, a law must be rationally related to a legitimate government interest and it 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification' between persons." *Id.*, *citing Jones v. Governor of Fla.*, 950 F.3d 795, 809 (11th Cir. 2020). In other words, the rational relation test is highly deferential to government action. *See id*. Here, the rational basis was and is obvious – a desire to adopt a policy that would result in fewer cases

of death or illness among school children, school employees, and those who came in contact with school children – *e.g.*, their parents and grandparents.

In the context of the pandemic, multiple federal courts have considered whether a mask mandate in response to COVID-19 bears a rational relation to stopping the spread of COVID and have overwhelmingly found that it does. *Id.* at 1209 ("…a mask mandate is rationally related to the County's legitimate government interest…It would be difficult to contend with a straight face that a mask requirement does not bear a rational relation to protecting people's health and preventing the spread of COVID-19."); *Lloyd v. Sch. Bd. Of Palm Beach Cnty,* 570 F.Supp.3d 1165, 1186-87 (S.D. Fla. 2021) (relying on *Oakes* in finding a school's mask mandate was rationally related to a legitimate government interest under the equal protection clause); *Guilfoyle v. Beutner*, 2021 WL 4594780, *17-18 (C.D. Cal., September 14, 2021) (finding the parents of school children did not have a likelihood of success on an equal protection claim because the school's mask mandate was rationally related to a legitimate government interest).

Plaintiffs appear to concede, as they must, that they are not members of a suspect class. Not only are there no allegations in the Complaint of their suspect classification, but they allege the DCSB did not have a rational basis for its mask policy. Doc. 44, ¶¶ 258, 259. Since a rational basis analysis applies in the absence of a suspect classification, Plaintiffs agree that a group of

parents and students who oppose a mask policy that required the students to wear a mask while on school property are not members of a protected class that would result in a higher level of scrutiny for the DCSB's action.

Thus, for Plaintiffs to prevail on a federal equal protection claim, they must show that there was no rational basis between the DCSB's mask policy and a legitimate government interest.  This they cannot do.  *Oakes* at 1208.  It is a tough task, at best, to negate *every conceivable basis* which might support the DCSB's mask policy.  *Id.*

In fact, Plaintiffs do not even seem to be challenging the creation of the mask policy in Count III.  Instead, they seem to be alleging that they were injured when the DCSB failed to provide all of the Plaintiffs with medical opt-outs of the mask policy.  Doc. 44, ¶¶ 257, 258, and 259.  Plaintiffs' allegations sound more in due process claims than equal protection claims, but as demonstrated below, their due process claims fail as well.  Their allegations fail to raise any meaningful equal protection claim, and even if they did, it is well established that a school's mask policy easily survives a rational basis analysis.  *Oakes v. Collier Cnty.*, 515 F.Supp.3d 1202, 1208 (M.D. Fla. 2021); *Lloyd v. Sch. Bd. Of Palm Beach Cnty,* 570 F.Supp.3d 1165, 1186-87 (S.D. Fla. 2021); *Guilfoyle v. Beutner*, 2021 WL 4594780, *17-18 (C.D. Cal. September 14, 2021).

### D. Due Process

Plaintiffs allege a "due process" claim in Count IV.  However, they again appear to bring the claim only under the Florida constitution and not the federal Constitution.  Because violations of state law cannot form the basis of a Section 1983 claim, this count also fails.

However, as in Count III, Plaintiffs make another passing reference to the United States Constitution in their request for relief (not in the count itself).  Again, Plaintiffs did not allege any plausible facts to support a claim that the DCSB's mask policy was not rationally related to a legitimate government interest.  Nor do Plaintiffs clarify whether they are bringing a substantive due process claim or a procedural due process claim.

### i. Substantive Due Process

The proper analysis of a due process claim involves two steps:  determine whether the implicated right is a fundamental right, then determine the appropriate level of review.  If a fundamental right is implicated, then strict scrutiny applies. *Zinman v. Nova Se. Univ. Inc.*, 2021 WL 405722, *16-17 (S.D. Fla., August 30, 2021).  If it is not a fundamental right, then a rational basis review is appropriate. *Id.*  There is no fundamental right here.

Plaintiffs make conclusory allegations about the DCSB's process for medical exemptions of the mask policy, yet they provide no explanation as to how being denied a medical exemption deprived them of their life, liberty, or

14

property.  In fact, it is difficult to conceive of how a medical exemption process could cost them their lives, cause them to be incarcerated, or result in a taking of their property.  Nor should this Court extend the scope of fundamental rights protected by substantive due process.  The "U.S. Supreme Court and the Eleventh Circuit have offered strong guidance against expanding doctrines borne of substantive due process." *Lloyd,* 570 F.Supp.3d at 1180.

The court in *Lloyd* declined "to expand the doctrine of substantive due process under the Fourteenth Amendment to encompass a right for parents to opt their children out of mask mandates." *Id*. On Plaintiffs' claim of bodily autonomy, the *Lloyd* court found that mask mandates do not qualify as a "compulsory bodily intrusion" or as "medical treatment" and do not implicate a right to bodily autonomy. *Id*., *see also Zinman*, 2021 WL 405722, at *17 (finding that "[a] mask requirement does not plausibly qualify as a 'compulsory bodily intrusion.' Wearing a mask on the outer surface of one's face to cover one's nose and mouth does not 'intrude' within one's body[.]"); *Fortuna v. Town of Winslow,* 2022 WL 2117717, at *14 (finding that "other courts resolving legal challenges to mandatory school masking policies have consistently rejected the argument that such policies infringe on a fundamental right.")

Many parents have challenged schools' mask policies under a substantive due process claim and failed.  *See Lloyd*, 570 F.Supp.3d. at 1178-86 (finding the school district's mask policy did not infringe on a fundamental

right and therefore survived a rational basis review); *Zinman,* 2021 WL 405722, at *16-17 (finding student failed to state a substantive due process claim for the school's mask policy because the policy easily survived rational basis review); *Fortuna v. Town of Winslow*, 1:21-cv-248-JAW, 2022 WL 2117717, *13-18 (D. Maine, June 13, 2022); *Doe v. Franklin Square Union Free Sch. Dist.*, 568 F.Supp.3d 270, 288-92 (E.D.N.Y. 2021); *Oberheim v. Bason*, 565 F.Supp.3d 607, 614-20 (M.D. Penn. 2021); *Forbes v. Cnty. Of San Diego*, 20-cv-998-BAS-JLB, 2021 WL 843175, *3-6 (S.D. Cal., March 4, 2021); *Guilfoyle,* at *25. This is because "[a] plaintiff asserting a substantive due process violation faces a high bar. Conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in the constitutional sense." *Zinman*, at *16 (citations and quotations omitted); *see also L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1326-31 (11th Cir. 2020). In fact, the Eleventh Circuit has never allowed a substantive due process claim in a school setting to proceed except for cases of "obvious excessive corporal punishment." *Id.*, at 1331. Like the plaintiffs before them who have challenged mask mandates, Plaintiffs in this case fail to meet the exceptionally high bar for a substantive due process claim.

Plaintiffs have failed to meet any of the elements required for a federal substantive due process claim (if that is what they allege in the Complaint).

They do not sufficiently allege that a fundamental right is at stake, and they cannot show the DCSB did not have a rational basis for enacting its mask policy. Simply disagreeing with the DCSB's decision to enact a mask policy is insufficient for overcoming the "high bar" of a substantive due process challenge subject to a rational basis review.

### ii. Procedural Due Process

If Plaintiffs somehow intended to bring a procedural due process claim, they have failed to plead sufficient facts to support such a claim. In paragraph 268 of the Complaint, Plaintiffs allege that "DCPS's failure to provide a clear, transparent, and consistent process for submission of exemptions through Medical Certifications, and the arbitrary denial of submitted Medical Certifications, is a deprivation of life, liberty, or property without due process of law." Plaintiffs provide no further allegations of what property right they are being deprived of by being required to wear a mask during a pandemic. It is well settled that "no procedural due process claim exists until a sufficiently certain property right under state law is first shown." *Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1265 (11th Cir. 2003). And if there is no property interest at stake, there can be no procedural due process claim. Plaintiffs cannot generically claim they have been deprived of their property without articulating what that property right is.

Even where plaintiffs have attempted to articulate a specific property right, courts have still found the procedural due process claim fails in a mask mandate case.  In *Oberheim*, the plaintiffs attempted to couch their claims as a property interest in the right to education.  *Oberheim*, 565 F.Supp.3d at 615-16.  But the court properly found that as "long as administrative policies and actions do not exclude a student from class, they do not implicate the property interest in public education." *Id.* (quotations and citations omitted).  The court further held that "[j]ust as a school district's immunization requirement does not unlawfully deprive its students of their legitimate entitlement to public education, neither does a mask mandate." *Id.*, (citations omitted).

Further, even if Plaintiffs are able to show that a recognized property right existed, they were not denied procedural due process which requires notice and an opportunity to be heard. *Gunter v. N. Wasco Cnty. Sch. Dist. Bd. of Educ.*, 577 F. Supp. 3d 1141, 1160 (D. Or. 2021).  Plaintiffs received both notice and an opportunity to be heard as evidenced by their own pleading.  On page three of the Complaint, Plaintiffs allege the initial notice for the August 23, 2021, meeting was sent out on August 22, 2021 (which is the proper timeframe for an emergency meeting), and that at the meeting, parents provided data to demonstrate the ineffectiveness of forced masking and relayed personal and traumatic experiences lived by their children under masks.  (Doc. 44).  Therefore, Plaintiffs concede they were provided with notice of the August

18

23, 2021, meeting and were given an opportunity to be heard at the meeting. While Plaintiffs may not agree with the decision the Board made at the meeting, this does not mean that their procedural due process rights were violated.

As a matter of federal law, DCSB's briefly-imposed 2021 mask policy does not implicate a fundamental right or a property right. *Lloyd*, at 1178-86; *Zinman* at *16-17; *Fortuna*, at *13-18; *Franklin Square Union Free Sch. Dist.*, at 288-92; *Oberheim*, at 614-20; *Forbes*, at *3-6; *Guilfoyle*, at *25. Therefore, any procedural due process claim is subject to a rational basis review, and the DCSB's mask policy, including its medical exemption process, easily survives.

### E. Sovereign Immunity

While it appears Plaintiffs are relying only on federal claims, if they somehow intended to bring state law claims, those claims are barred by sovereign immunity. *See* Doc. 13, p. 4-5. As a governmental entity, DCSB is entitled to all aspects of sovereign immunity in Florida. *Levine v. Dade County Sch. Bd.,* 442 So.2d 210 (Fla. 1983). Sovereign immunity in Florida is the rule, rather than the exception. *Pan-Am Tobacco Corp. v. Dep't of Corr.,* 471 So.2d 4, 5 (Fla. 1984). There are essentially two types of exceptions to the rule of sovereign immunity. First, claims under federal law and statutorily-enabled

claims under the Florida Constitution[5], are not barred.  *Fla. Fish & Wildlife Conservation Comm'n v. Daws,* 256 So. 3d 907, 912 (Fla. Ct. App. 2018). Second, claims are not barred when immunity has been waived.  *Id.*[6]

Section 768.28 of the Florida Statutes provides a limited waiver of sovereign immunity for some, but not all, negligence actions.  However, here all potential state law claims for damages are barred because DCSB is immune for its basic discretionary legislative activity and policy making functions.  *See Trianon Park Condo. Ass'n, Inc. v. City of Hialeah,* 468 So.2d 912 (Fla. 1985). School boards can be liable for operational negligence—a claim which was not pled here—but not for policy making and planning level functions.  *See, e.g., Orlando v. Broward County, Fla.,* 920 So. 2d 54 (Fla. Ct. App. 2005) (immunity for death of a student because setting of school hours is discretionary planning activity); *Harrison v. Escambia County Sch. Bd.,* 419 So. 2d 640 (Fla. Ct. App. 1982) (immunity for planning decision on location of bus stop); *Kazanjian v. Sch. Bd. Of Palm Beach County,* 967 So. 2d 259, 268 (Fla. Ct. App. 2007) (school board immune from suit for its discretionary planning level policies regarding such things as parking permits, student parking, school discipline, etc.)

---

[5] Claims under the Florida Constitution require a separate enabling statute.  *Pinto v. Collier Cty.*, 2020 WL 2219185, at *7 (M.D. Fla. 2020).

[6] For example, claims based on an express written contract are not barred.  *Fla. Dept. of Envtl. Prot. v. Contract/Point Florida Parks, LLC,* 986 So.2d 1260 (Fla. 2008).

## Conclusion

All of Plaintiffs' claims appear to be based on a belief that state law can be the basis for liability under 42 U.S.C. § 1983. This belief is wrong. Moreover, even if Plaintiffs intended to rely on state law alone, their claims would not be viable. Therefore, for the foregoing reasons, the DCSB respectfully requests that the Court enter judgment in favor of the DCSB on all counts.

**Dated: November 16, 2022**

Respectfully submitted,

**OFFICE OF GENERAL COUNSEL**

*/s/ Laura Boeckman*
Laura J. Boeckman
Assistant General Counsel
Florida Bar No.: 527750
Jon Phillips
Deputy General Counsel
Florida Bar No.: 273813
Craig D. Feiser
Assistant General Counsel
Florida Bar No.: 164593
Kelly H. Papa
Assistant General Counsel
Florida Bar No.: 178004
James E. Millard
Assistant General Counsel
Florida Bar No.: 47358
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
Telephone: (904) 255-5100
Facsimile: (904) 255-5199

lboeckman@coj.net
cfeiser@coj.net
kpapa@coj.net
jemillard@coj.net
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of November, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and by doing so, served a copy on the following:

Nicholas P. Whitney
10751 Deerwood Park Blvd.
Ste. 105
Jacksonville, FL 32256
nwhitney@asglaw.com

Gregory Anderson
10751 Deerwood Park Blvd.
St. 105
Jacksonville, FL  32256
gaanderson@asglaw.com

*/s/ Laura Boeckman*
Laura J. Boeckman